UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY TRUPIA, | ) |
|       Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-25-1134-D ) |
| ONVOY, LLC, et al., | ) ) |
|       Defendants. | ) ) |

### DEFENDANT LEVEL 3 COMMUNICATIONS, LLC'S
### MOTION TO DISMISS AND BRIEF IN SUPPORT

This action is Plaintiff Anthony Trupia's second attempt to pursue claims against Level 3 Communications, LLC ("Level 3"), collectively with other Defendants here, for "unsolicited telemarketing calls to his cellular phone." The court dismissed Mr. Trupia's prior pleading without prejudice and with express permission "to file a motion … for leave to amend[.]" *See* Order, ECF No. 101, *Trupia v. Heritage Hard Assets LLC*, Case No. CIV-24-498-D (D. Okla.). Mr. Trupia never moved to amend, however, and the court entered a judgment of dismissal in February 2025. *Id.* ECF Nos. 102 and 103.

In September 2025, Mr. Trupia commenced this second action. The current complaint confirms that Mr. Trupia has nothing more than speculation and empty conclusions regarding Level 3. Because Mr. Trupia's legal conclusions cannot flow from the facts alleged—which omit any plausible allegations that Level 3 made any of the alleged unwanted calls, knowingly misrepresented any caller identification information, or acted with any wrongful intent—the Court should dismiss Mr. Trupia's claims against Level 3 with prejudice.

1

## BACKGROUND

### I.  THE PARTIES

Mr. Trupia resides in Oklahoma. (Compl. ¶ 3) (ECF No. 1.) He received unsolicited calls to his cellular phone. (*Id.*) Mr. Trupia claims to be a frequent *pro se* litigant, and has posted online about filing lawsuits based on the Telephone Consumer Protection Act (TCPA). *See* "How I Made $100,000 in One Year Suing Spam Callers, and You Could Too!" *YouTube*, Oct. 7, 2024, https://www.youtube.com/watch?v=FfoNM9CHupY.

Level 3 Communications, LLC is a Delaware limited liability company with its principal place of business in Colorado. (Compl. ¶ 5.) It provides telecommunications services including Voice over Internet Protocol (VoIP). (*Id.*) VoIP is a technology that transmits phone calls over the Internet (as opposed to the traditional phone system known as the public switched telephone network). *See generally* 47 U.S.C. § 153(25); 47 C.F.R. § 9.3. The Complaint refers to Level 3 as one of three "common carrier" defendants. (Compl. ¶¶ 5,17-18, 23-24.)

### II.  PLAINTIFF'S ALLEGATIONS

Mr. Trupia alleges that "[b]eginning in early 2023 and continuing through 2024," he "received hundreds of unsolicited telemarketing calls to his cellular phone." (Compl. ¶ 17.) Based on "information and belief," he alleges these calls "were part of a coordinated campaign using spoofed caller IDs displaying local area codes or generic names, with numbers traced via reverse lookups to Defendants' common carrier services." (*Id.*)

According to Mr. Trupia, there were three roles in this alleged "campaign": (1) unknown bad actors that "illegally generated leads," (2) sales companies that

"purchased and used" leads "to make follow-up telemarketing calls," and (3) phone companies that "facilitated" the campaign by "providing VoIP service that enabled spoofing, high-volume dialing, and illegal traffic." (*Id.* ¶ 18.)

Mr. Trupia alleges that Level 3 has liability as a VoIP service provider; he does not allege that Level 3 generated leads or made any telemarketing calls itself. (*See id.*) Notably, the Complaint includes a graphic from an article that says phone carriers transmitting robocalls made by other persons are "unaware of the nature of the call." (*Id.*)

The Complaint does not contain any specific allegations about Level 3's conduct. Mr. Trupia does not allege that Level 3 was aware of or had any role in the two specific phone calls he identifies (a call in May 2024 from Confidence Ford of Norman, and a call in July 2024 from LP Operating). (*Id.* ¶ 19.) Rather, Mr. Trupia alleges that Level 3 and the other common carrier defendants, *as a group*, "route[d]" other calls in which "Caller IDs were spoofed to display local area codes or generic names." (*Id.* ¶ 20(d).) Mr. Trupia alleges that "traces" somehow "link" these unspecified calls to the common carriers. (*Id.*)

Mr. Trupia alleges that Level 3 and the other common carriers have liability together for "knowingly" and "willfully" routing calls with spoofed caller ID information. (Compl. ¶¶ 20(d), 24.) But the Complaint's conclusory allegations about these "common carrier Defendants" plainly lack factual support:

- The common carrier Defendants "fail[ed] to implement effective Know Your Customer (KYC) practices, respond to complaints, or block known abusive traffic." (*Id.* ¶ 18.)

