## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY TRUPIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-25-1134-D |
| | ) |
| ONVOY, LLC; LEVEL 3 COMMUNICATIONS, LLC; TELNYX LLC; HLV VENTURES; HERITAGE HARD ASSETS LLC; KYLE PATTON; REAGAN GOLD GROUP, LLC; WORLD HARVEST CHURCH, INC.; SOUTH BAY GALLERIES LLC; CONFIDENCE FORD OF NORMAN; FORD MOTOR COMPANY; LP OPERATING; DOES 1 through 10, | ) |
| Defendants. | ) |

### DEFENDANT CONFIDENCE FORD OF NORMAN'S
### MOTION TO DISMISS AND BRIEF IN SUPPORT

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), Defendant Confidence Ford of Norman ("Confidence Ford") moves to dismiss Plaintiff Anthony Trupia's ("Trupia") Complaint for Civil Penalties, Permanent Injunction, and Other Equitable Relief ("Complaint"). As explained below, Trupia's Complaint (1) does not satisfy the threshold pleading requirements imposed by Rule 8, and (2) fails to state any plausible claim for relief under Rule 12(b)(6).

**Factual Allegations**

As before,[1] Trupia brings this pro se action against a swath of business entities (and one entity's executive) as part of his broader crusade against "unsolicited telemarketing calls." Compl. ¶ 17, Dkt. No. 1. In total, he asserts eleven claims—against all Defendants collectively—arising under four sources: (1) the Truth in Caller ID Act ("TCIA")[2] and its implementing regulations, (2) the Telephone Consumer Protection Act ("TCPA") and its implementing regulations, (3) Oklahoma's Telephone Solicitation Act ("OTSA"), and (4) Oklahoma tort law. *See id.* ¶ 26–58.

Trupia's Complaint proceeds in four phases. First, he broadly posits that unsolicited telemarketing implicates "three interrelated groups": (1) "unidentified 'ghost' robocallers," "who generate[] leads by making automated calls to confirm live answers and then hang[] up"; (2) "sellers," who after receiving those leads, "make follow-up telemarketing calls promoting their respective services"; and (3) "common carrier[s]," who "facilitate[] the entire operation by providing VoIP services that enable[] spoofing, high-volume dialing, and illegal traffic." *Id.* ¶ 18.

---

[1] In a 2024 case filed in this district, Trupia sued many of the same entities named here. *See Trupia v. Heritage Hard Assets*, No. CIV-24-498-J, Dkt. No. 1-1. The court dismissed Trupia's pleading for failure to comply with Rule 8 yet afforded him an opportunity to seek leave to amend. *Id.*, Dkt. No. 101. When Trupia neglected to do so, the court dismissed his action without prejudice. *Id.*, Dkt. No. 102.

[2] Though Trupia frames Count I as arising under the Telephone Consumer Protection Act, 47 U.S.C. § 227(e) is properly construed as part of the TCIA. *See, e.g., Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 234 (5th Cir. 2012); *McDermet v. Porch.com, Inc.*, No. 19-10284-RGS, 2019 WL 1619867, at *4 (D. Mass. Apr. 16, 2019).

Next, taking a minimal attempt at specificity, Trupia alleges that "[b]eginning in early 2023 and continuing through 2024," he received "hundreds of unsolicited telemarketing calls to his cellular phone from or on behalf of Defendants, promoting services such as numismatic coins, precious metals investments, gold and silver IRAs, charitable donations, vehicle sales, and oil drilling investments." *Id.* ¶ 17. As to Confidence Ford specifically, he vaguely asserts that its manager called him on May 1, 2024, "was incredibly rude," "called back repeatedly to harass [him]," and claimed that "leads were provided by Ford Motor Company." *Id.* ¶ 19.

