**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF OKLAHOMA**

FILED

MAY 0 1 2026

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

ANTHONY TRUPIA, Plaintiff,

v.

ONVOY, LLC; LEVEL 3 COMMUNICATIONS, LLC; TELNYX LLC; HLV VENTURES, an unregistered New York company; HERITAGE HARD ASSETS LLC; KYLE PATTON, individually as Manager/Officer of HERITAGE HARD ASSETS LLC; REAGAN GOLD GROUP, LLC; WORLD HARVEST CHURCH, INC.; SOUTH BAY GALLERIES LLC; CONFIDENCE FORD OF NORMAN; FORD MOTOR COMPANY; LP OPERATING; and DOES 1 through 10, inclusive, Defendants.

**Case No.:** CIV-25-1134-D

**JURY TRIAL DEMANDED**

### FIRST AMENDED COMPLAINT FOR CIVIL PENALTIES,

### PERMANENT INJUNCTION, AND OTHER EQUITABLE RELIEF

COMES NOW the Plaintiff, Anthony Trupia, appearing *pro se*, and brings this action against the above-named Defendants for a coordinated, industrialized campaign of telemarketing harassment, invasion of privacy, and statutory violations. In support thereof, Plaintiff alleges as follows:

## I. PRELIMINARY STATEMENT: THE "HOWARD SHIP" ROBOCALL ARBITRAGE SCHEME

1. **The Nature of the Action:** This case concerns a massive, multi-jurisdictional invasion of the Plaintiff's privacy targeting his residential cellular telephone.

2. **Industrialized Fraud:** The Defendants have abandoned lawful marketing protocols in favor of a "black market" arbitrage strategy to bypass consumer privacy protections.

3. **The "Howard Ship" Tracer:** The forensic "fingerprint" of this illicit database is the fictitious name "Howard Ship".

4. **Forensic Proof of Lead Generation Scheme:** Plaintiff is not "Howard Ship". The fact that over a dozen unrelated companies made the exact same 'clerical' error, associating Plaintiff's number with this specific alias, serves as mathematical proof of a shared, corrupted data source.

5. **Ghost Call Surveillance:** Prior to solicitation, Plaintiff was subjected to a wave of "Ghost Calls"; silent pings used by "SIP dialing" bots and Home Location Register (HLR) Lookups to verify line activity.

6. **Ratification through Concealment:** Each Defendant has repeatedly refused to identify the source of the "Howard Ship" lead, even when offered settlement incentives for transparency. This persistent concealment of the lead-generation source constitutes the Defendants' ratification of the underlying illegal conduct.

## II. PARTIES

7. **Plaintiff Anthony Trupia** is a natural person and resident of Oklahoma City, Oklahoma County, Oklahoma. Plaintiff received these calls on Oklahoma City phone number (405) 269-1782, a residential cellular line. Plaintiff has never provided consent to any Defendant or their agents for commercial calls or robocalls.

8. **The Target Device:** Plaintiff was the subscriber and regular user of the cellular telephone number (405) 269-1782 (the "405 Number") during the time period described in this complaint.

2

9. **Defendant Onvoy, LLC** is a Delaware limited liability company with its principal place of business in Minnesota, doing business as a common carrier providing Voice over Internet Protocol (VoIP) services, including the provision of phone numbers and routing for high-volume calling campaigns, nationwide, including in this District.

10. **Defendant Level 3 Communications, LLC** is a Delaware limited liability company with its principal place of business in Colorado, doing business as a common carrier providing telecommunications services, including backbone infrastructure for VoIP and spoofed calling, nationwide, including in this District.

11. **Defendant Telnyx LLC** is an Illinois limited liability company with its principal place of business in Illinois, doing business as a common carrier providing VoIP services, including SIP trunking and messaging for automated dialing systems, nationwide, including in this District.

12. **Defendant HLV Ventures** is an unregistered New York company engaged in telemarketing and providing investment opportunities and alternative assets, with operations affecting this District through unlawful calls.

13. **Defendant Heritage Hard Assets LLC** is a Florida limited liability company engaged in telemarketing and selling numismatic coins, silver, and gold, with operations affecting this District through unlawful calls.

14. **Defendant Kyle Patton** is an individual residing in Florida, serving as a manager/officer of Heritage Hard Assets LLC, and personally directing or participating in the unlawful telemarketing activities described herein, including harassing follow-up communications.

15. **Defendant Reagan Gold Group, LLC** is a California limited liability company engaged in telemarketing and assisting with gold and silver IRAs, buying and selling precious metals, with operations affecting this District through unlawful calls.

16. **Defendant World Harvest Church, Inc.** is an Ohio corporation engaged in religious outreach and soliciting charitable donations via telemarketing, with operations affecting this District through unlawful calls.

17. **Defendant South Bay Galleries LLC** is a New York limited liability company engaged in telemarketing and retailing numismatic and bullion coins in gold and silver, with operations affecting this District through unlawful calls.

18. **Defendant Confidence Ford of Norman** is an Oklahoma entity operating as a car dealership in Norman, Oklahoma, engaged in telemarketing for vehicle sales and services, with operations in this District through unlawful calls.

19. **Defendant Ford Motor Company** is a Delaware corporation with its principal place of business in Michigan, a national automobile manufacturer providing leads and supporting telemarketing for its dealerships, with operations affecting this District through unlawful calls.

20. **Defendant LP Operating** is a Texas entity (website: lpoperating.com) engaged in telemarketing for oil drilling investments, with operations affecting this District through unlawful calls.

21. **Defendants Does 1-10** are the upstream lead generators and data brokers who scraped, appended, and verified Plaintiff's data with various TCPA and OTSA violating technologies before selling it to the named Defendants.

## III. JURISDICTION AND VENUE

22. **Subject Matter Jurisdiction:** Proper in this Court as the amount in controversy exceeds the jurisdictional minimum.

23. **Statutory Basis:** Plaintiff asserts claims under the Oklahoma Telephone Solicitation Act (OTSA), 15 O.S. § 775C.1 et seq., and the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.

