**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| ANTHONY TRUPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CIV-25-1134-D |
| | ) | |
| ONVOY, LLC; *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANT TELNYX LLC'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT**

---

Jacob C. Swanson, OBA No. 36998
Brooks A. Richardson, OBA No. 18133
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, Oklahoma 73102
Telephone:    (405) 235-5500
Facsimile:    (405) 235-2875
jswanson@gablelaw.com
brichardson@gablelaw.com

**ATTORNEY FOR TELNYX LLC**

## TABLE OF CONTENTS

I.    **INTRODUCTION**.................................................................................................1

II.   **BACKGROUND** ...............................................................................................2

III.   **LEGAL STANDARDS**...................................................................................3

IV.   **ARGUMENT** ...................................................................................................4

A.   **Trupia fails to allege personal jurisdiction.** ...............................................4

B.   **Trupia's shotgun-style pleading fails to satisfy Rule 8.** ...................... 10

C.   **Trupia fails to state _any_ claim against Telnyx.**...................................... 12

    *(1)  The Court should dismiss Trupia's federal _and_ state claims.*.............................. 14

    *(2)  Trupia fails to allege Telnyx made or initiated any calls, so Counts I–IV and VI should be dismissed with prejudice.* ......................................................... 15

    *(3)  Trupia did not state a claim for invasion of privacy by intrusion upon seclusion, so Count V also fails.* ....................................................................................17

    *(4)  Count VI fails because 47 U.S.C. § 227(e) does not give rise to a negligence* **per se** *cause of action.* .................................................................................... 18

D.   **Further leave to amend is futile.** ............................................................21

V.  **CONCLUSION**................................................................................................22

## TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

*Adler v. Vision Lab Telecomms., Inc.*,
   393 F. Supp. 2d 35 (D.D.C. 2005) ...................................................................................19

*Alpenglow Botanicals, LLC v. United States*,
   894 F.3d 1187 (10th Cir. 2018) ......................................................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................................................4, 13

*Benton v. Cameco Corp.*,
   375 F.3d 1070 (10th Cir. 2004) ........................................................................................3

*BNSF Ry. Co. v. Tyrrell*,
   581 U.S. 402 (2017) ..........................................................................................................5

*Brereton v. Bountiful City Corp.*,
   434 F.3d 1213 (10th Cir. 2006) ......................................................................................21

*Calder v. Jones*,
   465 U.S. 783 (1984) ..........................................................................................................6

*Carnegie-Mellon Univ. v. Cohill*,
   484 U.S. 343 (1988) ........................................................................................................14

*Carr v. Okla. Student Loan Auth.*,
   699 F. Supp. 3d 1241 (W.D. Okla. 2023) (applying Oklahoma law) ...........................17

*Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*,
   680 F.3d 1194 (10th Cir. 2011) ......................................................................................13

*Cushing Coca-Cola Bottling Co. v. Francis*,
   1952 OK 221, 245 P.2d 84 ..............................................................................................20

*Dendy v. Chartrand*,
   No. 18-CV-1118-WPJ, 2019 WL 719762 (D.N.M. Feb. 20, 2019)...............................17

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC*,
  946 F.3d 1223 (10th Cir. 2020) ............................................................................... 3, 9

*Dubbs v. Head Start, Inc.*,
  336 F.3d 1194 (10th Cir. 2003) .................................................................................. 17

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ............................................................................ 4, 6, 8

*EEOC v. Roark-Whitten Hosp. 2, LP*,
  28 F.4th 136 (10th Cir. 2022) .................................................................................... 13

*Far W. Cap., Inc. v. Towne*,
  46 F.3d 1071 (10th Cir. 1995) ..................................................................................... 9

*Ford Motor Co. v. Mon. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021) ...................................................................................................... 7

*Freeborn v. Holt*,
  1924 OK 626 ................................................................................................................ 19

*Fuentes v. Chavez*,
  314 F. App'x 143 (10th Cir. 2009) ....................................................................... 21, 22

*Garrett v. Selby Connor Maddux & Janer*,
  425 F.3d 836 (10th Cir. 2005) .................................................................................... 12

*George v. Urb. Settlement Servs.*,
  833 F.3d 1242 (10th Cir. 2016) .................................................................................. 13

*Gokool v. Okla. City Univ.*,
  No. CIV-16-807, 2017 WL 5241239 (W.D. Okla. May 1, 2017) ................................. 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) ....................................................................................................... 5

*Hall v. Bellmon*,
  935 F.2d 1106 (10th Cir. 1991) .................................................................................. 12

*Hood v. Am. Auto Care, LLC*,
  21 F.4th 1216 (10th Cir. 2021) ............................................................................ 5, 6, 7

*Hunt v. 21st Mortg. Corp.*,
  No. 2:12-CV-2697-WMA, 2014 WL 426275 (N.D. Ala. Feb. 4, 2014) ................. 20, 21

*iv*

*Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*,
  205 F.3d 1244 (10th Cir. 2000) ..................................................................5

*Ioszpe v. Unifin, Inc.*,
  No. CIV-25-98-SLP, 2025 WL 2487349 (W.D. Okla. Aug. 28, 2025) .........10

*Jacobs v. Credit Suisse First Bos.*,
  No. 11-CV-00042-CMA-KLM, 2011 WL 4537007 (D. Colo. Sept. 30, 2011) ............11

*Javitch v. Simply Solar*,
  No. 19-CV-04794-JST, 2020 WL 13547896 (N.D. Cal. May 8, 2020)...................19, 20

*Kan. Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) ...............................................................4, 13

*Koch v. City of Del City*,
  660 F.3d 1228 (10th Cir. 2011) ..................................................................14

*Larkey v. Church*,
  1920 OK 305 ...............................................................................................19

*Mansfield v. Circle K. Corp.*,
  1994 OK 80, 877 P.2d 1130 .........................................................................19

