## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ANTHONY TRUPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1134-D |
| | ) | |
| ONVOY, LLC; LEVEL 3 | ) | |
| COMMUNICATIONS, LLC; TELNYX | ) | |
| LLC; HLV VENTURES; HERITAGE | ) | |
| HARD ASSETS LLC; KYLE PATTON; | ) | |
| REAGAN GOLD GROUP, LLC; WORLD | ) | |
| HARVEST CHURCH, INC.; SOUTH BAY | ) | |
| GALLERIES LLC; CONFIDENCE FORD | ) | |
| OF NORMAN; FORD MOTOR COMPANY; | ) | |
| LP OPERATING; DOES 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CONFIDENCE FORD OF NORMAN'S
## MOTION TO DISMISS AND BRIEF IN SUPPORT

Pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), Defendant Confidence

Ford of Norman ("Confidence Ford") moves to dismiss Plaintiff Anthony Trupia's

("Trupia") First Amended Complaint for Civil Penalties, Permanent Injunction, and Other

Equitable Relief ("Amended Complaint"). *See* Am. Compl., Dkt. No. 48. Like his initial

pleading,[1] Trupia's Amended Complaint (1) does not satisfy the threshold pleading

---

[1] Confidence Ford previously moved to dismiss Trupia's initial complaint under Rules 8 and 12(b)(6). Trupia did not respond to that motion and instead moved to amend as a matter of course under Rule 15(a)(1)(A). Though leave was unnecessary for amendment as a matter of course, the Court granted Trupia leave, and Trupia filed his operative pleading, the Amended Complaint, on May 1, 2026.

requirements imposed by Rule 8, and (2) fails to state any plausible claim for relief under Rule 12(b)(6).

**TRUPIA'S AMENDED COMPLAINT**

Trupia's Amended Complaint proceeds in four parts. It begins with a bizarre opening complete with website links explaining that the "average Cost Per Lead" has skyrocketed. Am. Compl. ¶ 29. This inflation, Trupia insists, has created an environment where businesses are incentivized to "bypass consent laws" and "purchase 'aged leads' or 'data appended' lists for pennies on the dollar." *Id.* ¶ 30. Trupia calls this "the Arbitrage of Fraud." *Id.* (quotation modified).

Trupia then turns to his specific interactions with each named defendant. As for Confidence Ford, he alleges only a single "unsolicited sales call[]" on May 1, 2024, that he did not answer. *Id.* ¶ 38. When Trupia returned the call and "asked for an email with which to relay a demand letter," the "answering employee refused" but agreed to pass the request on to management. *Id.* Sometime later, Confidence Ford's manager, whom Trupia identifies as "Jason," phoned him back and allegedly acted "aggressively instead of just providing [an] email." *Id.* Trupia vaguely insists that the manager "called back repeatedly until [Trupia] told him to stop."[2] *Id.*

After several pages of screenshot-ridden allegations ostensibly irrelevant to Confidence Ford, *see id.* ¶¶ 42–49, Trupia moves to what he describes as "forensic

---

[2] Trupia attaches to his Amended Complaint an apparent call log associated with his phone number. Consistent with Trupia's initial allegation, the log reflects a single call from "Confidence Ford of Norman" on May 1. *See* Dkt. No. 48-1. But the log reflects no other calls from Confidence Ford.

evidence of automation," "forensic evidence of prerecord[ed] voice messages," and "ratification," *id.* ¶¶ 54–65 (bolding and capitalization omitted). On automation, he alleges having "received over one hundred 'Ghost Calls'" with characteristics he believes are suggestive of an "Automated Telephone Dialing System," though he never identifies which defendant allegedly made the calls. *Id.* ¶¶ 54, 58. On prerecorded messages, Trupia alleges that "[s]everal calls"—again without identifying the source—"played prerecorded messages with artificial voices prompting investments or donations, using generic scripts." *Id.* ¶ 60. And finally, on ratification, he maintains that "[u]nrelated corporate entities in disparate industries all independently called [him] asking for 'Howard Ship,'" which supposedly proves that "all Defendants" are "sourcing from the same corrupted reservoir" and thus ratified the allegedly unlawful lead-generation practices associated with his phone number. *Id.* ¶¶ 61, 65.

