# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ANTHONY TRUPIA,

    Plaintiff,

v.

                                      Case No. CIV-25-1134-D

HERITAGE HARD ASSETS LLC, et. al,

    Defendants.

_____/

## __DECLARATION OF DEFENDANT KYLE PATTON__

Declarant, Defendant Kyle Patton, states as follows:

1.    My name is Kyle Patton. I am older than 18 years old and otherwise *sui juris*. I make this declaration based on personal knowledge unless otherwise stated herein.

2.    I submit this declaration in support of the Motion to Dismiss of Heritage Hard Assets LLC and myself.

3.    I am a Defendant in this action and a Manager of Defendant Heritage Hard Assets LLC ("Heritage"). Heritage and its two members are all limited liability companies that are organized under Florida law with their principal place of business in Florida. Heritage's only brick-and-mortar location is in Florida. The members of Heritage's two members are individuals who are domiciled in Florida.

4.    On or around February 7, 2024, Plaintiff Anthony Trupia ("Plaintiff") sent a demand letter to Heritage demanding $15,000 for alleged violations of federal and state

telephonic solicitation laws for a single, manually dialed, attended phone call that was made to Plaintiff on **that same day** (February 7th).  I did not personally make that call to Plaintiff.  A true and correct copy of that demand letter is attached hereto as **Exhibit 1**.

5.      The letter threatens that, without payment, Plaintiff would: (a) file suit against Heritage, which would "be very expensive, and may result in the complete bankruptcy of your company" because of purported damages and because **"legal costs alone will easily eclipse the settlement offer"**; (b) "contact *all fifty* State Attorneys *General* to inform them of [Heritage's] business activities"; and (c) refer to his "extensive spreadsheet list with every class action law firm . . . handling TCPA cases in the country" and "email all of them with the case number when I file" in order to prompt "many other lawsuits." Exh. 1.

6.      As the Court can plainly see, the phone number provided by Plaintiff to Heritage in the demand letter is a New York phone number: (516) 984-0142. *See* Exh. 1.

7.      I have reviewed the Amended Complaint (Dkt. 48) filed by Plaintiff Anthony Trupia ("Plaintiff") in this action.  Therein, Plaintiff alleges that Heritage called Plaintiff at an Oklahoma City phone number, specifically (405) 269-1782.

8.      I have searched Heritage's systems and can confirm that Heritage has never made a call to (405) 269-1782.

9.      The only number that Heritage has used to contact Plaintiff following receipt of the demand letter is the New York phone number: (516) 984-0142.

10.      I have never been to Oklahoma.

[2845931/1]                                                2

11.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Further declarant states not.

Executed on 5/26/2026, in Boca Raton, Florida:

By: _____

Kyle Patton

[2845931/1]                                    3

# EXHIBIT 1

**This is a Demand Letter:**

Heritage Hard Assets LLC:

Your company, Heritage Hard Assets LLC, is part of a ring of illegal spam callers that has been bombarding my phone with calls, text messages, and voicemails without express, written consent. This is a violation of the federal TCPA, the Oklahoma Telephone Solicitation Act of 2022, and a violation of Florida's copycat TCPA bill.

Each of these statutes provide private remedies for callers aggrieved by these kinds of violations. The TCPA allows for recovery of up to $1,500 per violation, per unsolicited call or text, the Oklahoma 2022 bill allows for recovery of up to $1,500 per violation, per unsolicited call or text, and your state copycat bill contains the same private penalties. In short, the combination of federal and state laws here allows private parties to collect as much as $4,500 <u>per violation</u>.

I will address a couple issues for you right now for the sake of expedience.

1. I am not an attorney, but I am an experienced litigant.  You can simply google "Anthony Trupia lawsuit" to confirm the truth of this statement.  You will see I have litigated cases that are significantly more complex than TCPA issues and have been doing so for years.
2. "Express consent" means consent that is clearly and unmistakably stated, see *Satterfield v. Simon & Schuster, Inc.., 569 F. 3d 946 (9th Cir. 2009)*.
3. On Feb 15, 2012, the FCC adopted a TCPA report and order requiring **written** consent for calls and texts of this nature.
4. The TCPA imposes **strict liability** on callers who unintentionally call a wrong number due to the number changing hands or being improperly provided by a customer. See *SOPPET v. ENHANCED RECOVERY COMPANY LLC (2012)*.