- "Common carrier Defendants were contacted about the illegal calls but refused to respond or take action, despite the majority of their traffic involving unlawful activities, their awareness from industry reports and

- complaints, and their failure to enforce KYC or monitor for spoofing and robocalling." (*Id.* ¶ 23.)

- "Common carrier Defendants are defendants in hundreds of TCPA/Robocall lawsuits, indicating a pattern of illegal activity and that Defendants knowingly and willfully continue these illegal operations." (*Id.* ¶ 24.)

Mr. Trupia bases these conclusions about Level 3 on only the vague allegation that Level 3 was mentioned by the FCC for "inadequate traceback cooperation" and a search on PACER for every case, regardless of subject matter, in which Level 3 is a defendant. (*Id.* ¶¶ 23-24.)

### III.  **PROCEDURAL HISTORY**

This is Mr. Trupia's second attempt to pursue a claim over alleged unsolicited telemarketing calls against Level 3. In April 2024, Mr. Trupia filed a petition against Level 3, 22 other named defendants, and 100 John Doe defendants in the District Court of Oklahoma County. *See Trupia v. Heritage Hard Assets LLC*, Case CJ-2024-2684 (Okla. Dis. Ct.). In May 2024, the petition was removed to this Court. *See Trupia v. Heritage Hard Assets LLC*, Case No. CIV-24-498 (D. Okla.). In February 2025, the court (Judge Bernard M. Jones) ruled that the petition "failed to satisfy Rule 8" and should be dismissed. (Order at 2-3, ECF No. 101, Case No. CIV-24-498.) The court stated that if Mr. Trupia did not timely file a motion for leave to amend within 21 days, then judgment would be entered. (*See id.* at 3.) Mr. Trupia did not, so the court dismissed the action without prejudice. (*See* Judgment, ECF No. 103, Case No. CIV-24-498.)

In September 2025, Mr. Trupia commenced this action against 12 named defendants and 10 John Doe defendants. Level 3 waived service, so its deadline to respond to the Complaint is December 1, 2025.

## *LEGAL STANDARD*

To overcome a Rule 12(b)(6) motion, the Complaint "must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must determine whether the Complaint "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011). Allegations that are "legal conclusions," "threadbare recitals of the elements of a cause of action," or "conclusory statements" are "not entitled to the assumption of truth." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018). "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)."Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Rather, a claim is plausible only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## ARGUMENT

### I. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST LEVEL 3 REGARDING ANY SPECIFIC CALLS

The Complaint asserts the same 11 claims under federal and state law against all 12 named Defendants collectively. All of these claims are premised on one phone call Mr. Trupia received in May 2024 from Confidence Ford of Norman, and a second phone call in July 2024 from LP Operating. (Compl. ¶ 19.) But the Complaint does not contain any allegations about Level 3's conduct with respect to those two calls. It is thus not plausible to infer that Level 3 has liability for those calls under any potential legal theory.

Even assuming Level 3 had some connection to those two specific calls, the Complaint does not show how those calls subject Level 3 to liability under the TCPA or its state analogues. As discussed below, those statutes prohibit certain auto-dialed calls (47 U.S.C. § 227(b)(1)(A)), pre-recorded messages (§ 227(b)(1)B)), and spoofed caller identification information (§ 227(e)(1)). *See also* Okla. Stat. tit. 15, § 775C.1 *et seq.* Mr. Trupia's allegations show the opposite. Neither call had a spoofed caller ID: the Confidence Ford call lists a 405 area code, which is accurate for a call from Norman, Oklahoma; and the number for the LP Operating call is the actual number listed on the LP Operating website cited in the Complaint. (Compl. ¶ 19.) When Mr. Trupia answered these calls, he spoke to a live person. (*Id.*) And there is no indication the calls were auto-dialed, despite the conclusory allegation that the calls "exhibited characteristics" of being made with an auto-dialer. (*Id.* ¶ 20.)

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST LEVEL 3 FOR "SPOOFED CALLER IDS"

As a secondary theory for his claims, Mr. Trupia alleges that Level 3 has liability for its supposed role, along with the other common carrier defendants, in transmitting phone calls with "spoofed caller IDs." (Compl. ¶ 17.) "Spoofing"—when caller ID information intentionally shows a name or phone number that is inaccurate—is not *per se* unlawful and can be used for legitimate purposes, but it is unlawful when employed with a wrongful intent. *See generally* 47 U.S.C. § 227(e)(1); 47 C.F.R. § 64.1604(a). Mr. Trupia alleges he "received hundreds of unsolicited telemarketing calls" and that Level 3 (along with the other common carrier defendants) "rout[ed]" phone calls that had "spoofed caller IDs." (Compl. ¶¶ 17, 20(d).) But for the reasons explained below, Mr. Trupia wholly fails to allege that Level 3's conduct falls within the statutory prohibitions he claims that Level 3 violated, which is plain from the face of these statutes viewed against his conclusory allegations.