But that is where the specificity ends. In the paragraphs that follow, Trupia bemoans "calls" he received yet makes little effort to tether them to a particular defendant. *See, e.g.*, *id.* ¶ 20 (vaguely alleging that "[t]he calls exhibited characteristics of being made with an Automatic Telephone Dialing System (ATDS) . . . , which requires equipment that uses a random or sequential number generator"). He even goes so far as to suggest a general link between robocalling and "transnational organized crime, including cartels using wire fraud and money laundering to support terrorism." *See id.* ¶ 22.

Finally, Trupia concludes by asserting eleven claims. And consistent with his Complaint's overarching lack of specificity, he asserts each claim against "Defendants" collectively, offering little more than a generic description of the alleged violation. *See, e.g.*, *id.* ¶ 27 ("Defendants violated [47 U.S.C.] § 227(e)(1) by spoofing caller ID information with intent to defraud, cause harm, or wrongfully obtain value, as evidence by spoofed local numbers and generic names to deceive Plaintiff into answering."); *id.* ¶ 33 ("Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by initiating calls to [Trupia's] cellular

3

phone using an artificial or prerecorded voice without prior express consent, as evidenced by prerecorded messages . . . .").

## Legal Standard

Confidence Ford moves for dismissal under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "At a basic level, Rule 8 requires that a complaint give the opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint . . . ." *Bralich v. Gayner*, No. 20-cv-3800-RMR-STV, 2021 WL 5763506, at *4 (D. Colo. Nov. 24, 2021); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (noting a plaintiff's Rule 8 "burden . . . to provide fair notice of the grounds for the claims made against each of the defendants"). To satisfy Rule 8, "a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). If a complaint "fails to meet these basic pleading requirements, a district court may dismiss the action . . . for failure to comply with Rule 8." *Rodriguez v. Nationwide Homes, Inc.*, 756 F. App'x 782, 785 (10th Cir. 2018) (unpublished).

"[E]ven where a complaint meets Rule 8's threshold requirements, it may still warrant dismissal for failure to state a claim [under Rule 12(b)(6)] if it lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Stillwell v. Benson*, No. CIV-25-259-J, 2025 WL 1634898, at *4 (W.D. Okla. May 2, 2025)

(internal quotation marks omitted); c*f. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (discussing interplay of Rules 12(b)(6) and 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011), "mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim," *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).[3]

## Argument and Authorities

The Court should dismiss on two independent grounds. First, because Trupia's Complaint amounts to a "shotgun pleading," it fails to provide fair notice as required by Rule 8. Second, setting aside these Rule 8 deficiencies, Trupia fails to state a plausible claim for relief against Confidence Ford, warranting dismissal under Rule 12(b)(6).

---

[3] It is well settled that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted). Still, "this relaxed pleading standard does not excuse a plaintiff from complying with the pleading requirements of *Iqbal*, and the district court cannot become an advocate by constructing arguments on behalf of the plaintiff." *Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished) (footnote omitted).

I.  **Trupia's "Shotgun Pleading" Violates Rule 8.**

Trupia's Complaint amounts to a "shotgun pleading," thereby failing to provide fair notice under Rule 8. Though shotgun pleadings take various forms, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *see also Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading."). The Tenth Circuit has described shotgun pleading as the "recitation of an extended factual narrative followed by pleading numerous claims without adequately specifying which facts apply to which claims and which parties." *Fawley v. Lucero*, No. 22-2091, 2023 WL 2487323, at *1 (10th Cir. Mar. 14, 2023) (unpublished).

Trupia does exactly that. His Complaint is littered with rambling and irrelevant allegations. *See, e.g.*, Compl. ¶ 22 ("[O]verseas robocoall operations often fund criminal networks through scams and fraud, exploiting phone systems for profit."). And even those allegations with some arguable relevance remain untethered to any particular defendant. Though Trupia alleges that he "received hundreds of unsolicited telemarketing calls . . . from or on behalf of Defendants," *id.* ¶ 17, he describes the calls largely in general terms without attributing specific conduct to any individual party, *see, e.g.*, *id.* ¶ 20 ("Several calls played prerecorded messages with artificial voices promoting investments or donations, using generic scripts."). To make matters worse, he asserts each claim wholesale

6

against "Defendants," with little effort to explain which facts support which claims as to which parties. *See id.* ¶¶ 26–58.