4

24. **Personal Jurisdiction:** Proper because Defendants purposefully directed commercial activities at Oklahoma. Specifically:

   a. Defendants intentionally dialed a number with a "405" (Oklahoma) area code.

   b. Defendants utilized "Neighbor Spoofing" technology to display false "405" area code Caller IDs to induce an answer from an Oklahoma resident.

   c. Defendants participated in "Ping Post" or substantially similar auctions where they affirmatively bid on a lead identified as residing in Oklahoma (associated with the "Howard Ship" profile). Articles on "Ping Post" markets:

   https://www.anura.io/fraud-tidbits/what-is-ping-post-in-lead-generation

   https://standardinformation.com/company/resources/ping-post-the-modern-lead-distribution-method

25. **Statutory Presumption:** Under 15 O.S. § 775C.3(D), there is a rebuttable presumption that a call made to an Oklahoma area code is made to an Oklahoma resident.

26. **Venue:** Proper in Oklahoma County as the Plaintiff resides here and the injury occurred here.

27. **Related Case and Removal:** Plaintiff believes State Jurisdiction is more appropriate for TCPA related claims, but this claim was dismissed without prejudice February 25, 2025, under FRCP 8, see Trupia v. Heritage et al, 5:24-cv-00498-SLP, without remand, and thus Plaintiff submits to the jurisdiction of OKWD as required and refiles as allowed.

## IV. THE ANATOMY OF THE BLACK MARKET: ECONOMIC IMPERATIVES OF FRAUD

28. In the legitimate economy, a business seeking to sell financial services or precious metals must compete for visibility on platforms like Google Ads. However, recent data indicates a dramatic inflation in Cost Per Click (CPC) and Cost Per Lead (CPL)

metrics, effectively pricing many operators out of the market. Between 2020 and 2025, the cost to acquire a compliant, high-intent lead has surged, driven by increased competition and privacy regulations that restrict third-party tracking. Benchmark data for 2024 and 2025 reveals that the financial and legal sectors face some of the highest acquisition costs in the digital landscape. For instance, the legal and insurance sectors see CPCs ranging from $67 to over $71 per click, not per customer.

How Much Does Google Ads Cost in 2025?

https://www.webfx.com/blog/ppc/much-cost-advertise-google-adwords/

29. In the specific verticals relevant to this lawsuit, Finance, Insurance, and Precious Metals (often categorized under "finance" or high-ticket retail), the average Cost Per Lead (CPL) on legitimate platforms like Google Ads hovers around $70 to $100, with some sectors pushing significantly higher.

Google Ads Benchmarks 2024: New Trends & Insights for Key Industries |

https://www.wordstream.com/blog/2024-google-ads-benchmarks

| Metric | 2024 Benchmark | 2025 Forecast/Trend | Implication for Defendants |
|---|---|---|---|
| Google Ads CPC (Finance) | ~$3.44 - $5.00+ | +6.6% to +12.3% Monthly Increases | High ongoing cost for traffic. |
| Google Ads CPL (Finance) | ~$75.94 | ~$80.00 - $100.00 | Legit leads are expensive. |
| Conversion Rate | ~5% - 7% | Flat or Declining | 95% of ad spend is wasted. |
| Black Market Lead Cost | $0.05 - $0.50 | Stable / Deflationary | 99% cheaper than legit leads. |

30. The data suggests a "profitability gap." A legitimate business paying $100 for a compliant lead must close deals at an extremely high rate to survive. However, a business willing to bypass consent laws can purchase "aged leads" or "data

6

appended" lists for pennies on the dollar, often between $0.25 and $1.25 per record. Even if the conversion rate on these "dirty" leads is abysmal (e.g., 0.5%), the acquisition cost is so low that the campaign remains profitable. **This is the Arbitrage of Fraud**.

*Aged vs Real-Time Leads: What's Better for ROI?*

https://agedleadstore.com/aged-vs-real-time-leads-whats-better-for-roi/

31. **Willfulness:** The Defendants in this action are engaged in this arbitrage each from unique angles. The sellers are not merely "calling numbers"; they are executing a calculated financial strategy that accepts statutory violations as a cost of doing business. Under Oklahoma law (23 O.S. § 9.1), a jury should be directed to consider the "profitability of the misconduct to the defendant". Similarly, the common carrier defendants ar  not merely serving the parties delivering these calls on both ends, they are knowing connecting these calls while complaints confirm they are participating in this scheme, they are also executing a calculated financial strategy that accepts statutory violations as a cost of doing business.

## V. SPECIFIC DEFENDANT INTERACTIONS

In 2023 and 2024, Plaintiff received over 100 unsolicited phone calls and text messages as part of a coordinated telesales arbitrage scheme. These calls were placed by various telemarketing 'Seller' defendants after purchasing 'dirty' leads created by TCPA and OTSA violating calls placed to plaintiff by unknown John Doe lead selling outfits. The call log for these calls is listed, including dates, times, originating phone numbers, duration (in seconds), and originating common carrier provider, where data was available, as **Exhibit A** to this complaint.

### A. Seller Callers (Business calling Dirty Leads)

32. **Heritage Hard Assets,** on February 7, 2024,  at 2:52pm, contacted Plaintiff via telephone from 561-941-9685 to attempt an unsolicited sales call. The identified call was placed through VoIP provider TELNYX LLC.

    a. On February 11, 2024, Patton and counsel Ludens contacted Plaintiff to dissuade filing this action. Patton's call was placed via LEVEL 3 COMMUNICATIONS, LLC, the same provider used by RGG.

    b. On February 16, 2024, Patton, Heritage, and employees called from a private number multiple times, harassing by starting as a prank, then screaming profanities, calling Plaintiff an "a**hole," claiming knowledge of his address, and threatening to kill him, causing emotional duress.

33. **HLV Ventures,** on November 20, 2023, at 11:27am, contacted Plaintiff via telephone from 631-780-3303 to attempt an unsolicited sales call. The identified call was placed through VoIP provider ONVOY, LLC, the same provider used by World Harvest and South Bay.

34. **Reagan Gold Group, LLC**, on November 3, 2023, at 8:46am, contacted Plaintiff via telephone from 3104244206 to attempt an unsolicited sales call. The identified call was placed through VoIP provider LEVEL 3 COMMUNICATIONS, LLC, the same provider used by Patton.