*McAlester-Edwards Coal Co. v. Hoffar*,
  1917 OK 315 ...............................................................................................19

*Mohon v. Agentra LLC*,
  400 F. Supp. 3d 1189 (D.N.M. 2019).........................................................16

*Monge v. RG Petro-Mach. (Grp.) Co.*,
  701 F.3d 598 (10th Cir. 2012) ......................................................................5

*Newsome v. Gallacher*,
  722 F.3d 1257 (10th Cir. 2013) ....................................................................6

*Ngatuvai v. Breckenridge*,
  446 F. App'x 129 (10th Cir. 2011)...............................................................21

*Ogden v. San Juan Cnty.*,
  32 F.3d 452 (10th Cir. 1994).........................................................................4

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*,
  877 F.3d 895 (10th Cir. 2017) ......................................................................6

*Peay v. BellSouth Med. Assistance Plan*,
  205 F.3d 1206 (10th Cir. 2000) ......................................................................... 3, 5

*Richardson v. J. C. Penney Co., Inc.*,
  1982 OK CIV APP 35, 649 P.2d 565 ..................................................................... 20

*Robbins v. Oklahoma*,
  519 F.3d 1242 (10th Cir. 2008) ........................................................................... 11

*Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*,
  750 F.3d 1178 (10th Cir. 2014) ............................................................................. 9

*Rohwedder v. Rocky Mountain Pies, LLC*,
  No. 21-4096, 2021 WL 5458598 (10th Cir. Nov. 23, 2021) ......................................... 21

*Salmon v. CRST Expedited, Inc.*,
  No. 14-CV-0265-CVE-TLW, 2016 WL 47876 (N.D. Okla. Jan. 4, 2016) ...................... 18

*Shrader v. Biddinger*,
  633 F.3d 1235 (10th Cir. 2011) ............................................................................. 9

*Shupe v. Cap. One Bank USA NA*,
  No. CV-16-00571-TUC-JGZ, 2017 WL 11112398 (D. Ariz. Jun. 29, 2017) ................ 19

*Trierweiler v. Croxton & Trench Holding Corp.*,
  90 F.3d 1523 (10th Cir. 1996) ............................................................................. 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) ......................................................................................... 6, 9

*Woodis v. Okla. Gas & Elec. Co.*,
  1985 OK 62, 704 P.2d 483 ................................................................................. 19

*Wyles v. Brady*,
  822 F. App'x 690 (10th Cir. 2020) ....................................................................... 10

*XMission, L.C. v. Fluent LLC*,
  955 F.3d 833 (10th Cir. 2020) ............................................................................ 4, 6

Statutes

28 U.S.C. § 1367 ................................................................................................. 14
47 U.S.C. § 227(b)(1)(A)(iii) ................................................................................. 15
*47 U.S.C. § 227(e)* ................................................................................. 2, 16, 18, 21

Rules

Fed. R. Civ. P. 8, 12(b)(2),  & 12(b)(6)..........................................................................2
Fed. R. Civ. P. 12(e) ....................................................................................................22
Rule 12(b)(6) ................................................................................................................4

## I.   <u>INTRODUCTION</u>

*Pro se* Plaintiff Anthony Trupia is a serial filer. Since April of 2024, Trupia has filed **six** Telephone Consumer Protection Act ("TCPA") cases in both federal and state courts in Oklahoma. All but one of the other cases have been dismissed on various grounds.[1] In Trupia's first TCPA case, *Trupia v. Heritage Hard Assets LLC*, Case No. CIV-24-498-J, he brought claims substantively identical to the ones he asserts here against many of the same defendants, including Defendant Telnyx LLC. Judge Jones dismissed Trupia's claims for failure to satisfy Rule 8. *See* Doc. 101, Case No. CIV-24-498-J (Feb. 3, 2025). Judge Jones provided Trupia an opportunity to amend, but he chose not to do so.

Now, Trupia realleges the same claims against Telnyx and the other defendants in this action. Trupia asserts six counts against Telnyx, generally asserting violations of

- the Oklahoma Telephone Solicitation Act ("OTSA") (Counts I–II);

- the TCPA, including a negligence *per se* claim based on alleged violations of the TCPA (Counts III–IV, VI); *and*

- the common-law right to privacy, for intrusion upon seclusion (Count V).

---

[1] Pursuant to LCvR3.7, Telnyx notifies the Court of the following related cases: (1) *Trupia v. Heritage Hard Assets LLC*, Case No. CIV-24-498-J (W.D. Okla. Feb. 3, 2025) (dismissed without prejudice by Judge Jones for failure to comply with Rule 8); (2) *Trupia v. Peerless Network Inc.*, Case No. CIV-25-23-HE (W.D. Okla. Mar. 19, 2025) (dismissed without prejudice by Judge Heaton under Rule 41(b) for failure to respond to motion to dismiss); (3) *Trupia v. 01 Comms. of Del. LLC*, Case No. CJ-2024-7955 (Okla. Cnty. Sep. 11, 2025) (dismissed by Judge Natalie Mai for failure to obtain service within 180 days); (4) *Trupia v. Bob Moore Enters., LLC*, Case No. CIV-25-568-HE (W.D. Okla. Aug. 5, 2025) (TCPA claims dismissed with prejudice by Judge Heaton for failure to state a claim; remaining state claims remanded to Oklahoma County where Judge Brent Dishman dismissed the remaining claims in *Trupia v. Bob Moore Enters., LLC*, Case No. CJ-2025-2993 (Okla. Cnty. Oct. 1, 2025)); (5) *Trupia v. Blue Green Energy Inc.*, Case No. CIV-26-274-J (W.D. Okla.) (pending).

Doc. 48, ¶¶ 72, 76, 77–81, 85, 88–89, 97–98. All these claims are deficient.