Trupia concludes with an attempt to bring eight different causes of action: violations of Okla. Stat. tit. 15, §§ 775C.3(A) and (B) under Oklahoma's Telephone Solicitation Act ("OTSA") (Counts I and II); violations of 47 U.S.C. § 227(b)(1)(A)(iii) under the federal Telephone Consumer Protection Act ("TCPA") (Counts III and IV); invasion of privacy under a theory of intrusion upon seclusion (Count V); negligence per se (Count VI); "personal liability" (Count VII); and "vicarious liability" (Count VIII). See id.  Only Counts I, II, IV, V, and VI appear to implicate Confidence Ford. *See id.* ¶¶ 69–105.

**LEGAL STANDARD**

Confidence Ford moves for dismissal under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). Rule 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "At a basic level, Rule 8 requires that a complaint give the opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint . . . ." *Bralich v. Gayner*, No. 20-cv-3800-RMR-STV, 2021 WL 5763506, at *4 (D. Colo. Nov. 24, 2021); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (noting a plaintiff's Rule 8 "burden . . . to provide fair notice of the grounds for the claims made against each of the defendants"). To satisfy Rule 8, "a complaint must explain what each defendant did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). If a complaint "fails to meet these basic pleading requirements, a district court may dismiss the action . . . for failure to comply with Rule 8." *Rodriguez v. Nationwide Homes, Inc.*, 756 F. App'x 782, 785 (10th Cir. 2018) (unpublished).

"[E]ven where a complaint meets Rule 8's threshold requirements, it may still warrant dismissal for failure to state a claim [under Rule 12(b)(6)] if it lacks sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Stillwell v. Benson*, No. CIV-25-259-J, 2025 WL 1634898, at *4 (W.D. Okla. May 2, 2025) (internal quotation marks omitted); c*f. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55

4

(2007) (discussing interplay of Rules 12(b)(6) and 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context," *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011), "mere labels and conclusions and a formulaic recitation of the elements of a cause of action will not suffice; a plaintiff must offer specific factual allegations to support each claim," *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017).[3]

## ARGUMENT AND AUTHORITIES

### I.      Trupia's "shotgun pleading" violates Rule 8.

Trupia's Amended Complaint amounts to a "shotgun pleading," thereby failing to provide fair notice under Rule 8. *See, e.g.*, *Lutnes v. Oklahoma*, Nos. CIV-25-1292-PRW, CIV-25-1353-PRW, 2026 WL 1228468, at *5 (W.D. Okla. May 4, 2026) (dismissing impermissible "shotgun pleading" under Rule 8). The Tenth Circuit has described "shotgun pleading" as the "recitation of an extended factual narrative followed by pleading numerous claims without adequately specifying which facts apply to which claims and

---

[3] A document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citations and quotation marks omitted). Still, "this relaxed pleading standard does not excuse a plaintiff from complying with the pleading requirements of *Iqbal*, and the district court cannot become an advocate by constructing arguments on behalf of the plaintiff." *Chase v. Divine*, 543 F. App'x 767, 769 (10th Cir. 2013) (unpublished) (footnote omitted).

which parties." *Fawley v. Lucero*, No. 22-2091, 2023 WL 2487323, at *1 (10th Cir. Mar. 14, 2023) (unpublished). Other circuit courts have described "shotgun pleadings" as those "replete with conclusory, vague, and immaterial facts, or alleg[ing] multiple claims against multiple defendants in each count, without identifying which defendants are responsible for which claims." *Dulcio v. Env't Prot. Agency*, Nos. 23-13045, 23-13474, 2025 WL 2104263, at *3 (11th Cir. July 28, 2025) (citation modified); *see also Gibson v. City of Portland*, 165 F.4th 1265, 1292 (9th Cir. 2026) (providing similar definition of a shotgun pleading). Regardless of form, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *cf. Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("The law recognizes a significant difference between notice pleading and 'shotgun' pleading.").

Trupia does exactly that. As done before in other cases,[4] Trupia fills his Amended Complaint with rambling and irrelevant allegations. *See, e.g.*, Am. Compl. ¶ 44 (recounting derogatory comments from "Reddit users" about a named defendant); *id.* ¶ 45 (referencing another defendant's "rating of 1.02 out of 5 stars" on the Better Business Bureau website).