It does not matter if you claim this is a mistake; I never provided you any kind of permission to contact me, let alone express written consent. I will have no interest in your other excuses either. This is the danger of making mass robocalls and texts. You have two options now: you can settle this with me out of court, where it will be inexpensive, private, and generally painless, or you can ignore this demand letter.

**Option 1: Private Settlement**

1. I will accept $15,000 for a complete settlement and resolution of this matter. You are already far deep in violations; however, I choose this number for a simple reason. It's similar to or cheaper than the starting cost/retainer you would need to pay anyway to hire an attorney to fight this case in court. It's an easy choice.
2. To accept this offer, you will need to have an in-house attorney, or hire an attorney, to write you a proper NDA/release of liability. I will sign any NDA or release of liability you like; guaranteeing you this matter is resolved fully.
3. To accept this offer, you will need to confirm you wish to accept the offer and have an attorney call me to finish the paperwork before close of business Thursday, February 22, 2024. This is ten

business days from now. A paper copy of this demand letter will be mailed to your registered agent if I do not hear from you within 24 hours.

**Option 2: Fight this in Court**

1.  If you choose to fight this with me in court, it is going to be expensive, and may result in the complete bankruptcy of your company. For one, I will take $1,500 to $4,500 for *every single violation*.
2.  **Your legal costs alone will easily eclipse the settlement offer I have provided to you**.
3.  The template suit I already have written up is based on a couple suits filed by the various State Attorneys General, who combined lead a 50 state Robocall Taskforce.  The State Attorneys General write as close to airtight lawsuits as exist. I'm a pro se litigant, I am not foolish, I carefully studied and copied the SAG lawsuits to write my own.
4.  The last company who dicked around with me instead of settling immediately ended up paying **$35,000** to settle after they decided they wanted to see my complaint drafting skills. You've been warned, there will be no negotiation, and the cost of resolution will only ever increase.
5.  When your 10 days expire, the second thing I'm going to do after filing suit is contact *all fifty State Attorneys General* to inform them of your business activities.  All fifty.  Here is a collage of 50 SAG complaints I filed against Sprint over a cell phone bill, I would absolutely do this to you over TCPA violations:



6.  Getting on the radar for Robocalls with the SAGs is basically a death sentence for a company like yours. The SAGs can pursue you for damages for *every single violation on every call you've made*.  This can turn into millions in fines for a single day of calling:

[2573241/1]

### What are the penalties for unlawful calling? How do they differ from the federal to state level?

The penalties are serious, and they differ not only from state to federal, but also from state to state. The important thing to know is that penalties are enforced on a per-call basis, meaning that penalties and private litigant damages can snowball quickly. Also, if a company is found to have violated the TCPA and state laws, it can face penalties and damages under both frameworks. Take an example of a hypothetical company that makes a modest 5,000 calls per day. If it violates both the TCPA's prohibition on calling using an automatic telephone dialing system without proper consent and Florida's similar prohibition, it could face up to $15,000,000 in potential private litigant damages from just that one day of calling. And that isn't even counting the potential penalties imposed by regulators. Some states even have criminal penalties for certain violations.

7. I have an extensive spreadsheet list with every class action law firm and every law firm handling TCPA cases in the country, and I will email all of them with the case number when I file. Typically this results in many other lawsuits following the suit I initially file.  Even if you choose to settle with me at this point, I will not be able to take back these emails.

8. Finally, while no case is actually 'open and shut,' TCPA cases are the closest thing to it.  With the framework provided by the SAGs, it is unlikely you would win in court. Pro se litigants win TCPA cases all the time. You will probably still end up paying me more than triple my settlement offer in damages plus my court costs.

9. You are looking at a bare minimum of $50,000 in costs if you fight this with me in court and the potential end of your company buried under fines at a maximum.

You should email me back ASAP to confirm you understand this is serious and you are hiring a lawyer to settle this case with me. If I have not heard from you by Thursday, February 22, 2024, a suit will be filed by February 23, 2024.  Have a good day.

Anthony Trupia
516-984-0142
Trupiaar@gmail.com

[2573241/1]