### A. The Claims Under Federal Law Are Not Viable Or Plausible

In Counts I, II, and III, the Complaint asserts claims under the Truth in Caller ID Act of 2009 and related rules and the TCPA. These claims fail for multiple reasons.

#### 1. Caller ID Claims (Counts I and II).

Mr. Trupia alleges that "Defendants" violated § 227(e)(1) of the Truth in Caller ID Act "by spoofing caller ID information with intent to defraud, cause harm, or wrongfully obtain value, as evidenced by spoofed local numbers and generic names to deceive Plaintiff into answering." (Compl. ¶ 27.) He also alleges that "Defendants" violated § 64.1604(a) of

the Truth in Caller ID rules "by providing misleading or inaccurate caller ID information, as spoofed IDs did not accurately reflect the originating party." (*Id.* ¶ 30.)

> Section 227(e)(1) of the Truth in Caller ID Act says:
>
> It shall be unlawful for any person within the United States … in connection with any voice service or text messaging service, to cause any caller identification service ***to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value***, unless such transmission is exempted pursuant to paragraph (3)(B).

47 U.S.C. § 227(e)(1) (emphasis added).

> Section 64.1604(a) of the Truth in Caller ID rules says:
>
> No person or entity in the United States, nor any person or entity outside the United States if the recipient is within the United States, shall, ***with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly cause, directly, or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information*** in connection with any voice service or text messaging service.

47 C.F.R. § 64.1604(a) (emphasis added).

Counts I and II fail to state a claim. Neither 47 U.S.C. § 227(e) nor 47 C.F.R. § 64.1604(a) authorizes a private right of action. But even if they did, the allegations are plainly conclusory where they merely recite the elements of the statute and rule. The Complaint does not allege facts showing that Level 3, as a VoIP provider, "knowingly cause[d]" any caller ID service to transmit "misleading or inaccurate caller identification information," or that Level 3 acted with any "intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1); 47 C.F.R. § 64.1604(a). The Complaint similarly omits facts showing that Level 3 had any role with "spoofed … local area codes or generic names" (Compl. ¶ 20(d)) for any calls, or that Level 3 was "spoofing" or

8

"providing" caller ID information that was different from what Level 3 was provided (*id.* ¶¶ 27, 30). It is thus not plausible to infer that Level 3, as a VoIP provider that transmitted phone calls made by other persons, has liability under the cited caller ID statute and rules.

    2.    *Artificial/Prerecorded Voice Claims (Count III).*

Mr. Trupia alleges that "Defendants" violated Section 227(b)(1)(A)(iii) of the TCPA by "initiating calls to Plaintiff's cellular phone using an artificial or prerecorded voice without prior express consent, as evidenced by prerecorded messages like the 'Lisa with Rapid Funding' voicemail." (Compl. ¶ 33.) He also alleges that "Defendants" violated Section 227(b)(1)(B) of the TCPA and 47 C.F.R. § 64.1200(a)(1) by "initiating calls using an artificial or prerecorded voice to Plaintiff's cellular phone without consent." (*Id.* ¶¶ 34-35.)

> Sections 227(b)(1)(A)(iii) and 227(b)(1)(B) of the TCPA say:
>
> (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
>> (A) to *make any call* (other than a call made for emergency purposes or made with the prior express consent of the called party) *using any automatic telephone dialing system or an artificial or prerecorded voice*—
>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;
>>
>> (B) to *initiate any telephone call* to any residential telephone line *using an artificial or prerecorded voice to deliver a message* without the prior express consent of the called party, unless

>the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B);

47 U.S.C. §§ 227(b)(1)(A)(iii), 227(b)(1)(B) (emphasis added).

Similarly, the federal telemarketing rules say, in relevant part:

>(a) No person or entity may:
>
>>(1) Except as provided in paragraph (a)(2) of this section, *initiate any telephone call* (other than a call made for emergency purposes or is made with the prior express consent of the called party) *using an automatic telephone dialing system or an artificial or prerecorded voice*;