To provide fair notice under Rule 8, a complaint must make clear "*who* is alleged to have done *what* to *whom*." *Robbins*, 519 F.3d at 1250 (emphasis in original). "If the plaintiff does not specify which defendants committed the facts that make up a claim, or what facts underlying the claims the defendants committed, it would be 'impossible for any of these individuals to ascertain what particular . . . acts they are alleged to have committed.'" *Lucero v. Bd. of Dirs. of Jemez Mountains Coop., Inc.*, 495 F. Supp. 3d 1135, 1177 (D.N.M. 2020) (quoting *Robbins*, 519 F.3d at 1250). Because Trupia's Complaint creates precisely that impossibility, the Court should dismiss it under Rule 8. *See, e.g.*, *Stillwell*, 2025 WL 1634898, at *4 ("Plaintiff's complaint fails to provide fair notice of the specific claims asserted against each named individual. Dismissal under Rule 8 is therefore appropriate.").

## II. Trupia Fails to State a Plausible Claim for Relief Against Confidence Ford Under Rule 12(b)(6).

Rule 8 deficiencies aside, the Court should dismiss Confidence Ford from this action under Rule 12(b)(6) because Trupia fails to state a single plausible claim for relief against it. Confidence Ford addresses each of Trupia's claims in turn.

### A. TCIA and Implementing Regulation (Counts I–II)

In Count I, Trupia claims that "Defendants violated [47 U.S.C.] § 227(e)(1) by spoofing caller ID information with intent to defraud, cause harm, or wrongfully obtain value, as evidence by spoofed local numbers and generic names to deceive [him] into

7

answering." Compl. ¶ 27. Section 227(e)(1) makes it "unlawful for any person within the United States . . . , in connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1).

But fatal to Trupia's claim, "there is no private right of action under § 227(e)." *Clark v. Avatar Technologies Phl, Inc.*, No. H–13–2777, 2014 WL 1342033, at *4 (S.D. Tex. Apr. 3, 2014). In *Clark*, the court observed the complete absence of authority recognizing a private right of action under § 227(e). *See id.* ("[N]either Plaintiff nor Defendant has cited the Court to any case, reported in either the official or unofficial reporters, in which a court has held that a plaintiff has a private right of action under § 227(e)."). And after independently examining § 227(e)'s text and legislative history, the court concluded that Congress surely did not intend to create a private right of action to enforce the TCIA. *See id.* at *3 ("[T]he statute and its legislative history indicate clearly that Congress did not intend to create a private right of action to enforce the TCIA."). Other district courts—across circuits—are in accord. *See, e.g.*, *Lucombe v. Harborview Cap. Holdings LLC*, No. 8:25-cv-688-KKM-AAS, 2025 WL 3144180, at *7 (M.D. Fla. Oct. 8, 2025) ("Mr. Lucombe does not have a private cause of action under 47 U.S.C. § 227(e)."); *Dobronski v. Selectquote Ins. Servs.*, No. 2:23-cv-12597, 2025 WL 904370, at *12 (E.D. Mich. Jan. 14, 2025) ("There is no private right of action to enforce violations of 47 U.S.C. § 227(e) . . . ."); *Westgate Resorts, Ltd. v. Wesley Fin. Grp., LLC*, No. 3:20-cv-00599, 2022 WL 706929, at *4 (M.D. Tenn. Mar. 8, 2022) ("Although the Sixth Circuit does not appear