35. **World Harvest Church,** contacted Plaintiff via telephone on January 19, 2024, at 6:41pm, from 614-992-8245 to attempt an unsolicited sales call, followed by repeated calls on January 23 (12:23pm, told to stop calling, 877-770-8125), 24 (9:31am, 614-967-7013), and 25 (9:56am, 614-964-5608). The calls were placed through VoIP provider ONVOY, LLC, the same provider used by HLV and South Bay.

    a. Truecaller.com has thousands of reports for World Harvest alleging spam, robocalls, and harassment.

    b. The Better Business Bureau reports: "According to the information we have at this time, this church or religious organization does not have an IRS designation and/or does not conduct charitable solicitations, for which BBB Charitable Accountability Standards would be applicable. Therefore, BBB does not evaluate this organization concerning BBB Charitable Accountability Standards, and publishes only this informational report. BBB

8

will update this report accordingly, should a change in this status come to our attention."

36. **South Bay Galleries LLC,** on February 16, 2024, at 4:10pm, contacted Plaintiff via telephone from 405-389-7569, to attempt an unsolicited sales call. The identified call was placed through VoIP provider ONVOY, LLC, the same provider used by HLV and World Harvest. When Plaintiff requested a manager to discuss the call violations, the agent for South Bay screamed "Oh my gawd!" and hung up the phone. This information was provided to South Bay via email exchange.

37. **LP Operating**, on July 18, 9:54am, contacted Plaintiff via telephone from 830-331-9001, to attempt unsolicited sales calls. The identified call was placed through VoIP provider Bandwidth. Plaintiff called back and discussed this matter with Tim Philpot, and discussed settling this matter at no cost, with a release of liability, if LP Operating would just provide the source he bought the lead with 'Howard Ship' and Plaintiff's phone number from. Tim Philpot expressed agreement, but then never followed through, despite follow-up emails, confirming ratification of the 'dirty' leads used.

38. **Confidence Ford of Norman**, on May 1, 2024 at 12:35pm, contacted Plaintiff via telephone from 405-217-0169, to attempt unsolicited sales calls. The identified call was placed through VoIP provider Level 3 Communications, the same provider used by Reagan Gold Group. Plaintiff called Confidence Ford and asked for an email with which to relay a demand letter. The answering employee refused, but said he would pass Plaintiff's phone number to management. A manager, Jason, from Confidence Ford called back, argued with Plaintiff aggressively instead of just providing this email for written notice, and even called back repeatedly until Plaintiff told him to stop calling.

39. **Ford Motor Company** was identified as the source of the 'Howard Ship' lead that Confidence Ford of Norman used to contact Plaintiff, Confidence Ford Norman, themselves. When Jason, acting manager for Confidence Ford of Norman called Plaintiff, Plaintiff specifically asked where Ford Norman got the lead information from. Jason stated 'that they get all the leads from Ford Motor.'

9

40. The defendants Heritage, HLV, RGG, World Harvest, South Bay, and Confidence Ford of Norman all use and delivered these call from the same three VoIP companies: TELNYX LLC, LEVEL 3 COMMUNICATIONS, LLC, and ONVOY, LLC.

41. Every one of these 'Seller' defendants, *Heritage Hard Assets, HLV Ventures, Reagan Gold Group, World Harvest Church, South Bay Galleries, LP Operating, and Confidence Ford of Norman, and their agents*, explicitly:

   a. **called 405-269-1782**, confirming their participation in the robocall arbitrage scheme targeting this phone number. This alone, among many companies from disparate industries, would be proof of this participation.

   b. **asked for 'Howard Ship,'** the unique 'tracer' name tied to this phone number and identified throughout this complaint, when they called this phone number, 405-269-1782. This is double and mathematically profound proof each of these defendants has participated in this scheme.

   c. **purposely directed their commercial activities at Oklahoma.** By participating in a real-time 'Ping Post' auction, or similar bidding mechanism for Oklahoma leads, Defendants did not merely receive Plaintiff's number through random or fortuitous contact; they engaged in affirmative conduct by expressly aiming their bid at a lead profile effectively tagged with an Oklahoma area code/residency. This selective purchasing demonstrates that Defendants intended to avail themselves of the privilege of conducting business with a consumer in Oklahoma. Contrary allegations from Defendants fall flat when faced with the quantity of different businesses, across different industries, all calling this lead.

## B. Common Carriers: A Business Model Predicated on Abuse

42. The illegal robocalls plaguing Plaintiff are not the result of isolated rogue actors, but the product of a symbiotic relationship between predatory telemarketers and the Carrier Defendants—Onvoy, LLC (d/b/a Inteliquent), Level 3 Communications, LLC (a Lumen Technologies subsidiary), and Telnyx LLC. These carriers function as "Gateway

Providers," knowingly monetizing high-volume, illegal traffic while systematically dismantling the safety protocols designed to protect American consumers.

43. **Telnyx LLC**: Institutionalized Evasion and Regulatory Recidivism

   a. **The "MarioCop" Enforcement Action**: Defendant Telnyx's disregard for "Know Your Customer" (KYC) laws is so egregious that it recently facilitated a robocall attack on the Federal Communications Commission (FCC) itself. In February 2025, the FCC proposed a $4,492,500 fine against Telnyx for facilitating the "MarioCop" scheme, where fraudsters impersonated FCC "Fraud Prevention" staff to extort government employees. The FCC investigation revealed that Telnyx: a. Accepted Bitcoin as payment for these accounts, a method universally recognized as a "Red Flag" for criminal activity; b. Failed to collect even basic telephone numbers for the account holders; and c. Allowed the attackers to register with a physical address at a Canadian hotel while accessing the network via IP addresses in the United Kingdom.

   b. **Global Compliance Failures**: Telnyx's negligence is a global pattern. In 2023, the Australian Communications and Media Authority (ACMA) fined Telnyx $106,560 for systemic breaches of public safety laws between 2017 and 2022. The investigation found that Telnyx allowed 4,666 scam SMS messages to be sent using spoofed sender IDs and failed to provide customer location data to the emergency services database (IPND) on 3,256 occasions, directly endangering public safety.