Pursuant to Fed. R. Civ. P. 8, 12(b)(2),  & 12(b)(6), Telnyx respectfully moves to dismiss Trupia's Complaint for lack of personal jurisdiction and failure to state a claim.

## II.    <u>BACKGROUND</u>

Trupia alleges that, from 2023 to 2024, he received hundreds of "unsolicited phone calls and text messages as part of a coordinated telesales arbitrage scheme." Doc. 48 at 7. Trupia generally groups Defendants into three roles in the "scheme." *Id.* ¶¶ 66–68. First, the "**John Doe Defendants**"—unidentified "ghost callers"—would contact Trupia in an effort to "check if [his] line was active." *Id.* ¶¶ 68, 54–55. These "ghost callers" would then sell these "'dirty' leads" to the "**Seller Defendants**"[2] who, in turn, placed the aforementioned unsolicited telemarketing calls. *Id.* at 7. These calls were allegedly "facilitated" and "ratified" by the "**Carrier Defendants**" (which include Telnyx)—Voice over Internet Protocol ("VoIP") providers whose services the Seller Defendants allegedly utilized in making the calls. *Id.* ¶¶ 40, 67.

Trupia claims Telnyx is responsible for hosting six of the 300+ calls he received from 2023–24, but he only describes the circumstances of one of them. *Id.* ¶¶ 32, 48; Doc. 48-1 at 5, 6, 9. He alleges that "on February 7, 2024, at 2:52pm," Defendant Heritage Hard Assets, LLC called him "to attempt an unsolicited phone call . . . through VoIP provider"

---

[2] The "Seller Defendants" are HLV Ventures; Heritage Hard Assets, LLC; Reagan Gold Group, LLC; World Harvest Church, Inc.; South Bay Galleries, LLC; Confidence Ford of Norman; Ford Motor Company; LP Operating Company; and the remaining five "Doe" Defendants. Doc. 48, ¶ 66.

Telnyx. Doc. 48, ¶ 32. Of the remaining five calls, Trupia's chart shows that four of them were either missed or rejected. Doc. 48-1 at 6, 9. He does not identify these callers, nor does he provide any other details whatsoever as to the nature of these calls.[3]

Based on these vaguely described phone calls, Trupia claims the "Carrier Defendants" are liable for (1) "ratifying" and "facilitating" the John Doe Defendants' use of an "automated system for the selection or dialing of telephone numbers"; (2) "ratifying" and "facilitating the transmission of spoofed calls"; (3) "transferring and routing calls containing prerecorded messages"; and (4) "monetizing the traffic volume" caused by the John Doe Defendants' alleged invasion of Trupia's privacy. Doc. 48, ¶¶ 72, 76, 79, 85, 88, 97.

## III.    LEGAL STANDARDS

Federal courts must find personal jurisdiction "before a suit can proceed." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209–10 (10th Cir. 2000) (collecting cases). It is Trupia's burden to establish a *prima facie* case of personal jurisdiction. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). As part of that burden, he must establish jurisdiction for **each** claim asserted. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020) (personal jurisdiction must be made "with

---

[3] Other than that, Trupia includes allegations and images of various articles and Better Business Bureau reviews (which are largely illegible). Doc. 48, ¶ 43(a) (describing a robocall attack on the Federal Communications Commission); ¶ 43(b) (noting that the Australian Communications and Media Authority fined Telnyx in 2023); ¶ 43(c) (discussing an article on Telnyx's website that informs customers what to do if their phone number has been inadvertently flagged as "Spam Likely"), ¶ 43(d) (identifying a handful of BBB reviews). These have nothing to do with Trupia and do not go to the elements of any of his claims. Nor do they show any contacts with Oklahoma.

respect to each of the claims alleged"). In determining whether Trupia has done so, the Court "accept[s] as true the well-pleaded ('that is, plausible, non-conclusory, and non-speculative') facts alleged in the complaint, unless they are controverted by sworn statements." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020) (citing *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)).

Likewise, on a Rule 12(b)(6) motion, courts take the well-pleaded factual allegations in a complaint as true. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts "liberally construe *pro se* pleadings," but a plaintiff's *pro se* status "does not excuse [his] obligation . . . to comply with the fundamental requirements of the Federal Rules of Civil . . . Procedure." *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994). Here, the Amended Complaint—like Trupia's previous attempts to bring the same claims—does not come close to complying with the Rules.

## IV.    ARGUMENT

Despite filing what is effectively his second amended complaint against Telnyx for the same claims, Trupia has consistently failed to allege (1) that Oklahoma has personal jurisdiction over Telnyx as to his claims; (2) facts sufficient to put Telnyx on notice as to what his claims are; or (3) facts sufficient to state any claim against Telnyx. The Court, therefore, should dismiss Trupia's claims against Telnyx.

### A.    Trupia fails to allege personal jurisdiction.

Where, as here, the plaintiff invokes federal question jurisdiction, the court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by

4

authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with" Fifth Amendment due process principles. *Peay*, 205 F.3d at 1209–10 (collecting cases).[4]

Because "Oklahoma's long-arm statute permits the exercise of any jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012). A court may exercise personal jurisdiction over a defendant only where there are sufficient "minimum contacts between the defendant and the forum state." *Id.* And even if a court finds that the plaintiff showed "sufficient minimum contacts" exist, courts must still determine whether the exercise of personal jurisdiction "is reasonable in light of circumstances surrounding the case" in consideration of "traditional notions of 'fair play and substantial justice.'" *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). Personal jurisdiction is either "general" or "specific." *Monge*, 701 F.3d at 613 (10th Cir. 2012). But only specific jurisdiction is at issue here.[5]

---

[4] Because the TCPA does not address service of process, the Federal Rules of Civil Procedure incorporate the Oklahoma long-arm statute. *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021).