---

[4] In a 2024 case filed in this district, Trupia sued many of the same entities named here. *See Trupia v. Heritage Hard Assets*, No. CIV-24-498-J, Dkt. No. 1-1. The court dismissed Trupia's pleading for failure to comply with Rule 8 yet afforded him an opportunity to seek leave to amend. *Id.*, Dkt. No. 101. When Trupia neglected to do so, the court dismissed his action without prejudice. *Id.*, Dkt. No. 102.

And even those allegations with some arguable relevance remain untethered to any particular defendant.

Consider Count I, for example, in which Trupia alleges violations of the OTSA based on the use of an automated system. In the body of his Amended Complaint, Trupia alleges—without attributing the conduct to any specific defendant—that he received "over one hundred" calls suggestive of an automated telephone system. *Id.* ¶ 54. He then appears to use that sweeping allegation to sue nearly every named defendant under Count I, largely regurgitating the same collective allegations in support. *See id.* ¶¶ 69–72.

Count II proceeds in much the same way. In the body of the Amended Complaint, Trupia alleges that "Defendants"—without differentiation—"utilized 'Neighbor Spoofing' technology to display false '405' area code Caller IDs to induce an answer from an Oklahoma resident." *Id.* ¶ 24. He then repackages that same undifferentiated allegation in Count II to assert OTSA spoofing claims against nearly every named defendant. *Id.* ¶¶ 73– 76.

And the list goes on. "Such collective allegations," at bottom, "are insufficient to put [Confidence Ford] on notice of the wrongful acts [it] allegedly committed." *Schwab v. Kan. Dep't of Children & Families*, 851 F. App'x 110, 116 (10th Cir. 2021) (unpublished) (citing *Robbins*, 519 F.3d at 1250). The Amended Complaint therefore fails to satisfy Rule 8's threshold pleading requirements and should be dismissed.

## II.     Rule 8 aside, Trupia fails to state a plausible claim for relief under Rule 12(b)(6).

Even setting aside the threshold pleading deficiencies, the allegations specifically attributable to Confidence Norman fail to state a claim for relief. Confidence Norman addresses the claims against it—Counts I, II, IV, V, and VI—in turn.

### A.     Count I: OTSA, Okla. Stat. tit. 15, § 775C.3(A)

Trupia first alleges liability against Confidence Ford (and others) under the OTSA, § 775C.3(A). That provision prohibits "mak[ing] or knowingly allow[ing] a commercial telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers." Okla. Stat. tit. 15, § 775C.3(A).

To be sure, Trupia does not allege that Confidence Ford itself utilized an automated system under § 775C.3(A). Instead, Trupia insists that Confidence Ford—whom he identifies as one of eight "Seller Defendants"—is liable through ratification. *See* Am. Compl. ¶ 72 (seeking vicarious liability against Confidence Ford through ratification).[5]

Ratification is generally "defined as the as the giving of sanction and validity to something done by another." *Baldwin v. SAI Riverside C, LLC*, 326 P.3d 555, 558 (Okla. Civ. App. 2014). It requires a principal's "full knowledge at the time of the claimed ratification of all the material facts relative to the unauthorized transaction." *Messman v. Lower*, 202 P. 1014, 1015–1016 (Okla. 1921); *see also Amazon Fire Ins. Co. v. Bond*, 165 P. 414, 418 (Okla. 1917) (deeming it "essential" for ratification "that the principal have full

---

[5] Ratification is one theory of vicarious liability. *See Gray v. Feed the Children, Inc.*, No. CIV-09-662-D, 2010 WL 11607322, at * (W.D. Okla. May 21, 2010) (observing that "[r]atification is a function of Oklahoma's vicarious liability law).

knowledge of all material facts and circumstances relative to the unauthorized act or transaction"); *Fed. Deposit Ins. Corp. v. Staudinger*, 797 F.2d 908, 911 (10th Cir. 1986) ("Ratification is the acceptance of the result of an act, with an intent to ratify, and with full knowledge of all material circumstances." (citing *Burke Aviation Corp. v. Alton Jennings Co.*, 377 P.2d 578 (Okla. 1962)))). Though Confidence Ford has uncovered no caselaw applying ratification liability under the OTSA, courts have allowed ratification liability under federal telecommunication laws. *See, e.g.*, *Braver v. Clear Sky Fin., LLC*, No. CIV-22-710-R, 2024 WL 3488082, at *1 n.2 (W.D. Okla. July 18, 2024) ("[A] seller may be held vicariously liable under common law agency principles for a TCPA violation by a third-party telemarketer."); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020) ("A seller may be liable for unauthorized conduct of a telemarketer if the seller is aware of the unauthorized conduct of the telemarketer and fails to terminate its services.").