47 C.F.R. § 64.1200(a)(1) (emphasis added).

Count III fails to state a claim. The allegations are similarly conclusory. The Complaint does not allege facts showing that Level 3, as a VoIP provider, "made" or "initiated" any call "using" an artificial or prerecorded voice. 47 U.S.C. §§ 227(b)(1)(A)-(B); 47 C.F.R. § 64.1200(a)(1). The Complaint also does not allege facts showing that Level 3 had any role or knowledge regarding the content of any phone calls it may have transmitted, such as any calls with "prerecorded messages like the 'Lisa with Rapid Funding' voicemail." (Compl. ¶ 33.) Indeed, the Complaint affirmatively alleges that "common carrier Defendants" like Level 3 are generally "unaware of the nature of the call[s]" transiting their network. (*Id.* ¶ 18.) It is thus not plausible to infer that Level 3, as a VoIP provider, has liability under the cited artificial/prerecorded voice statutes and rules.

**B.     The Claims Under State Law Are Also Not Plausible**

In Counts IV to XI, the Complaint asserts claims under the Oklahoma Telephone Solicitation Act of 2022 (OTSA) and common law. These claims also fail on multiple grounds.

    *1.     Section 775C.3 of the OTSA (Counts IV to VI)*

Mr. Trupia alleges that "Defendants" violated multiple provisions of this statute "by using an automated system for selecting or dialing telephone numbers without consent," "by playing a recorded message without consent," and "by using misleading or inaccurate caller ID information to disguise the call's origin." (Compl. ¶¶ 38, 41, 44.)

Sections 775C.3(A) and (B) of the OTSA say:

> A. A person ***may not make or knowingly allow a commercial telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message*** when a connection is completed to a number called without the prior express written consent of the called party.
>
> B. It shall be unlawful for ***any person who makes a commercial telephonic sales call or causes a commercial telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number*** and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a commercial telephonic sales call. …

Okla. Stat. tit. 15 § 775C.3(A)-(B) (emphasis added). The OTSA defines "commercial telephone seller" to mean "a person who, in the course of such person's business, vocation or occupation, on the person's own behalf or on behalf of another person, ***causes or attempts to cause a commercial telephone solicitation to be made***." *Id.* § 775A.2(1) (emphasis added).

11

Counts IV to VI fail to state a claim. As before, the allegations are conclusory and only recite the statutes. The Complaint does not allege facts showing that Level 3 made, knowingly allowed, or caused to be made any "commercial telephonic sales call." Okla. Stat. tit. 15 § 775C.3(A)-(B). Nor does the Complaint allege facts showing that Level 3 is a "commercial telephone seller." *Id.* § 775A.2(1). Rather, the Complaint distinguishes Level 3 as a VoIP provider from its separate conclusions about bad actors that "illegally generated leads" and the sales companies that "purchased and used" leads "to ***make follow-up telemarketing calls***." (Compl. ¶ 18 (emphasis added).)

The Complaint also does not allege facts showing that Level 3 "us[ed] an automated system for selecting or dialing telephone numbers" or "play[ed] a recorded message" or "us[ed] inaccurate or misleading caller ID information." Okla. Stat. tit. 15 § 775C.3(A)-(B). For example, the Complaint does not allege that Level 3 played any role in what phone numbers were dialed, what was said on any call, or what caller ID information was provided or transmitted. It is thus not plausible to infer that Level 3 has liability under this statute simply by providing VoIP services to other persons.

    2.    <u>Section 775C.4 of the OTSA (Counts VII to X)</u>

Mr. Trupia alleges that "Defendants" violated multiple provisions of this statute by making "calls outside the permitted 8:00 a.m. to 8:00 p.m. window" and "more than three calls in a 24-hour period," and by failing "to clearly state the solicitor's name and the purpose of the call within the first 30 seconds" and "to transmit accurate caller ID information." (Compl. ¶¶ 45, 48, 51, 54.) But this statute applies only to salespersons:

> A. ***A commercial telephone seller or salesperson*** may not make any of the following types of phone calls, including calls made through automated dialing or recorded messages:
>
>> 1. A commercial telephone solicitation phone call before 8 a.m. or after 8 p.m. local time in the called person's time zone; and
>>
>> 2. More than three commercial telephone solicitation phone calls from any number to a person over a twenty-four-hour period on the same subject matter or issue, regardless of the phone number used to make the call.
>
> B. ***A commercial telephone seller or salesperson*** making a commercial telephone solicitation call may not:
>
>> 1. Intentionally act to prevent transmission of the telephone solicitor's name or telephone number to the party called when the equipment or service used by the telephone solicitor is capable of creating and transmitting the telephone solicitor's name or telephone number; or
>>
>> 2. Use technology that deliberately displays a different caller identification number than the number from where the call is originating to conceal the true identity of the caller.