8

to have addressed the question, most courts that have considered it have concluded that the TICA does not create a private right of action."); *McDermet v. John C. Heath, Att'y at Law*, PLLC, No. 17-12327-FDS, 2018 WL 627371, at *3 (D. Mass. Jan. 30, 2018) (dismissing § 227(e) claim because "it is clear that Congress did not create a private right of action to enforce the TCIA"); *Free Conferencing Corp. v. Comcast Corp.*, No. CV 15-4076 FMO (PJWx), 2016 WL 7637664, at *7 (C.D. Cal. May 31, 2016) ("There is no private right of action for violations of 47 U.S.C. § 227(e)."); *Ghawi v. Law Offs. Howard Lee Schiff, P.C.*, No. 3:13–cv–115(JBA), 2014 WL 6885141, at *6 (D. Conn. Dec. 1, 2014) (holding that the plaintiff alleged "violations of several statutes," including 47 U.S.C. § 227(e), "which do not provide for private rights of action"); *cf. Fisher v. Alarm.com Holdings, Inc.*, No. 18 cv 2299, 2018 WL 5717579, at *2 (N.D. Ill. Nov. 1, 2018) (observing the plaintiff's voluntary dismissal of "claims premised on violations of 47 U.S.C. § 227(e) because there is no private right of action to enforce that provision").

The same logic befalls Count II, Trupia's claim under 47 C.F.R. § 64.1604(a).[4] Section 64.1604(a) is merely an implementing regulation of 47 U.S.C. § 227(e). *See United States v. Rhodes*, No. CV 21-110-M-DLC, 2024 WL 1269182, at *1 (D. Mont. Feb. 20, 2024). And because Congress did not create a private right of action under § 227(e), an implementing regulation cannot supply one. *See Alexander v. Sandoval*, 532 U.S. 275, 291

---

[4] Section 64.1604(a) provides: "No person or entity in the United States, nor any person or entity outside the United States if the recipient is within the United States, shall, with the intent to defraud, cause harm, or wrongfully obtain anything of value, knowingly cause, directly, or indirectly, any caller identification service to transmit or display misleading or inaccurate caller identification information in connection with any voice service or text messaging service."

9

(2001) ("[I]t is most certainly incorrect to say that language in regulation can conjure up a private cause of action that has not been authorized by Congress."); *Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 563 (6th Cir. 2014) ("[T]he Supreme Court has dismissed an argument that a private right of action can be found in a regulation enacted pursuant to a statute."). Thus, the Court should dismiss Counts I and II with prejudice for lack of a private right of action. *See, e.g.*, *Campbell v. Eaton Corp.*, No. 1:17-cv-02661-RM-SKC, 2019 WL 5458816, at *6 (D. Colo. Sep. 30, 2019) ("The [statutory] retaliation claim should be dismissed WITH PREJUDICE because there is no private right of action under that statute.").

Even apart from the absence of a private right of action, Trupia's own allegations fail to plausibly establish Confidence Ford's liability under the TCIA or its implementing regulation. Trupia alleges that "Confidence Ford of Norman (405) 217-0169" called him on May 1, 2024. Compl. ¶ 19. That allegation does not plausibly suggest that Confidence Ford knowingly transmitted misleading or inaccurate caller identification information with the requisite intent to defraud, cause harm, or wrongfully obtain value. *See* 47 U.S.C. § 227(e)(1); 47 C.F.R. § 64.1604(a).

Nor do Trupia's generalized allegations suffice. After alleging receipt of "hundreds of unsolicited telemarketing calls to his cellular phone from or on behalf of Defendants" from "early 2023 . . . through 2024," Trupia claims the "calls . . . us[ed] spoofed caller IDs displaying local area codes or generic names, with numbers traced via reverse lookups to Defendants' common carrier services." Compl. ¶ 17. But this pleading makes no effort to tie the allegedly spoofed caller identification information to any specific defendant, much

less to Confidence Ford. "Tenth Circuit precedent regarding such general allegations against groups of Defendants is abundantly clear; these claims are not sufficient to withstand a 12(b)(6) motion." *Stout v. United States ex rel. U.S. Marshal's Serv.*, No. 13cv753 WJ/GBW, 2013 WL 5954784, at *3 (W.D. Okla. Nov. 4, 2013) (collecting cases); *see also Gokool v. Okla. City Univ.*, No. CIV-16-807-R, 2016 WL 10520949, at *6 (W.D. Okla. Dec. 29, 2016) ("For one, broad claims against numerous defendants without identifying specific actions of specific individuals at specific times will not suffice to survive a motion to dismiss. Further, these are the types of conclusory allegations which *Iqbal* holds will not give rise to a claim for relief." (citation modified)).