Telnyx fined for failing to curb SMS scams, mobile number fraud Featured

0        f  Share        X  Tweet        in  Share        Share        Share
Shares

By Kenn Anthony Mendoza (/twins-magazine/author/720955-kenn-anthony-mendoza.html)

Comments 0 Comments (/technology-regulation/telnyx-fined-for-failing-to-curb-sms-scams-mobile-number-fraud.html#disqus_thread)

Telnyx Australia has paid $106,560 infringement notice after the Australian Communications and Media Authority found the telco failed to reduce scam SMS and prevent mobile number fraud between 2017 and 2022, breaching anti-scam and public safety obligations.

The ACMA's investigation found the business allowed at least 4,688 SMS to be sent using text-based sender IDs (i.e. shortened business names) without sufficient checks to ensure they weren't scams.

ACMA chair Nerida O'Loughlin claimed Telnyx's systemic failures had left its customers and the broader community at risk of harm over a lengthy period.

O'Loughlin said being a smaller telco is no excuse to breach the rules.

"Telnyx's breaches weakened the application of anti-scams rules at a time when scam SMS have heavily impacted on many Australians," she said.

Telnyx also did not undertake adequate ID checks for its prepaid mobile customers or when transferring customers from other telcos.

The ACMA noted Telnyx also failed to give customer data to the Integrated Public Number Database (IPND) on more than 3,256 occasions between 2017 and 2022.

The IPND is used by Triple Zero to help locate people in an emergency, for the Emergency Alert Service to warn Australians of emergencies like flood or bushfire, and to assist law enforcement activities.

Telnyx is not the only telco having issues with the IPND. Last November, the ACMA fined Telstra (/technology-regulation/telstra-still-in-the-naughty-list-for-ipnd-compliance-

c.  **Affirmative "Coaching" of Spammers**: Telnyx actively instructs its customers on how to bypass consumer protection filters. On its own public support website, Telnyx publishes a guide titled "How to Handle Spam Scam Likely," which advises customers to:

i.      "Wait for numbers to be aged" before dialing heavily, a technique known as "snowshoeing" used to trick analytics algorithms; and

ii.     Manipulate CNAM (Caller ID Name) displays to appear legitimate. By providing the technical "playbook" to evade detection, Telnyx has moved beyond the role of a neutral carrier to that of a active participant in the harassment of Plaintiff.

12

# Telnyx - How to Handle Spam Scam Likely

We will explain the spam likely flag and what to do in case your number has been flagged.

Written by Dillin
Updated over a week ago

Table of contents                                                        ⌄

## Telnyx - How to Handle Spam Likely

### Steps to follow to mitigate a "Spam or Scam Likely" flag on your phone number

If your phone number has been flagged as "Spam Likely" then:

1. Register your phone number with the FCR at https://www.freecallerregistry.com/fcr/.
2. Add CNAM by going to Mission Control Portal into the "My Numbers" section, find the "spam likely" phone number and click the cog icon for advanced settings. Once in the advanced settings you can enable CNAM Listing and add a custom name. CNAM is not applicable for toll-free numbers. Having CNAM information is important to the engines that analyze and identify phone numbers as "spam likely".

d. **The BBB reports and confirms this pattern** of willful blindness to complaints and Telnyx' role in this scheme:

**Complaint Type:**
Problems with Product/Service
**Status:**
Answered

**Initial Complaint**
12/20/2023

Within the last two weeks I have gotten scam calls from a TELNYX customer. I called the company and talked to two different people, the second guy said his name was ***, and he refused to transfer me to a supervisor I asked they do something, but apparently TELNYX I okay with allowing scammers to use their company to harass people.

**Customer response**
12/27/2023

Complaint 21037396

I am rejecting this response because: I tried twice to contact your company. your customer service representatives were rude and refused to transfer me to a supervisor after I asked. I also told them I would be reporting this to the BBB, but they were unconcerned about that. I should not have to contact a company more than once when I've alerted them that a SCAM going on and their business is being used to front the SCAM.
Sincerely,

**Complaint Type:**
Problems with Product/Service
**Status:**
Resolved

**Initial Complaint**
11/23/2022

They are a debt collection service and they constantly harass me and leave automated voicemails multiple times a day. They call from 8am to 8pm and even call on weekends. If they really wanted to ************ then they would send a letter like every other company has.

**Customer response**
12/21/2023

Complaint: 21037996

I am rejecting this response because: this is a bot response and I did very rude, just like the actual individuals I spoke with over the phone were rude to me, you should be ashamed of your companys performance !

Sincerely,

**Complaint Type:**
Problems with Product/Service
**Status:**
Answered

**Initial Complaint**
01/22/2023

It seems TELNYX sold my email to a variety of companies and I keep getting bogus advertising and alert messages to renew services, which are totally NOT from the company - when I called the the phone number, it went to an automated system. when I forwarded the email to their "abuse" addy; it was bounced back. Judging by the other complaints, TELNYX doesn't care who buys their product, or how it's being used to SCAM people I don't even know how they got my email address DO NOT RESPOND TO ANY EMAIL FROM THIS COMPANY!!

**Initial Complaint**
07/03/2022

This company spam calls me non stop. The number is blocked, but still shows up as an attempted call and shows how many times the number has tried to call me. I have nine missed calls, one immediately after another, all within a matter of minutes. As soon as my voice-mail kicks on, the number instantly hangs up and calls right back! This is absolutely ridiculous. I have no idea who these people are, all I know is that if they continue calling, I'm reporting the number and business name to my local law enforcement.