[5] A defendant is not subject to general personal jurisdiction absent forum contacts so "'continuous and systematic' as to render [it] essentially at home [there]." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Trupia does not include anything in his Complaint to suggest this is an "exceptional case" where a defendant's operations in a particular forum are "so substantial and of such a nature as to render [it] at home [there]." *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation omitted). Indeed, Trupia alleges that Telnyx is an Illinois LLC. Doc. 48, ¶ 9. To the extent Trupia asserts general jurisdiction, Telnyx will address this in reply.

Specific jurisdiction turns on a three-step analysis: (1) did Telnyx "reach out" to Oklahoma, the forum state; (2) do Trupia's claims arise from or relate to Telnyx's alleged acts of reaching out (i.e., its forum contacts); and (3) would exercising personal jurisdiction over Telnyx offend traditional notions of fair play and substantial justice. *See Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013).

At step one, a defendant must "'purposefully direct[]' its activities" at the forum state to "reach out." *Dudnikov*, 514 F.3d at 1071 (citation omitted). This requirement "'ensures that a defendant will not be subject to the laws of a jurisdiction solely as a result of random, fortuitous, or attenuated contacts,' 'the unilateral activity of another party or a third person,' or the mere foreseeability that its actions may cause injury in that jurisdiction." *XMission*, 955 F.3d at 840–41 (citations omitted); *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (a defendant's contacts must create "a substantial connection with the forum State" itself, not "with persons who reside there").[6]

Under step two, the plaintiff's claims must "arise out of or relate to" defendant's acts of reaching out to support specific jurisdiction. *See Hood*, 21 F.4th at 1222–24. "Arises out of" imposes a "causal test," while "relates to" allows jurisdiction where a plaintiff's

---

[6] In the tort context, the Tenth Circuit applies a three-part test derived from *Calder v. Jones*, 465 U.S. 783 (1984) to determine if a defendant has "purposefully directed" its activities at the forum. *See, e.g., Dudnikov*, 514 F.3d at 1072. This "Calder effects test" requires three things: (a) an intentional action by the defendant (b) "expressly aimed at the forum state" (c) with defendant's "knowledge that the brunt of the injury" will be felt in the forum. *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907–08 (10th Cir. 2017) (citation omitted). The Complaint contains no allegations showing Telnyx "purposefully directed" any activity at Oklahoma, related or not to this litigation. Thus, Trupia plainly cannot satisfy these *Calder*-based elements.

6

claims stem from the "type of activity" the defendant purposefully directs at the forum (even if the precise activity giving rise to the claims was not "directed at forum residents"). *See id.* at 1223–24 (citing *Ford Motor Co. v. Mon. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62, 364–67 & n.5 (2021)). At bottom, the "'essential foundation' of specific jurisdiction" is "a strong 'relationship among the defendant, the forum, and the litigation.'" *Ford Motor*, 592 U.S. at 365–66.[7]

Trupia fumbles his burden at step one. The Complaint lacks any allegations showing Telnyx reached out to Oklahoma, which is a necessary threshold requirement for personal jurisdiction. Indeed, Trupia alleges Telnyx's connection with Oklahoma is by virtue of "providing VoIP services, including SIP trunking and messaging for automated dialing systems[] nationwide, including in" the Western District of Oklahoma. Doc. 48, ¶ 9. But this allegation does not come close to showing (1) Telnyx "reached out" to Oklahoma or (2) any connection between Telnyx transacting business in Oklahoma and any alleged harm suffered by Trupia.

Trupia's sparse allegations pertaining to the (liberally construed) six phone calls he allegedly received "through" Telnyx over the course of a year fare no better. Doc. 48, ¶¶ 32, 48. Trupia details only one of these calls, alleging that Defendant Heritage Hard Assets—*not* Telnyx—called Trupia on February 7, 2024 at 2:52 pm. *Id.* ¶ 32. That's it. That's all

---

[7] Even if steps one and two are "satisfied," a defendant "can still escape jurisdiction by establishing that it would be incompatible with traditional notions of fair play and substantial justice." *Hood*, 21 F.4th at 1222. The court considers five factors in analyzing step three, including "the burden on the defendant" and "the forum state's interest in resolving the dispute." *Id.* at 1227 (citation omitted).

the information he provides. He doesn't allege the call utilized an automated system, caller ID spoofing, or a pre-recorded voice. *Id.* In fact, it appears he spoke to a real person, calling from a 561 area code (i.e., not a spoofed 405 area code). *Id.*

As for the other five calls, Trupia attaches as "Exhibit A" a call log he seems to have created, which he claims lists the phone calls he received from August 9, 2023, through July 31, 2024. *See* Doc. 48 at 7; Doc. 48-1 at 1–11. The final column (labelled "Column2") appears to identify the VoIP Carrier the call was placed through. *See id.* Trupia lists five other calls hosted by Telnyx, none of which identify who placed the call, and four of which Trupia didn't even answer. *Id.* at 6, 9. These five unexplained calls should therefore be disregarded altogether, as there is nothing in the Amended Complaint indicating they in any way violated the TCPA, the OTCA, or the common law right to privacy.

As for the February 7 call, "legion" cases hold "the unilateral activity of another party 'is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.'" *Dudnikov*, 514 F.3d at 1073–74 (citations omitted). Yet that is the thrust of Trupia's allegations: that the so-called "John Doe Defendants" and "Seller Defendants" contacted Trupia using a service Telnyx just happened to provide, rather than Telnyx targeting Trupia. This is far from the intentional conduct needed to show a defendant reached out to the forum. Doc. No. 48, ¶¶ 32–41, 50–53, 70, 74, 79, 83, 92, 96 (alleging the "Seller Callers" and John Doe Defendants made the offending phone calls), p. 7 ("These calls were placed by various telemarketing 'Seller' defendants after purchasing 'dirty' leads created by TCPA and OTSA violating calls placed to plaintiff by unknown John Doe lead selling outfits."), ¶ 42

8

(alleging the "Carrier Defendants" "function as 'Gateway Providers,' knowingly monetizing high-volume, illegal traffic while systematically dismantling the safety protocols designed to protect American consumers").