Trupia's attempt at ratification liability is tenuous at best. In his view, the "John Doe Defendants"—"upstream lead generators"—directly violated Okla. Stat. tit. 15, § 775C.3(A) "by utilizing an automated system . . . to place hundreds" of calls to Trupia's phone. Am. Compl. ¶¶ 68, 70 (citation modified). The "Seller Defendants," including Confidence Ford, then "knowingly accepted the benefit of the automated scheme by purchasing the . . . leads generated by these illegal calls." *Id.* ¶ 71. According to Trupia, the Seller Defendants necessarily knew the leads were illegally generated because each "independently called [him] asking for 'Howard Ship,'" which supposedly proves they were "sourcing from the same corrupted reservoir." *Id.* ¶¶ 61–62; *see also id.* ¶ 71 (alleging

9

that "[t]he presence of the fictitious 'Howard Ship' name and the 'aged' nature of the leads served as Red Flags that the data was harvested illegally").

But it is difficult to see how these allegations plausibly suggest that Confidence Ford knew an upstream lead generator used "an automated system for the selection or dialing of telephone numbers." Okla. Stat. tit. 15, § 775C.3(A). Again, "it is essential that the principal have full knowledge, at the time of the ratification, of all the material facts relative to the unauthorized transaction." *Musket Corp. v. Star Fuel of Okla., LLC*, No. CIV–11–444–M, 2012 WL 3595048, at *9 (W.D. Okla. Aug. 21, 2012) (quoting *Nowata Oil Syndicate v. Com. Nat'l Bank*, 219 P. 339, 343 (Okla. 1923)). And at most, Trupia alleges that Confidence Ford called him while asking for someone else.[6] That allegation falls well short of plausibly showing that Confidence Ford knew another entity used an "automated system" under § 775C.3(A)

Because Trupia's § 775C.3(A) claim against Confidence Ford rests entirely on a ratification theory, and because Trupia has failed to plausibly allege ratification, the Court should dismiss the claim under Rule 12(b)(6). *See, e.g.*, *Gregory v. Lindamood Heavy Hauling, Inc.*, No. CIV-22-327-R, 2022 WL 2792203, at *4 (W.D. Okla. July 15, 2022) (granting dismissal where the plaintiff "failed to state a plausible claim for ratification" against a defendant for another's tortious conduct).

---

[6] Throughout Trupia's scattered pleading, he never appears to allege that Confidence Ford itself called him asking for "Howard Ship." To the contrary, Trupia alleges only that Confidence Ford placed an "unsolicited sales call[]" to him on May 1, 2024—a call he admittedly did not answer and for which he alleges no voicemail. *See* Am. Compl. ¶ 38. And though Trupia alleges that Confidence Ford's manager later called him, those calls allegedly occurred only after Trupia himself initiated contact with Confidence Ford.

### B.   Count II: OTSA, Okla. Stat. tit. 15, § 775C.3(B)

The same pleading defects befall Trupia's OTSA claim under § 775C.3(B), which prohibits "fail[ing] to transmit or caus[ing] not to be transmitted the originating telephone number and, when made available by the telephone solicitor's carrier, the name of the telephone solicitor to any caller identification service in use by a recipient of a commercial telephonic sales call." Okla. Stat. tit. 15, § 775C.3(B).

As with his claim under § 775C.3(A), Trupia alleges Confidence Ford's liability purely through ratification. According to Trupia, the "John Doe Defendants" directly violated § 775C.3(B) by intentionally "neighbor spoofing"[7] his local area code when calling his phone, while Confidence Ford (and other "Seller Defendants") apparently "ratified this spoofing by purchasing the data derived from it and calling [his] phone." Am. Compl. ¶¶ 74–75.