Okla. Stat. tit. 15 § 775C.4(A)-(B) (emphasis added).

Counts VII to X fail to state a claim. Again, the allegations are conclusory and lack any underlying facts. Like before, the Complaint fails to allege facts showing that Level 3 was a "commercial telephone seller" or "salesperson making a commercial telephone solicitation call." *Id.* § 775A.2(1). The Complaint alleges the opposite: Level 3 was among the "common carrier Defendants" and "unaware of the nature of the call[s]." (Compl. ¶ 18.) The Complaint also fails to allege facts showing that Level 3 acted unlawfully. It is not alleged that Level 3 "made" any calls to Mr. Trupia outside the permitted time period or frequency, or that Level 3 "intentionally" prevented or "deliberately" disguised any caller ID information. Okla. Stat. tit. 15 § 775C.4(A)-(B). Here too, it is not plausible to infer that

13

Level 3 has liability under this statute when it did no more than prove VoIP services to other persons.

### 3. *Common law invasion of privacy (Count XI)*

Finally, Mr. Trupia alleges that "Defendants" "intentionally intruded upon [his] seclusion by repeatedly calling his private cellular line despite demands to stop, causing annoyance and distress." (Compl. ¶ 57.) The tort of intrusion upon seclusion requires a showing of "(a) a nonconsensual intrusion (b) which was highly offensive to a reasonable person." *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994). Courts must balance the legitimate interests served by the alleged conduct against the privacy concerns implicated to determine whether an alleged intrusion was highly offensive. *See id.* at 366-67; *see also Munley v. ISC Fin. House, Inc.*, 584 P.2d 1336 (Okla. 1978) (collection agents' repeated attempts to contact debtor not highly offensive).

Count XI fails to state a claim. Once more, the Complaint's allegations are mere legal conclusions. The Complaint does not allege facts showing that Level 3 "repeatedly called" his phone number, or that Level 3 had any knowledge of who initiated any calls to his number or whether he did not consent to receiving any calls. All that is alleged is that Level 3 offered VoIP services to transmit calls made by other persons. And, importantly, Mr. Trupia does not show why a reasonable person who has a cellular phone number would consider the general provision of VoIP services to be "highly offensive." It is thus not plausible to infer that offering VoIP services in this manner is either a nonconsensual intrusion or highly offensive to a reasonable person.

## CONCLUSION

Mr. Trupia's second attempt to pursue a claim against Level 3 is no more successful than the first. The Complaint fails to state a plausible claim that the calls in question would subject to Level 3 to liability under any federal or state law. The Complaint against Level 3 should be dismissed with prejudice.

Respectfully submitted,

By: /s/Nathan L. Clark
NATHAN L. CLARK, OBA 17275
JOHN H. TUCKER, OBA 9110
jtucker@rhodesokla.com
RHODES HIERONYMUS JONES
TUCKER & GABLE
P.O. Box 21100
Tulsa, Oklahoma 74121-1100
(918) 582-1173; (918) 592-3390 [fax]
***Attorney for Level 3 Communications, LLC***

I hereby certify that on the 24th day of November 2025, I electronically transmitted the above and foregoing to the Plaintiff, Pro Se, via email at his email address, and to the Clerk of the Court using the Court's ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants:

Anthony Trupia
trupiaar@gmail.com
***Plaintiff Pro Se:***

Mark Banner
mbanner@hallestill.com
Aaron C. Tifft
atifft@hallestill.com

15

**Counsel for Defendant, HLV Ventures:**
Brooks A. Richardson
brichardson@baglelaw.com
**Counsel for Defendant Telnyx, LLC:**

Zachary D. Ludens
zludens@zpllp.com
**Counsel for Defendants, Heritage Hard Assets LLC, Kyle Patton, Zachary D. Ludens, and Zebersky Payne Shaw Lewenz, LLP:**

Nicholas V. Merkley
nmerkley@gablelaw.com
Gerard D'Emilio
gdemilio@gablelaw.com
**Counsel for Defendant, Onvoy, LLC:**

Shawn D. Golden
shawn.golden@morganlewis.com
Heidi Rasmussen
Heidi.rasmussen@morganlewis.com
*Pending pro hac vice*
**Counsel for Defendant, Onvoy, LLC:**

Ezra D. Church
ezra.church@morganlewis.com
*Pending pro hac vice*

　　　　　　　　　　　　　　　　　　　*/s/ Nathan L. Clark*
　　　　　　　　　　　　　　　　　　　Nathan L. Clark