### B. TCPA and Implementing Regulation (Count III)

Next, invoking the TCPA, Trupia claims that "Defendants" violated 47 U.S.C. § 227(b)(1)(A) and (B), along with one of § 227(b)'s implementing regulations, 47 C.F.R. § 64.1200(a)(1). Compl. ¶¶ 33–35.

These provisions collectively restrict the use of automated telephone equipment. Section 227(b)(1)(A) generally proscribes calls to cellular telephones "using any automatic telephone dialing system[5] or an artificial or prerecorded voice" without prior express consent. 47 U.S.C. § 227(b)(1)(A). Section (b)(1)(B) generally prohibits "call[s] to any residential telephone line using an artificial or prerecorded voice to deliver a message"

---

[5] "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 398 (2021). Trupia does not allege a violation of the TCPA or its implementing regulations for the use of an automatic telephone dialing system. *See* Compl. ¶¶ 33–35.

11

without prior express consent. *Id.* § 227(b)(1)(B). And § 64.1200(a)(1) implements these statutory prohibitions. *See* 47 C.F.R. § 64.1200(a)(1). As pled, Trupia alleges TCPA liability on the theory that Defendants placed calls to his phone "using an artificial or prerecorded voice" without consent. Compl. ¶¶ 33–35.

But Trupia's own allegations are inconsistent with TCPA liability against Confidence Ford. In the only allegation aimed directly at Confidence Ford, Trupia claims that its "manager"—not an artificial or prerecorded voice—called him personally. *Id.* ¶ 19. Nor, as explained above, do generalized allegations directed at all Defendants suffice. *See, e.g.*, *id.* ¶ 20 ("Several calls played prerecorded messages with artificial voices promoting investments or donations, using generic scripts."). Because Trupia's theory of liability rests on conduct he does not attribute to Confidence Ford, and because his remaining allegations are too generalized to plausibly state a claim, the Court should dismiss Count III against Confidence Ford under Rule 12(b)(6).

### C. OTSA (Counts IV–X)

Turning from federal law, Trupia asserts seven claims under the OTSA, all of which fail to state a claim. Specifically, he alleges that "Defendants" violated

- Okla. Stat. tit. 15, § 775C.3(A) "by using an automated system for selecting or dialing telephone numbers without consent" (Count IV),

- § 775C.3(A) "by playing a recorded message without consent" (Count V),

- § 775C.3(B) "by using misleading or inaccurate caller ID information to disguise the call's origin" (Count VI),

- § 775C.4(A)(1) "by making calls outside the permitted 8:00 a.m. to 8:00 p.m. window" (Count VII),

- § 775C.4(A)(2) "by making more than three calls in a 24-hour period" (Count VIII),

- § 775C.4(B)(1) "by failing to clearly state the solicitor's name and the purpose of the call within the first 30 seconds" (Count IX), and

- § 775C.4(B)(2) "by failing to transmit accurate caller ID information, including name and telephone number" (Count X).

Compl. ¶¶ 38, 41, 44–45, 48, 51, 54.