**Initial Complaint**
06/20/2022

This company tried to *** my debit card 100$ then 50$ then 10$ and finally 1$, I have had no interactions with this company nor do I know what they sell. 4 random charges just appeared on my bank account. I called my bank and changed all of my accts. This company should be investigated. I want to know why this happened and on some reassurance from this company that they are ethical

👤 **Initial Complaint**
👥 08/03/2022

For several years, I have been bothered and harassed by robocall, telemarketers, SSA-impersonators, car warranty scams, ******* Benefits Advisors and other undesirables from

https://www.bbb.org/us/il/chicago/profile/telecommunications/telnyx-llc-0854-1000016268/complaints                    5/9

2/13/24, 1:43 PM                              Telnyx LLC | Complaints | Better Business Bureau® Profile

telephone numbers associated with Telnyx. I have brought this issue to Telnyx's attention to no avail. They simply ignore the majority of my complaints and concerns. Occasionally, they choose to respond, but it is very, very rare. I have reported issues to various Telnyx emails (with documented proof of doing so). I have also reported issues here: https://telnyx.com/report-abuse. Nothing seems to make any difference.Here are just VERY few of the recent examples of spammers harassing my cell phone, which has been on the *** since 2006.************* - Violations of TCPA on 02.24.22 at 3:52 PM CST. No response from Telnyx.*********** called on 07.25.22 at 3:10 PM CST. No response from Telnyx.*********** called at 9:20 AM CST on 07.27.22. No response from Telnyx.*********** called at 9:01 AM CST on 08.03.22. No response as of yet from Telnyx.All of the aforementioned facts make me believe that Telnyx is a safe haven for scams and robocalls. They appear to be utilized exclusively by foreign scammers and telemarketers violating TCPA, including but not limited to, SSA calls, car warranty spam, ******** benefits advisors, sales of prescription medications without any prescription and many, many other types of illegal activities.

**Complaint Type:**
Problems with Product/Service
**Status:**

44. **Onvoy, LLC (Inteliquent):** The Wholesale Engine of Fraud

    a. **Operation Robocall Roundup:** Defendant Onvoy is a primary target of the Anti-Robocall Multistate Litigation Task Force. Data from the Industry Traceback Group (ITG) establishes Onvoy as a central node in the illegal call ecosystem: a. Since 2019, Onvoy has received at least 9,712 traceback notices identifying it as the source of illegal calls. b. Despite being formally warned by state Attorneys General in August 2022, Onvoy continued its practices, receiving over 5,700 additional traceback notices after the warning. c. Regulators estimate Onvoy facilitated 1.425 billion Social Security/IRS imposter calls and 450 million Amazon/Apple imposter calls over a three-to-four-year period.

    b. **Facilitation of "Consumer Debt Agency" Scams:** Onvoy provides the telecommunications infrastructure for a notorious "Consumer Debt Agency" scam. BBB complaints identify Onvoy numbers (e.g., 513-513-7730) being used by foreign call centers posing as debt collectors to threaten victims with

14

arrest. This matches the harassment profile experienced by Plaintiff regarding calls from Defendants HLV Ventures and South Bay Galleries, confirming Onvoy's role as the carrier of choice for phantom debt operations.



**Initial Complaint**
02/19/2024

**Complaint Type:** Problems with Product/Service
**Status:** Answered

I think it's harassment envoy LLC is or a subsidiary of that is calling 7- 8 a day it's up to 13 today. ********** that's one of the numbers . There are several they call from. How can I get them to stop it's all hours too. I'm going to seek an attorney and press charges enough is enough!

**Initial Complaint**
02/19/2024

**Complaint Type:** Problems with Product/Service
**Status:** Resolved

These scammers keep calling my phone with spoofed numbers pretending to be a legit business. IG Financial

**BBB Scam Tracker**

‹ Back to search

This content is based on victim and potential victim accounts. Government agencies and legitimate business names and phone numbers are often used by scam artists to take advantage of people.

Share and help us warn others

**Description**
They keep telling me I owe out money for loans which I never took out they call from numerous Georgia, us numbers every day say they are calling from a lawyers office

**BBB Scam Tracker**

‹ Back to search

This content is based on victim and potential victim accounts. Government agencies and legitimate business names and phone numbers are often used by scam artists to take advantage of people.

Share and help us warn others

**Description**
Onvoy LLC use spoofed numbers to spam call me multiple times a day. Once I noticed they kept calling everyday with random numbers from my area, I silenced those calls with a spam blocker app. I also blocked those numbers, but it's useless. I'm probably losing clients call as well as other important calls, but it's better than answering those scammers. These scammers need to stop. Onvoy LLC (also known as inteliquent I believe) is harassing million of Americans. I'm desperate this is unacceptable.

c. Reports on the popular social media site Reddit match all the preceding allegations, and confirm the natural reaction to these calls; rage. Reddit users refer to Onvoy spammers as "f***ing disgusting rats":



d. **The "Shell Game" with HLV Ventures**: Onvoy facilitates traffic for Defendant HLV Ventures, identified as an "unregistered New York company." By selling access to unregistered shell entities, Onvoy allows downstream fraudsters to operate with anonymity, shielding the true beneficiaries of the fraud— Defendants Heritage Hard Assets and Reagan Gold Group—from direct liability.

45. Level 3 Communications (Lumen): A Tier 1 Partner in Crime

a. **Willful Blindness to Extortion**: Defendant Level 3 (Lumen) has been identified by the ITG as the originating or gateway provider for 35.7% of all financial services imposter robocalls traced in December 2024. By continuing to route this traffic, Level 3 is knowingly facilitating wire fraud and extortion.

b. **The "RRG" Phantom Debt Scheme**: Level 3 provides VoIP services to "RRG & Associates" (distinct from, but operationally similar to, Defendant Reagan Gold Group's tactics). Public records and consumer reports detail RRG

16

leaving voicemails threatening "immediate filing of a complaint in your local jurisdiction" and "forfeiture of rights." By routing these threats of legal action, Level 3 violates the Truth in Caller ID Act and assists in violations of the FDCPA.

c. **A History of Corporate Malfeasance**: Level 3's refusal to police its network is consistent with its corporate culture of non-compliance:

i. DOJ Kickback Settlement: Level 3 paid $12.7 million to settle Department of Justice allegations that it paid kickbacks to government officials and knowingly submitted false claims to the Department of Homeland Security.

ii. Civil Contempt: The DOJ cited Lumen/CenturyLink for civil contempt for violating federal antitrust orders, labeling the company a "repeat offender" and fining it $275,000 for failing to adhere to court mandates.

iii. The "1.02 Star" Reality: On the Better Business Bureau, Level 3/Lumen holds a rating of 1.02 out of 5 stars. With 813 reports, this score is a statistical anomaly indicating that virtually every single consumer review is the minimum possible score (1 star). The complaints describe "harassing phone calls," "unauthorized charges," and a complete failure of customer service, establishing that the company has actual knowledge of the harm it causes consumers.