Further, the personal jurisdiction inquiry is a forum-focused, not plaintiff-focused inquiry. Trupia cannot rely on his mere presence in Oklahoma or even any alleged "injuries" suffered here to carry his burden. *See Walden*, 571 U.S. at 289–90 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."); *Shrader v. Biddinger*, 633 F.3d 1235, 1245 (10th Cir. 2011) (noting a plaintiff "resid[ing] in the forum[] and suffering . . . harm there[] will not alone support jurisdiction" and outlining the circuit's "restrictive approach" to tort-based personal jurisdiction analysis, which holds that "the forum state itself," rather than a forum resident, "must be the focal point of the tort" (emphasis omitted)); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("[P]ersonal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state."); Isolated and discrete contacts with a forum resident do not demonstrate purposeful availment. *See Dental Dynamics*, 946 F.3d at 1230–32.

Lastly, even assuming the listed phone calls constitute intentional acts by Telnyx of reaching out to Oklahoma (they do not), this still cannot show personal jurisdiction. Six phone calls over the course of a year do not amount to the "minimum contacts" required to satisfy due process. *See, e.g., Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir.

9

1995) ("It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."); *Ioszpe v. Unifin, Inc.*, No. CIV-25-98-SLP, 2025 WL 2487349, at \*3 (W.D. Okla. Aug. 28, 2025) ("Given that [the p]laintiff's sole factual allegation pertaining to Oklahoma is that [the defendant] called a 405 number four times—only one of which was apparently received in Oklahoma—the Court finds that this, alone, is insufficient to establish [that the defendant] purposefully directed its conduct towards Oklahoma."); *Wyles v. Brady*, 822 F. App'x 690, 695 (10th Cir. 2020) (phone call to Colorado resident insufficient to establish personal jurisdiction because "a 'plaintiff cannot be the only link between the defendant and the forum,'" and "'[a] defendant's interaction with a plaintiff . . . is insufficient to establish personal jurisdiction' without additional contacts between the defendant and the forum state" (citations omitted)); *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996) (phone call to forum resident insufficient to establish personal jurisdiction); *see also* Order, Doc. 9 in *Trupia v. Blue Green Energy, Inc.*, Case No. CIV-26-274-J (W.D. Okla. May 5, 2026), at 3–4 (collecting cases). As Trupia only alleges Telnyx "facilitated" six offending phone calls over a two-year period—all of which were made by defendants and non-parties other than Telnyx—he fails to show personal jurisdiction. The Court should dismiss Trupia's claims as to Telnyx.

### B.    Trupia's shotgun-style pleading fails to satisfy Rule 8.

Trupia persists in relying heavily on generalized allegations against all "Defendants" or "Carrier Defendants." Trupia also fails to carry his pleading burden under Rule 8. By resorting to collective and conclusory allegations throughout his Complaint and

10

alleging most of his claims against *all* Defendants (including ten unnamed Defendants), Trupia fails to plausibly plead his claims or provide fair notice.

In multi-defendant cases like this, the Tenth Circuit has held a pleading's "use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom" falls short of Rule 8's requirements. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). Trupia bears the burden of "fram[ing his] 'complaint with enough factual matter . . . to suggest' that he . . . is entitled to relief"—and here, that entails "mak[ing] clear exactly who is alleged to have done what to whom." *Robbins*, 519 F.3d at 1247, 1250; *see also Jacobs v. Credit Suisse First Bos.*, No. 11-CV-00042-CMA-KLM, 2011 WL 4537007, at *7 (D. Colo. Sept. 30, 2011) (granting motion to dismiss where plaintiffs "lazily assert[ed] claims against 'the defendants' generally, without attempting to sort out the individual actors alleged to be liable for each individual action or discrete claim," which "betrays the pleader's failure to rigorously analyze the claims").

Much of the Amended Complaint offers only conclusory facts that are largely alleged against all Defendants. *See* Doc. 48, ¶¶ 2–6, 28–31, 54–65. In particular, Trupia fails to allege what Telnyx did—individually—that gave rise to liability. Instead, he groups Telnyx with the other "Carrier Defendants." *Id.* ¶¶ 72, 76, 77–81, 85, 89, 97. And Trupia's description of the February 7 phone call (or the other calls for that matter) is no help—he doesn't explain what about that call gives rise to liability.

It is therefore "impossible for" Telnyx "to ascertain what particular [violation it is] alleged to have committed." *Robbins*, 519 F.3d at 1250 (collecting cases). Indeed, Judge

11

Jones previously concluded that many of the substantively identical allegations directed at Telnyx failed to satisfy Rule 8. *Compare* Pet., Doc. 1-1, ¶¶ 166, 171–178, *Trupia v. Heritage Hard Assets LLC*, No. CIV-24-498-J (identifying the February 7 call and citing certain articles and BBB reviews), *with* Doc. 48, ¶¶ 32, 43(b)-(d) (identifying the same call and citing the same external articles and reports). But Judge Jones still concluded this was not enough under Rule 8. *See* Order, Doc. 101, *Trupia v. Heritage Hard Assets LLC*, No. CIV-24-498-J (W.D. Okla. Feb. 3, 2025). Trupia's allegations are no different here.[8]

Finally, Trupia simply does not allege Telnyx has done anything in relation to the claims against it. As noted above, the sole allegation implicating Telnyx is that another company used its VoIP service to contact Trupia. Telnyx is, at most, a passive player in Trupia's narrative. Lumping it into generic, vague allegations about unspecified wrongdoing by dozens of individuals and entities does not plausibly suggest a claim against Telnyx and fails to give Telnyx the requisite notice of the grounds for Trupia's pleaded claims. Trupia's shotgun-style pleadings have failed to satisfy Rule 8.