But Trupia again alleges no facts plausibly suggesting that Confidence Ford had full knowledge that an upstream lead generator violated § 775C.3(B). Indeed, Trupia's own allegations make such a theory even less plausible. According to Trupia, when speaking with Confidence Ford's manager, the manager explained that Confidence Ford did not purchase leads from an upstream lead generator at all, but instead received "leads from Ford Motor."[8] Am. Compl. ¶ 39.

---

[7] As another court explained, "scammers often use neighbor spoofing so it appears that an incoming call is coming from a local number, or spoof a number from a company or a government agency that you may already know and trust." *Taylor v. Am. Home Buyer, Ltd.*, No. H-22-1169, 2022 WL 1405905, at *1 (S.D. Tex. May 4, 2022) (citation modified).

[8] To be clear, Confidence Ford does not suggest that Defendant Ford Motor Company itself ratified any conduct by upstream lead generators. Confidence Ford cites these allegations

Because Trupia has failed to plausibly allege Confidence Ford's liability under § 775C.3(B), the Court should dismiss that claim under Rule 12(b)(6).

### C.    Count IV: TCPA, 47 U.S.C. § 227(b)(1)(A)(iii)

Like Trupia's state-law claim under Okla. Stat. tit. 15, § 775C.3(A), Count IV asserts a federal claim under the TCPA for calls allegedly made using an "automatic telephone dialing system."[9] 47 U.S.C. § 227(b)(1)(A)(iii); *see also Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 618 (2020). And again, like his § 775C.3(A) claim, Trupia attributes liability to Confidence Ford purely through ratification. In his view, "[b]y purchasing leads from a source that utilized an [automatic telephone dialing system] to harvest data, and by willfully ignoring the indicators of that illegal harvesting," the "Seller Defendants ratified the conduct." Am. Compl. ¶ 84.

Count IV fails for essentially the same reasons as Count I. Trupia alleges no facts plausibly suggesting that Confidence Ford—or any other Seller Defendant—had knowledge that an upstream lead generator used an "automatic telephone dialing system" to call his phone. 47 U.S.C. § 227(b)(1)(A)(iii). Instead, he relies almost entirely on the allegation that some Seller Defendants called asking to speak with "Howard Ship." Am. Compl. at 24. Again, it is difficult to grasp how that allegation plausibly suggests that

---

only because they undermine Trupia's conclusory theory that Confidence Ford purchased leads from the "John Doe Defendants" to whom he attributes primary OTSA liability.

[9] The TCPA defines an "automatic telephone dialing system" as equipment with the capacity to (1) "store or produce telephone numbers to be called, using a random or sequential number generator," and (2) "dial such numbers." 47 U.S.C. § 227(a)(1)(A)–(B).

Confidence Ford had "full knowledge" that an upstream lead generator violated §

227(b)(1)(A)(iii). *Town of Bloomfield v. Charter Oak Nat'l Bank*, 121 U.S. 121, 136 (1887).

### D.    Count V: Intrusion upon Seclusion

Turning away from statutory claims, Trupia asserts that all named defendants,

including Confidence Ford, committed the tort of intrusion upon seclusion. And he

apparently seeks to hold each defendant jointly and severally liable for the conduct of the

others.

Starting with joint and several liability, the doctrine has little relevance to Trupia's

tort claim under Oklahoma law. To be sure, "Oklahoma has abolished joint and several

liability in favor of several liability." *United States v. Osage Wind, LLC*, 710 F. Supp. 3d

1018, 1030 (N.D. Okla. 2023).

In any event, joint and several liability does not relieve Trupia of the burden to

plausibly allege that Confidence Ford itself intruded upon his seclusion.[10] To prevail on

such a claim in Oklahoma, Trupia must ultimately establish (1) "a nonconsensual

intrusion," (2) "which was highly offensive to a reasonable person." *Gilmore v. Enogex,

Inc.*, 878 P.2d 360, 366 (Okla. 1994).