Starting with Counts V, VI, and X, Trupia's own allegations foreclose Confidence Ford's liability under the OTSA. Again, Trupia alleges that he received a call from "Confidence Ford of Norman (405) 217-0169" by way of its "manager." *Id.* ¶ 19. Such allegations are plainly incompatible with

- liability under § 775C.3(A), which prohibits commercial telephonic sales calls that "involve . . . the playing of a recorded message,"

- liability under § 775C.3(B), which prohibits "fail[ing] to transmit or caus[ing] not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a commercial telephonic sales call," or

- liability under § 775C.4(B)(2), which prohibits "us[ing] technology that deliberately displays a different caller identification number than the number from where the call is originating to conceal the true identity of the caller."

Trupia's remaining OTSA claims fare no better. With respect to Count IV, Trupia offers only the vague and conclusory allegation that unspecified "calls exhibited characteristics of being made with an Automatic Telephone Dialing System (ATDS) . . . , which requires equipment that uses a random or sequential number generator to store or produce numbers and dial them." Compl. ¶ 20. Such "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

13

Moving to Counts VII and VIII, the Complaint is devoid of factual allegations suggesting that Confidence Ford's alleged calls were placed outside the statute's permitted calling hours or exceeded its call-frequency limitations. To the contrary, in the sole allegation actually aimed at Confidence Ford, Trupia claims the call occurred just after noon. *See* Compl. ¶ 19.

Finally, Count IX fails as a matter of law. Trupia alleges that "Defendants violated § 775C.4(B)(1) by failing to clearly state the solicitor's name and the purpose of the call within the first 30 seconds." *Id.* ¶ 51. But § 775C.4(B)(1) imposes no such verbal-disclosure requirement; it concerns the transmission of caller-identification information, not what is said during the call.

### D.    State Tort Law (Count XI)

Lastly, Trupia claims that "Defendants intentionally intruded upon [his] seclusion by repeatedly calling his private cellular line despite demands to stop, causing annoyance and distress." Compl. ¶ 57. "Oklahoma recognizes the common-law tort of invasion of privacy by intrusion upon one's seclusion." *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994). To prevail on such a claim against Confidence Ford, Trupia must ultimately establish (1) "a nonconsensual intrusion," (2) "which was highly offensive to a reasonable person." *Id.*

Trupia fails to plausibly allege conduct meeting that high standard. As to Confidence Ford, he identifies only a single "rude" call on May 1, followed by what he vaguely characterizes as "repeated[]" follow-up calls "after he explained a demand letter was forthcoming." Compl. ¶ 19. But, of course, a few phone calls do not amount to invasion

14

of privacy. *See* Restatement (Second) of Torts § 652B cmt. D ("[T]here is no liability [for invasion of privacy] for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded."); *cf. Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1225 (10th Cir. 2007) (observing that "tort law sets a high bar for invasion of privacy"). Nor, accepting Trupia's allegations as true, can he invite a response by threatening to send a demand letter and later plausibly claim that a responsive return call constitutes an intrusion into seclusion. *See, e.g.*, *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) ("Because one cannot logically intrude into communications to which they are a party, the Court finds Plaintiff failed to sufficiently plead a claim for intrusion upon seclusion."). As it stands, Trupia has failed to plausibly allege a state-law claim for intrusion upon seclusion.

## Conclusion

Because Trupia (1) fails to comply with Rule 8 and (2) fails to state any plausible claim against Confidence Ford under Rule 12(b)(6), the Court should dismiss his Complaint.

Respectfully submitted,

*/s/Jason A. Sansone*
Lyndon W. Whitmire, OBA No. 17164
Jason A. Sansone, OBA No. 30913
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, Oklahoma 73103
Telephone: 405-235-4100
Facsimile: 405-235-4133
lwwhitmire@phillipsmurrah.com
jasansone@phillipsmurrah.com
***Attorneys for Defendant Confidence Ford of Norman***

## CERTIFICATE OF SERVICE

This is to certify that on the 16th day of December, 2025, a true and correct copy of the above and foregoing was mailed by first class mail, postage prepaid, to the following:

Anthony Trupia
605 SE 21st Street
Oklahoma City, OK  73129

*/s/Jason A. Sansone*
Jason A. Sansone, OBA No. 30913

16