Complaint Details

Note that complaint text that is displayed might not represent all complaints filed with BBB. See details.

---

**Complaint Type:**
Problems with Product/Service
**Status:**
Unanswered

**Initial Complaint**
02/09/2024

I have been receiving repeated harassing calls from nonactive numbers affiliated with Level 3 Communications. The most recent calls came from ••••• ••••••• and ••••• •••••••. There is no caller ID and the caller/organization does not leave a message. Upon callback, the automated voice system states the mailbox is full and they are not accepting any calls/messages. Once the numbers are blocked, they continue to call from similar numbers and repeat to harassing/abusive conduct. The telecommunications company need to identify which customers are utilizing and abusing their service to harass unsuspecting victims instead of claiming to only provide a service to others who are making the calls. They are providing a service where bad actors can stalk and/or harass the public with impunity on both ends as the caller cannot be identified and the business is refusing to take action.

46. **All three common carrier defendants, \*Onvoy, LLC, Telnyx LLC, and Level 3 Communications\*,** have ignored extensive warnings from Plaintiff, private parties, and government agencies to this robocall arbitrage scheme.

47. **Onvoy, LLC** (SINCH, FKA INTELIQUENT) is responsible for at least 69 of these calls, see Exhibit A.

48. **Telnyx LLC** is responsible for at least 6 of these calls, see Exhibit A.

49. **Level 3 Communications** (LUMEN, FKA CENTURYLINK) is responsible for at least 12 of these calls, see Exhibit A.

## VI. PERSONAL LIABILITY OF INDIVIDUAL ACTORS AND THE "SURETY" OF HARASSMENT

50. **Personal Participation in Statutory Violations**: Under Oklahoma law and federal common law agency principles, corporate employees are personally liable for torts and statutory violations, including TCPA and OTSA violations, in which they "personally participate," regardless of whether they were acting within the scope of their employment.

51. **Knowledge of Illegality**: The individual calling agents (collectively "Does 1-10") and the seller agents for seller defendants demonstrated actual knowledge that they

were participating in an illegal harassment campaign through the following behavioral patterns:

52. **The "Hang-Up" Reflex**: In nearly every interaction where Plaintiff requested lead-generation transparency or to speak with a compliance officer, the agents immediately terminated the call. Based on Plaintiff's two decades of professional experience in high-volume sales environments, this behavior is a known industrial tactic used when agents are aware they are dialing "dirty" or unverified leads.

53. **Aggressive Retaliation**: Kyle Patton personally escalated the intrusion into Plaintiff's seclusion by making harassing phone calls threatening "that he knew where plaintiff lived" and "that he would kill him".

## VII. FORENSIC EVIDENCE OF AUTOMATION: "GHOST CALLS" AND ACOUSTIC ARTIFACTS

54. **The Surveillance Phase:** Plaintiff received over one hundred "Ghost Calls" characterized by silent or abandoned connections.

55. **HLR Lookups:** These calls were electronic reconnaissance pings used to check if Plaintiff's line was active before the lead was sold.

56. **The Predictive Pause (Dead Air):** Upon answering some calls, Plaintiff experienced 2 to 3 seconds of "dead air". This is the signature of a predictive dialer awaiting Voice Activity Detection (VAD) to route the call to an agent.

57. **AMD Beeps:** Plaintiff frequently heard "beeps" generated by Answering Machine Detection (AMD) algorithms analyzing the audio stream.

58. **Evidence of ATDS:** These acoustic artifacts are forensic fingerprints of an Automated Telephone Dialing System (ATDS). Specifically, the predictive pause and bridging clicks demonstrate that the equipment used by Defendant has the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, thereby meeting the definition of an

ATDS under 47 U.S.C. § 227(a)(1) and an 'automated system' under the Oklahoma Telephone Solicitation Act (OTSA).

59. **Automation via Volume and Absence**: The extraordinary frequency and mechanical precision of these 'ghost calls'—totaling over one hundred connections with no human presence or attempted interaction—constitute forensic proof of a high-capacity automated system. Such a high-volume reconnaissance operation, used to scrub and validate lead lists, is functionally impossible to execute via manual human intervention and confirms the system's capacity to store or produce numbers to be called using a random or sequential number generator under the TCPA and the OTSA.

## VIII. FORENSIC EVIDENCE OF PRERECORD VOICE MESSAGES

60. Several calls played prerecorded messages with artificial voices promoting investments or donations, using generic scripts. For example, Plaintiff received repeated voicemails from "Lisa with Rapid Funding," stating: "*Hi, this is Lisa with Rapid Funding. I'm a private lender and can fund up to $750,000 in working capital. Our process is simple and we don't have any credit minimum. We also have a new consolidation program available that can pay up to five business loans. To get the process started, go to our website at rapidfunding.online. Again, that's rapidfunding.online. You can also give us a call at (754) 294-8357 but applying to the website is the most effective way, which is rapidfunding.online. Press 2 to be removed. Thank you.*" This message is widely reported as a robocall scam, further indicating ATDS use.

https://www.scam-detector.com/validator/rapidfunding-online-review/

## IX. THE "HOWARD SHIP" TRACER AND CONCEALMENT AS RATIFICATION

61. **Shared Hallucination**: Unrelated corporate entities in disparate industries all independently called Plaintiff asking for "Howard Ship".

62. **The "Tracer" Effect:** This shared 'error' proves all Defendants are sourcing from the same corrupted reservoir.

63. **Willful Blindness to "Red Flags":** When Plaintiff and other consumers inform agents of "Wrong Number," the disposition should be logged. Defendants are regularly recording these flags from consumers like Plaintiff, but continue dialing of contacts from the same lead sources despite repeated notice of inaccuracy, an immediately hang up the phone when alerted to these breaches. This constitutes "Willful Blindness".