### C.     Trupia fails to state *any* claim against Telnyx.

Claim-by-claim, the Complaint fares no better. "[T]o withstand a motion to dismiss,

---

[8] Nor is Trupia's *pro se* status any excuse. While the Court must liberally construe the Complaint, that does not mean it "assume[s] the role" of Trupia's lawyer. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]he court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."). Broadly reading a *pro se* plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based," "because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110.

a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming*, 656 F.3d at 1214 (quoting *Twombly*, 550 U.S. at 570 (2007). The Court assesses plausibility by:

- *first*, "identify[ing]" allegations "not entitled to the assumption of truth," like "legal conclusions," "[t]hreadbare recitals of the elements of a cause of action," and "mere conclusory statements," and then,

- *second*, "look[ing] only" at the remaining, "well-pleaded factual allegations," determining if Plaintiff has "plausibly suggest[ed]" defendant's liability.

*Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (second alteration in original) (citations omitted).

This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and plaintiffs "armed with nothing more than conclusions" do not "unlock the doors of discovery." *EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 150 (10th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)); *see also Kan. Penn Gaming*, 656 F.3d at 1215 (requiring plausibility "avoid[s] ginning up the costly machinery" of "civil discovery" for a "groundless claim" (citation omitted)). So, unless a plaintiff's pleading "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed," his claims should be dismissed. *See Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201–02 (10th Cir. 2011) (citation omitted); *see also George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (courts "look to the elements of the particular cause of action" in "determining the plausibility of a claim"). Under these standards, Trupia fails to state any claim against Telnyx.

13

***(1) The Court should dismiss Trupia's federal <u>and</u> state claims.***

When the Court dismisses Trupia's TCPA claims, it should retain supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367. Retention of supplemental jurisdiction is appropriate here considering "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011).

*First*, **judicial economy** strongly favors retention. Trupia has filed at least six substantively similar actions over the last two years—several in this district—asserting overlapping TCPA and state-law claims based on the same alleged telemarketing activity. This District has already expended substantial resources evaluating Trupia's pleading practices, jurisdictional deficiencies, and failure to state claims. *See* Section I, *supra*. Dismissing the state-law claims without prejudice only to have them refiled or relitigated elsewhere would needlessly duplicate that effort and reward Trupia's pattern and practice of serial, scattershot pleadings.

*Second*, **fairness** weighs heavily in favor of resolving all claims in one forum. Trupia should not be permitted to use the dismissal of his legally defective federal claims as a vehicle to force Defendants—most of which are out-of-state entities—into piecemeal litigation across multiple forums. *See Carnegie-Mellon*, 484 U.S. at 357–58 (recognizing courts may retain jurisdiction to prevent forum manipulation).

*Third*, **convenience** favors retention. Trupia alleges a single, nationwide course of conduct involving numerous non-Oklahoma defendants. Litigating the remaining claims in the same forum where the case has already been briefed is more efficient and convenient

for all parties than restarting the case—again—in state court.

*Fourth*, **comity** concerns are minimal. Trupia's state-law claims do not raise novel or complex issues of state law. To the contrary, they mirror the same factual allegations underlying the TCPA claims and rise or fall for the same reasons—namely, Plaintiff's failure to plead specific conduct by individual defendants. Resolving those claims now promotes clarity and finality rather than burdening state courts with facially deficient claims.

Finally, retaining jurisdiction is particularly appropriate given Trupia's demonstrated pattern of repetitive, deficient filings. Dismissal without resolution of the state-law claims would invite further duplicative litigation and undermine the orderly administration of justice. Federal courts are not required to facilitate serial repleading by declining jurisdiction where dismissal on the merits is appropriate.

### (2) Trupia fails to allege Telnyx made or initiated any calls, so Counts I–IV and VI should be dismissed with prejudice.

Trupia fails to plead facts plausibly showing Telnyx *initiated* any calls that violate state or federal law. As before, Trupia seeks to impose liability against Telnyx under Sections 775C.3(A)–(B) of the OTSA (Counts I–II)  and Sections 227(b)(1)(A)(iii) and 227(e) of the TCPA (Counts III–IV, VI).

In order for liability to attach, all of these statutes require the defendant to "make" or "initiate" a phone call or to knowingly "transmit" or "allow" certain calls.

- 47 U.S.C. § 227(b)(1)(A)(iii) ("It shall be unlawful for any person . . . to make any call using any automatic dialing system or an artificial or prerecorded voice . . . .");

15

- 47 U.S.C. § 227(e) ("It shall be unlawful for any person . . . to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value . . . .");

- 15 O.S. § 775C.3(A) ("A person may not make or knowingly allow a commercial telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when the connection is completed . . . .")

- 15 O.S. § 775C.3(B) ("It shall be unlawful for any person who makes a commercial telephonic sales call or causes a commercial telephonic sales call to be made to fail to transmit or cause not to be transmitted the originating telephone number . . . .").

Accordingly, to survive a Rule 12(b)(6) motion as to any of these statutes, a plaintiff must allege the defendant actually **made** or **initiated** the offending phone call. *See, e.g.*, *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1125–26 (D.N.M. 2019) (collecting cases); *see also* Order, Doc. 28, *Trupia v. Bob Moore Enters., LLC*, CIV-25-568-HE (W.D. Okla. Aug. 5, 2025), at 5–6.