Here, Trupia identifies only a single "unsolicited" sales call on May 1, followed by

what he vaguely characterizes as "repeated[]" calls from Confidence Ford's "aggressive[]"

---

[10] "Joint and several liability is a way to assign damages and not an independent cause of action." *Ledin v. U.S. Postal Serv.*, No. 4:18-cv-00276-SRB, 2018 WL 11242022, at *1 n.2 (W.D. Mo. July 16, 2018). It applies only after "there has been a judgment against multiple defendants," *Honeycutt v. United States*, 581 U.S. 443, 447 (2017), where "each . . . engage[d] in tortious conduct," *In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 482 n.10 (S.D.N.Y. 2022).

manager after Trupia threatened a demand letter. Am. Compl. ¶ 38. A few phone calls do not amount to invasion of privacy. *See* Restatement (Second) of Torts § 652B cmt. D ("[T]here is no liability [for invasion of privacy] for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded."). Nor, most glaringly, can Trupia invite a response by threatening to send a demand letter and later plausibly claim that a responsive return call constitutes an intrusion into seclusion. *See, e.g.*, *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *8 (C.D. Cal. Feb. 27, 2025) ("Because one cannot logically intrude into communications to which they are a party, the Court finds Plaintiff failed to sufficiently plead a claim for intrusion upon seclusion."). As it stands, Trupia has failed to plausibly allege a state-law claim for intrusion upon seclusion against Confidence Ford.

### E.    Count VI: Negligence Per Se

Trupia's final claim against Confidence Ford for negligence per se—which hinges on an apparent violation of 47 U.S.C. § 227(e)—fails like the others. Negligence per se is "based on the [defendant's] violation of a duty imposed by statute." *S.R. Tri-County Interlocal CO-OP Independent Sch. Dist.*, No. 6:23-cv-255-JAR, 2025 WL 845117, at *10 (E.D. Okla. Mar. 18, 2025) (applying Oklahoma law). Trupia alleges that the Seller Defendants, including Confidence Ford, violated a duty imposed by 47 U.S.C. § 227(e). Section 227(e) makes it "unlawful for any person within the United States . . . , in

connection with any voice service or text messaging service, to cause any caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1).

But even assuming Trupia can rely on § 227(e) to support a claim for negligence per se,[11] he still does not plausibly allege that Confidence Ford violated a duty imposed by that statute. He does not allege that Confidence Ford itself placed a call violating § 227(e)(1); instead, he alleges only that the "Seller Defendants breached [a] duty by utilizing leads generated by dialing systems that relied on spoofed local numbers to deceive Plaintiff." Am. Compl. ¶ 96. And as explained above, Trupia has not plausibly alleged that Confidence Ford ratified any statutorily proscribed conduct by others.

## **CONCLUSION**

Because Trupia (1) fails to comply with Rule 8 and (2) fails to state any plausible claim against Confidence Ford under Rule 12(b)(6), the Court should dismiss his Amended Complaint.

---

[11] Some courts have acknowledged that a "negligence per se claim cannot rest on a federal statute that does not provide a private right of action." *Gilbert v. BioPlus Specialty Pharmacy Servs., LLC*, No. 6:21-CV-2158-RBD-DCI, 2023 WL 3555006, at *2 (M.D. Fla. Mar. 3, 2023) (citation modified). And courts across jurisdictions have concluded that "there is no private right of action under § 227(e)." *Clark v. Avatar Technologies Phl, Inc.*, No. H–13–2777, 2014 WL 1342033, at *4 (S.D. Tex. Apr. 3, 2014); *see also Lucombe v. Harborview Cap. Holdings LLC*, No. 8:25-cv-688-KKM-AAS, 2025 WL 3144180, at *7 (M.D. Fla. Oct. 8, 2025) ("Mr. Lucombe does not have a private cause of action under 47 U.S.C. § 227(e).").

Respectfully submitted,


/s/ Jason A. Sansone
Lyndon W. Whitmire, OBA No. 17164
Jason A. Sansone, OBA No. 30913
PHILLIPS MURRAH P.C.
424 N.W. 10th St., Suite 300
Oklahoma City, Oklahoma 73103
Telephone: 405-235-4100
Facsimile: 405-235-4133
lwwhitmire@phillipsmurrah.com
jasansone@phillipsmurrah.com
**Attorneys for Defendant Confidence Ford of Norman**


## CERTIFICATE OF SERVICE

This is to certify that on the 15th day of May, 2026, a true and correct copy of the above and foregoing was mailed by first class mail, postage prepaid, to the following:

Anthony Trupia
605 SE 21st Street
Oklahoma City, OK  73129

/s/ Jason A. Sansone
Jason A. Sansone, OBA No. 30913

16