64. **Affirmative Concealment:** Every Defendant has refused to identify the source of the "Howard Ship" lead. LP Operating specifically refused to provide the source even when offered a 100% settlement discount to identify the vendor; *even with an offer to be completely released from this lawsuit, LP Operating would not provide the lead source for the call they made to Plaintiff's phone number...*

65. **Ratification:** Plaintiff's lead, titled with the name "Howard Ship," is a dirty lead, and Defendant's calls to this dirty lead are confirmation that the Defendants deal in these dirty leads. By accepting the benefit of this lead, and leads like it, while concealing the identity of the violating vendors, Defendants have ratified the illegal means of lead generation and confirmed their role in this **Arbitrage of Fraud**.

## X. CAUSES OF ACTION

### DEFINITIONS FOR CAUSES OF ACTION

66. **"Seller Defendants"** refers collectively to: Heritage Hard Assets LLC, HLV Ventures, Reagan Gold Group, LLC, World Harvest Church, Inc., South Bay Galleries LLC, LP Operating, Confidence Ford of Norman, and Ford Motor Company.

67. **"Carrier Defendants"** refers collectively to: Onvoy, LLC, Level 3 Communications, LLC, and Telnyx LLC.

68. **"John Doe Defendants"** refers to the upstream lead generators who place the "Ghost Callers."

**COUNT I: VIOLATION OF THE OTSA – USE OF AUTOMATED SYSTEM (15 O.S. § 775C.3(A))**
**(Primary Liability: John Does; Vicarious Liability/Ratification: Seller Defendants &**
**Carrier Defendants)**

69. Plaintiff repeats and realleges the allegations contained in Paragraphs 1–65.

70. **Primary Violation (John Doe Defendants):** The John Doe Defendants violated the OTSA by utilizing an "automated system for the selection or dialing of telephone numbers" to place hundreds of "Ghost Calls" and "HLR Lookups" to Plaintiff's number. This is evidenced by the "Howard Ship" tracer, the inhuman volume of calls, and acoustic artifacts (dead air/AMD beeps) proving the system operated without human intervention.

71. **Ratification by Seller Defendants:** The **Seller Defendants** are liable for these violations through ratification.

    a. **Benefit:** They knowingly accepted the benefit of the automated scheme by purchasing the "Howard Ship" leads generated by these illegal calls, and profiting from sales made off of these calls.

    b. **Knowledge:** The presence of the fictitious "Howard Ship" name and the "aged" nature of the leads served as Red Flags that the data was harvested illegally.

    c. **Ratification:** By continuing to purchase and call these leads despite these obvious indicators of fraud, the Seller Defendants ratified the underlying use of the automated system.

72. **Ratification by Carrier Defendants:** The **Carrier Defendants** are liable for these violations through ratification.

    a. **Benefit:** They make millions of dollars a year each routing the automated traffic.

    b. **Facilitation:** They provided the essential telecommunications pipeline for the automated traffic.

    c. **Knowledge:** They had actual knowledge of the automated nature of the calls due to the sheer quantity of traffic (high volume, short duration "Ghost Calls")

and the repeated notices they received from government regulators (tracebacks), the Plaintiff, and private watchdogs (BBB).

    d.  **Ratification:** By refusing to terminate the traffic despite these repeated warnings and continuing to monetize the connections, the Carrier Defendants ratified the use of the automated systems on their networks.

## COUNT II: VIOLATION OF THE OTSA – CALLER ID SPOOFING (15 O.S. § 775C.3(B)) (Primary Liability: John Does; Vicarious Liability/Ratification: Seller Defendants & Carrier Defendants)

73. Plaintiff repeats and realleges the allegations contained in Paragraphs 1–65.

74. **Primary Violation (John Doe Defendants):** The John Doe Defendants violated the OTSA by intentionally "neighbor spoofing" Plaintiff's area code (405) during the "Ghost Call" surveillance phase. This is evidenced by Plaintiff's call logs showing numerous silent calls from local numbers that cannot be called back.

75. **Ratification by Seller Defendants:** The **Seller Defendants** ratified this spoofing by purchasing the data derived from it and calling the phone numbers. The "Howard Ship" profile was built using these deceptive intrusions. By purchasing the fruit of this poisonous tree, the Seller Defendants ratified the deceptive methods used to acquire it.

76. Ratification by Carrier Defendants: The Carrier Defendants ratified this spoofing.

    a.  They possess the technology (STIR/SHAKEN) to verify call origins.

    b.  They received repeated notices (tracebacks and complaints) that their network was being used for spoofed traffic.

    c.  By ignoring these notices and allowing the John Does to continue injecting spoofed calls into the PSTN (Public Switched Telephone Network), the Carrier Defendants ratified the concealment of identity prohibited by the OTSA.

## COUNT III: VIOLATION OF THE TCPA – PRERECORDED VOICE (47 U.S.C. § 227(b)(1)(A)(iii)) (Against Carrier Defendants Only)

77. Plaintiff repeats and realleges the allegations contained in Paragraphs 42–49 and 60.

78. **Prohibition:** The TCPA prohibits the making of any call to a cellular telephone using "an artificial or prerecorded voice" without prior express consent.

79. **Violation:** The **Carrier Defendants** (Onvoy, Level 3, Telnyx) violated this statute by knowingly transferring and routing calls containing prerecorded messages (e.g., the "Lisa with Rapid Funding" scripts) to Plaintiff's cellular device.

80. **Knowledge & Participation:** The Carrier Defendants were not mere passive conduits. They had actual knowledge that the traffic stream contained illegal prerecorded messages due to:

   a. The consistent pattern of short-duration calls characteristic of "robocall blasts."

   b. The repeated complaints and traceback notices identifying their network as the source of these specific prerecorded campaigns.

81. **Liability:** By continuing to route these messages to Plaintiff's phone despite having the ability and duty to block known illegal robocall traffic, the Carrier Defendants are liable for the transmission of the prerecorded voice messages.