Trupia fails to allege Telnyx made or initiated **any** phone call to him, let alone any call that used an auto-dialer, pre-recorded voice, or inaccurate caller ID information. Instead, it appears Trupia spoke to a real person—an associate of Heritage Hard Assets— calling from a phone number that was not spoofed to depict a 405 area code. Doc. 48, ¶ 32.The Complaint contains no facts showing Telnyx played any role in initiating the phone calls Trupia allegedly received, nor that it even **knew** of the content or nature of the phone calls transited in their network. Trupia alleges he received such calls in the abstract, but he fails to tie any of them to Telnyx. *See id.* ¶¶ 54–65. Instead, he vaguely claims that all the "Carrier Defendants" ratified and facilitated the calls that other defendants and non-

16

parties made. *Id.* ¶¶ 72, 76, 79, 85, 88, 97. Trupia doesn't allege Heritage Hard Assets, or any of the other five callers who allegedly utilized Telnyx's services (whoever they are), had any sort of relationship with Telnyx—let alone an agency relationship—that would give rise to vicarious TCPA liability. *See*, *e.g.*, *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762, at *5 (D.N.M. Feb. 20, 2019) (vicarious liability only attaches under the TCPA where the plaintiff establishes that an agency relationship exists).

The reality is that Trupia cannot ever make sufficient allegations against Telnyx for these claims, because Telnyx does not initiate ***any*** phone calls, let alone sales calls. Accordingly, leave to amend is futile, and the Court should dismiss Counts I–IV and VI with prejudice.

### *(3) Trupia did not state a claim for invasion of privacy by intrusion upon seclusion, so Count V also fails.*

Next, Trupia's intrusion upon seclusion claim fails because he does not plausibly allege Telnyx engaged in the intentional conduct necessary to establish such a claim. To survive dismissal, a plaintiff must show "(1) a nonconsensual intrusion occurred that (2) was highly offensive to the reasonable person." *Carr v. Okla. Student Loan Auth.*, 699 F. Supp. 3d 1241, 1252 (W.D. Okla. 2023) (applying Oklahoma law). An intrusion only occurs where "an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *Id.* (citing *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003) (analyzing Oklahoma's tort of Intrusion upon Seclusion)). A phone call only invades a plaintiff's privacy where it is "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes

17

a substantial burden to his existence." *Salmon v. CRST Expedited, Inc.*, No. 14-CV-0265-CVE-TLW, 2016 WL 47876, at *5 (N.D. Okla. Jan. 4, 2016) (quoting RESTATEMENT (SECOND) OF TORTS § 652B cmt. d (1977)) (applying Oklahoma law).

Here—again—Trupia does not allege Telnyx was responsible for the calls he supposedly received. Neither does he allege Telnyx—in its capacity as an intermediate network provider—"believe[d] or [was] substantially certain" it lacked permission to do so. Moreover, he alleges the "intrusion was 'highly offensive to a reasonable person' due to the volume of surveillance calls [i.e., calls made by the "John Doe Defendants"], the use of deception . . . , and the aggressive nature of the subsequent solicitations." Doc. 48, ¶ 93. But the only call "facilitated" by Telnyx that Trupia describes involved none of those characteristics. *Id.* ¶ 32. Trupia, therefore, hasn't alleged the phone calls involving Telnyx (most of which he either missed or rejected) were a substantial burden to his existence. Accordingly, Trupia cannot state a claim under intrusion by seclusion. Leave to amend would be futile, and the Court should dismiss Count V with prejudice.

### (4) Count VI fails because 47 U.S.C. § 227(e) does not give rise to a negligence per se cause of action.

As set forth in Telnyx's previous motion to dismiss (and as Trupia has previously admitted), 47 U.S.C. § 227(e) provides no private cause of action. *See* Telnyx's Mot. to Dismiss Pl.'s Compl. (Doc. No. 35), at 13–15. He attempts to work around this by restyling his Section 227(e) claim as a negligence *per se* claim. Doc. 48, ¶¶ 94–98.

This falls flat. In Oklahoma, courts may only recognize a cause of action for negligence *per se* "if they conclude that a defendant owes a duty of care to the plaintiff."

18

*Mansfield v. Circle K. Corp.*, 1994 OK 80, ¶ 6, 877 P.2d 1130, 1132. If there are statutes "which delineate the defendant's conduct, courts may adopt the conduct required by the statutes as that which would be expected of a reasonably prudent person—provid[ed] courts believe the statutorily required conduct is appropriate for establishing civil liability." *Id.* In order for statutorily required conduct to give rise to a duty, "is the established rule in" Oklahoma that the statute must have "in view the promotion of the safety of the public, or of individual members of the public." *McAlester-Edwards Coal Co. v. Hoffar*, 1917 OK 315, ¶ 8, 166 P. 740, 742; *see also Freeborn v. Holt*, 1924 OK 626, ¶ 12, 227 P. 136, 138; *Larkey v. Church*, 1920 OK 305, ¶ 11, 192 P. 569, 571; *cf. also Woodis v. Okla. Gas & Elec. Co.*, 1985 OK 62, ¶ 15, 704 P.2d 483, 486 (determining a violation of a national safety electric code constituted negligence *per se*).

Federal courts across the country have concluded the TCPA was not passed to promote safety. *See, e.g.*, *Adler v. Vision Lab Telecomms., Inc.*, 393 F. Supp. 2d 35, 41 n.9 (D.D.C. 2005) ("[E]ven assuming plaintiffs could prove a violation of the TCPA, this would not give rise to a claim of negligence *per se*."); *Shupe v. Cap. One Bank USA NA*, No. CV-16-00571-TUC-JGZ, 2017 WL 11112398, at *2 (D. Ariz. Jun. 29, 2017) ("[W]hile [the p]laintiff may be a member of the class of persons that the TCPA is designed to protect, this does not lead to the conclusion that a violation of the TCPA, which protects consumers from unwanted automatic telephone calls, gives rise to a private right of action for negligence."); *Javitch v. Simply Solar*, No. 19-CV-04794-JST, 2020 WL 13547896, at *5 (N.D. Cal. May 8, 2020) (dismissing negligence per se claim because the plaintiff failed to allege facts giving rise to a duty of care separate from the defendant's alleged TCPA

19

violation); *Hunt v. 21st Mortg. Corp.*, No. 2:12-CV-2697-WMA, 2014 WL 426275, at *8 (N.D. Ala. Feb. 4, 2014) ("The court has been unable to find a single authority for the proposition that a legal duty exists to refrain from making irritating phone calls."); *cf. also Gokool v. Okla. City Univ.*, No. CIV-16-807, 2017 WL 5241239, at *2 (W.D. Okla. May 1, 2017) ("[G]iven the fact that FERPA did not provide her with a private cause of action or define a standard of care for educational institutions, [the plaintiff] could not point to any specific duty owed to her by Defendant.").