## COUNT IV: VIOLATION OF THE TCPA – USE OF AN ATDS (47 U.S.C. § 227(b)(1)(A)(iii)) (Primary Liability: John Does; Vicarious Liability/Ratification: Seller Defendants & Carrier Defendants)

82. Plaintiff repeats and realleges the allegations contained in Paragraphs 54–65.

83. **Primary Violation (John Doe Defendants):** The John Doe Defendants utilized an Automatic Telephone Dialing System (ATDS) to generate the lead list. The "Ghost Call" campaign utilized a random or sequential number generator to ping Plaintiff's block of numbers to verify active lines.

84. **Ratification by Seller Defendants:** The **Seller Defendants** are vicariously liable for this ATDS usage under federal common law agency principles. By purchasing leads from a source that utilized an ATDS to harvest data, and by willfully ignoring the indicators of that illegal harvesting (the "Howard Ship" anomaly), the Seller Defendants ratified the conduct.

85. **Ratification by Carrier Defendants:** The **Carrier Defendants** are vicariously liable for this ATDS usage. They knowingly accepted traffic from dialers using random/sequential generators (evidenced by the high volume of invalid number hits and "short duration" calls on their network logs). By ignoring the "Red Flags" of ATDS usage and continuing to service the accounts, they ratified the statutory violations.

## COUNT V: INVASION OF PRIVACY – INTRUSION UPON SECLUSION (Against All Defendants – Joint and Several Liability)

86. Plaintiff repeats and realleges the allegations contained in Paragraphs 1–65.

87. **The Indivisible Injury:** Plaintiff has been subjected to a singular, massive, and coordinated invasion of privacy comprising hundreds of calls and "Ghost Pings."

88. **Benefitting Participants:** The Defendants operate as an interconnected ecosystem of benefitting participants:

89. The **Carrier Defendants** benefit by monetizing the traffic volume.

90. The **John Doe Defendants** benefit by selling the harvested data.

91. The **Seller Defendants** benefit by utilizing the data for sales.

92. **Summers v. Tice Liability:** It is difficult or impossible for Plaintiff to untangle the specific "Ghost Call" that originated from a specific Seller's lead order versus a specific Carrier's routing. However, all Defendants participated in and benefitted from the scheme that caused the intrusion, as can be seen by **Exhibit A.** Therefore, they are jointly and severally liable for the resulting harm.

93. **Highly Offensive:** The intrusion was "highly offensive to a reasonable person" due to the volume of surveillance calls, the use of deception ("Howard Ship"), and the aggressive nature of the subsequent solicitations (including threats).

## COUNT VI: NEGLIGENCE PER SE – TRUTH IN CALLER ID ACT (Against Seller Defendants & Carrier Defendants)

94. Plaintiff repeats and realleges the allegations contained in Paragraphs 1–65.

95. **Duty:** The Truth in Caller ID Act (47 U.S.C. § 227(e)) establishes a statutory duty not to transmit misleading caller identification information with the intent to defraud or cause harm.

25

96. **Breach by Seller Defendants:** The Seller Defendants breached this duty by utilizing leads generated by dialing systems that relied on spoofed local numbers to deceive Plaintiff.

97. **Breach by Carrier Defendants:** The Carrier Defendants breached this duty by failing to authenticate call origins (STIR/SHAKEN) and knowingly facilitating the transmission of spoofed calls despite repeated notices of illegality.

98. **Causation:** These violations caused Plaintiff to suffer the harm of answering unwanted, harassing calls and stripped Plaintiff of the ability to block the call or discern its true origin.

## COUNT VII: PERSONAL LIABILITY (Against Defendant Kyle Patton and Managers of Seller Defendants)

99. Plaintiff repeats and realleges the allegations contained in Paragraphs 14 and 50–53.

100. **Defendant Kyle Patton:** Defendant Kyle Patton is personally liable for the torts and violations herein because he personally participated in the harassment, specifically by placing calls to Plaintiff that included threats of violence and death.

101. **Managers/Officers:** The Managers and Officers of the Seller Defendants are personally liable for ratifying the illegal conduct, recklessly prioritizing low cost (CPL) over statutory compliance. By directing their companies to purchase "aged" or "dirty" leads to save money, and by refusing to investigate the "Howard Ship" red flags when confronted, they personally participated in the strategic decision to violate Plaintiff's rights.

102. **Individual Calling Agents:** The individual employees and agents of the Seller Defendants (including "Jason" from Confidence Ford and the agents who hung up on Plaintiff) are personally liable for the statutory violations they physically committed.

   a. Under Oklahoma law and federal common law, an employee who personally commits a tort or statutory violation is individually liable for that act, regardless of whether they acted under corporate orders.

   b. These agents demonstrated personal guilt and "willful blindness" by immed.ately terminating calls when Plaintiff requested transparency

26

regarding the lead source (the "Hang-Up Reflex") and by aggressively continuing harassment after being told to stop .

### COUNT VIII: VICARIOUS LIABILITY (Against Defendant Ford Motor Company)

103. Plaintiff repeats and realleges the allegations contained in Paragraph 39.

104. Defendant **Ford Motor Company** is vicariously liable for the calls placed by Confidence Ford of Norman.

105. This liability is established by the admission of Confidence Ford's manager that "they get all the leads from Ford Motor." By aggregating leads and distributing them to dealers without scrubbing them for compliance, Ford Motor Company established an agency relationship and ratified the illegal lead generation.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. **Statutory Damages:** $1,500.00 for each willful violation of the OTSA and $1,500.00 for each willful violation of the TCPA.

B. **Actual Damages:** For Invasion of Privacy and Negligence.

C. **Punitive Damages:** Pursuant to 23 O.S. § 9.1, based on the "profitability of the misconduct."

D. **Injunctive Relief:** Prohibiting Defendants from purchasing "Aged" leads or using "Neighbor Spoofing."

**JURY DEMAND** Plaintiff demands a trial by jury on all issues so triable.

Dated: December 28th, 2025 Respectfully submitted,

_Anthony Trupia_

**Anthony Trupia, Pro Se**

605 SE 21st St Oklahoma City, OK 73129

May 13, 2026

27

516-984-0142 Trupiaar@gmail.com