Trupia's "recourse for violations of the TCPA is the statutory remedies themselves." *Javitch*, 2020 WL 13547896, at *5 (citation omitted). But even if the Court were to conclude otherwise, Trupia's negligence *per se* claim would still fail. In Oklahoma, mental damages alone aren't actionable. *Richardson v. J. C. Penney Co., Inc.*, 1982 OK CIV APP 35, ¶ 9, 649 P.2d 565, 566 ("The Oklahoma Supreme Court has repeatedly denied recovery for negligently inflicted mental distress alone." (collecting cases)). Rather, Oklahoma law "demands some measure of tangible physical manifestation of damage . . . even the pain of hunger would suffice." *Id.*; *see also Cushing Coca-Cola Bottling Co. v. Francis,* 1952 OK 221, ¶ 6, 245 P.2d 84, 85 ("Mental pain, suffering and anguish, unless resulting from and necessarily a part of physical suffering and injury and inseparable therefrom, do not constitute an injury for which recovery may be had.").

Here, Trupia alleges the "Carrier Defendants" caused him to "suffer the harm of answering unwanted, harassing calls and stripped [him] of the ability to block the call or discern its true origin." Doc. 48, ¶ 98. He therefore hasn't alleged any sort of physical harm that would give rise to negligence liability. As another federal court found:

20

even were plaintiff's negligence claim recast as a negligence per se claim based on a TCPA violation, or were a common law duty inferred from the privacy protections of various related laws, the claim would fail under the damages prong. "[T]he current state of Alabama law . . . limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." In this case, [the] plaintiff alleges no physical injury or monetary harm, and seeks to recover only on the basis that "[t]he actions of [the defendant] directly and proximately caused [the plaintiff] to suffer embarrassment and humiliation." These types of damages cannot support plaintiff's negligence claim.

*Hunt*, 2014 WL 426275, at \*8 (omission and first, second, and third alterations in original) (internal citations omitted). Accordingly, no matter how he pleads it, Trupia's Section 227(e) claim fails, and the Court should dismiss it with prejudice.

### D.    Further leave to amend is futile.

The Court should not indulge what would amount to a third amended complaint. "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). Where a *pro se* plaintiff, after having been given an opportunity to cure his pleading's deficiency, fails to do so, amendment for a second time is futile. *Rohwedder v. Rocky Mountain Pies, LLC*, No. 21-4096, 2021 WL 5458598, at \*4 (10th Cir. Nov. 23, 2021). Accordingly, the claims should be dismissed with prejudice. *See Fuentes v. Chavez*, 314 F. App'x 143, 145 (10th Cir. 2009) (concluding that "another opportunity to amend would be futile" where the district court told the plaintiff "plainly to add more facts," yet he failed to do so); *Ngatuvai v. Breckenridge*, 446 F. App'x 129, 130 (10th Cir. 2011) (concluding that "dismissal with prejudice was appropriate because [the plaintiff] had been afforded ample opportunity to cure the deficiencies in his . . .

21

complaint"). *Fuentes*, 314 F. App'x at 145 ("There is a limit to how many bites even a pro se plaintiff can have at the apple.").

As detailed above, Trupia previously filed a complaint in *Trupia v. Heritage Hard Assets LLC*, Case No. CIV-24-498-J, that raised near-identical allegations against Telnyx. Judge Jones dismissed that complaint for failure to comply with Rule 8 but gave Trupia leave to amend. Rather than amend in that case, Trupia filed this new action—asserting essentially the same claims against the same parties. This First Amended Complaint, then, effectively functions as Trupia's **second** amended pleading, and it again fails to state a claim. Moreover, Trupia's own allegations describe Telnyx only as a "common carrier" that indirectly facilitated calls placed by others. Thus, Trupia cannot allege facts showing Telnyx directly made calls to him, interacted with him, or otherwise engaged in conduct that would give rise to liability under any of the asserted causes of action (or any cause of action for that matter). Trupia cannot cure this fundamental deficiency through amendment. Under these circumstances, further leave to amend would serve no purpose.

V.   **CONCLUSION**

For the reasons above—and considering Trupia's pattern of duplicative filings, failure to prosecute, and consistent inability to state a claim—dismissal with prejudice is warranted here.[9]

---

[9] To the extent the Court believes dismissal is inappropriate or premature, Telnyx would request the Court order Trupia to set forth a more definite statement, pursuant to Fed. R. Civ. P. 12(e), so that Telnyx and the Court can better assess issues of jurisdiction, plausibility, and notice.

Dated: May 15, 2026.

Respectfully Submitted,

/s/ Jacob C. Swanson
Jacob C. Swanson, OBA No. 36998
Brooks A. Richardson, OBA No. 18133
GABLEGOTWALS
BOK Park Plaza
499 W. Sheridan Avenue, Suite 2200
Oklahoma City, Oklahoma 73102
Telephone:    (405) 235-5500
Facsimile:     (405) 235-2875
jswanson@gablelaw.com
brichardson@gablelaw.com

**ATTORNEY FOR DEFENDANT
TELNYX LLC**

23

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing and transmittal to all counsel of record.

I hereby certify that on May 15, 2026, I served a copy of the above and foregoing document on the following via Certified U.S. Mail:

Anthony Trupia
605 SE 21st St.
Oklahoma City, OK 73129

**PLAINTIFF PRO SE**

/s/ Jacob C. Swanson
Jacob C. Swanson

24