**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ANTHONY TRUPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1134-D |
| | ) | |
| 1. ONVOY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FORD MOTOR COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Ford Motor Company ("FMC") respectfully moves this Court for summary judgment in its favor on all claims asserted by Plaintiff Anthony Trupia in the present action. FMC submits the following brief in support of its motion.

**INTRODUCTION**

Plaintiff asserts sweeping statutory and tort claims arising from an alleged "robocall arbitrage" scheme involving numerous unrelated entities, including FMC. At its core, Plaintiff's First Amended Complaint attempts to impose liability on FMC based not on any direct conduct, but on conclusory allegations that it "provided leads" to an independent dealership, Confidence Ford of Norman ("Confidence Ford"), that allegedly participated in unsolicited telemarketing activity.

The causes of action invoked by Plaintiff include alleged violations of the Telephone consumer Protection Act ("TCPA"), the Oklahoma Telephone Solicitation Act ("OTSA"), invasion of privacy, and related theories premised on automated dialing systems,

prerecorded messages, and caller ID spoofing. As to FMC, these claims are asserted solely under a vicarious liability theory, premised on Plaintiff's allegation that FMC maintained some role in lead generation for its dealerships.

Plaintiff's allegations against FMC are completely conclusory and not supported by any admissible evidence.  Plaintiff cannot establish, as a matter of law, that FMC exercised control over the timing, manner, or content of the alleged calls, authorized any unlawful conduct, or had knowledge of any purported statutory violations. Plaintiff cannot establish, as a matter of law, that an agency relationship exists between FMC and Confidence Ford sufficient to impose liability for the independent acts of a dealership or third-party telemarketers. Accordingly, the claims against FMC are premised **solely** on a theory of agency without any supporting evidence.  Indeed, there is no evidence to support claims against FMC for direct liability, agency, ratification, or knowledge required under the TCPA, OTSA, or common law. For these reasons, summary judgment in favor of FMC is warranted.

**STATEMENT OF UNDISPUTED FACTS**

1.     FMC and its authorized dealerships, including Confidence Ford, operate pursuant to a written Ford Sales and Service Agreement (the "Agreement"). *See* **Ex. 1**, Ford Sales & Service Agreement Standard Provisions.

2.     The Agreement governs the relationship between FMC and its dealerships with respect to the purchase and resale of vehicles, parts, and related services. **Ex. 1**, pp. 1-6.

3.     The Agreement defines "DEALERSHIP OPERATIONS" as activities conducted **by the dealership** at its own facilities, including sales and service. **Ex. 1**, p. 2.

4.     The dealership is responsible for conducting its own dealership operations, including sales and service activity at its dealership location. **Ex. 1**, pp. 3, 7.

5.     The Agreement requires the dealership to "develop, maintain and direct" its own sales organization and conduct its own advertising and promotional activities. **Ex. 1**, p. 5.

6.     The dealership is responsible for employing and training its own personnel necessary to carry out dealership operations. **Ex. 1**, p. 9.

7.     The dealership must independently conduct its business practices, advertising, and customer interactions in compliance with applicable laws. **Ex. 1**, pp. 10-11.

8.     The Agreement requires the dealership to conduct operations in a manner reflecting on its own reputation, confirming control over its own conduct. **Ex. 1**, p. 8.

9.     The dealership is responsible for establishing and maintaining its own dealership facilities. **Ex. 1**, p. 8.

10.     The dealership must maintain its own capital, financing, and operational resources necessary to run its business. **Ex. 1**, p. 9.

11.     The Agreement reserves to FMC the right to determine dealership locations and market representation but does not authorize it to control the dealership's daily operations. **Ex. 1**, p. 12.

12.     The Agreement expressly states:

This agreement does not in any way create the relationship of principal and agent between the Company and the Dealer and under no circumstances shall the Dealer be considered to be an agent of the Company. The Dealer shall not act or attempt to act, or represent himself, directly or by implication, as agent of the Company or in any manner assume or create any obligation on behalf of or in the name of the Company.

**Ex. 1**, p. 15.

13.     The Agreement confirms that dealership operations are undertaken "in the discretion of the Dealer," and imposes no liability on FMC for those operations. **Ex. 1**, p. 30.

14.     The Agreement establishes that the dealership operates as an independent business entity and not as an agent of FMC. **Ex. 1**, pp. 15, 30.

15.     The Agreement does not contain any provision requiring FMC to generate, supply, or distribute customer leads, prospects, or marketing opportunities to the Dealer. **Ex. 1**.

16.     Plaintiff alleged that Confidence Ford contacted him directly on May 1, 2024, at 12:35 p.m. Dkt. 48 at 9, ¶ 38.

17.     Plaintiff does not allege that FMC made any calls to him.

18.     On May 15, 2026, Co-Defendant Confidence Ford of Norman moved to dismiss Plaintiff's First Amended Complaint for failure to satisfy the threshold pleading requirements of Rule 8 and failure to state any plausible claim for relief under Rule 12(b)(6). Dkt. 56.

## ARGUMENTS AND AUTHORITIES

### I.    Standard of Review

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

When the moving party has carried its burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler*, 144 F.3d at 670. Thus, the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**II.     There is no agency relationship between FMC and Confidence Ford.**

Plaintiff's agency theory fails as a matter of law because the undisputed facts establish that no agency relationship exists between FMC and Confidence Ford. Pursuant to the Agreement between Confidence Ford and FMC, Confidence Ford is part of FMC's system of independent dealers. SUF at ¶ 1. The agreement provides that Confidence Ford is third-party owned, with no on-site control by FMC. FMC, therefore, has no actual or apparent authority over Confidence Ford. SUF at ¶¶ 22-23.

Under Oklahoma law, an agency relationship can only be established in one of two ways: First, parties can create an express agency pursuant to agreement that gives one party (the principal) the power to give direction to the other party (the agent) and the duty to obey. *See Le v. Total Quality Logistics, LLC*, 2018 OK CIV APP 71, ¶ 18, 431 P.3d 366, 373 (noting that a superior will be liable for an agent's conduct only "[i]f a right of control is present"). Second, an implied agency relationship might exist where the purported principal's conduct *to the plaintiff* is such that the plaintiff would reasonably believe that the purported agent had authority and a duty to act on the principal's behalf. *See Thornton v. Ford Motor Co.*, 2013 OK CIV APP 7, ¶ 28, 297 P.3d 413, 421 (emphasis added). There is no evidence that either situation is present here.

> **A.     There is no express agency relationship between FMC and Confidence Ford.**

While Confidence Ford sells Ford products and displays the Ford brand logo, this is insufficient to amount to an agency relationship under Oklahoma law. To find such a relationship pursuant to a franchise agreement, for example, Oklahoma courts have

required a greater level of control, noting that "it is *the detailed assertion of control* that may make a franchise agreement the source of an agency relationship." *Bayhylle v. Jiffy Lube Int'l, Inc.*, 2006 OK CIV APP 130, ¶ 13, 146 P.3d 856, 860 (emphasis in original) (discussing *Enter. Mgmt. Consultants, Inc. v. State ex rel. Okla. Tax Comm'n*, 1988 OK 91, n.15, 768 P.2d 359, 362).

Moreover, the Oklahoma Court of Appeals has determined that reasonable control by an automotive manufacturer over use of its trademark is not enough to establish an agency relationship between the automotive manufacturer and the dealership. *Thornton v. Ford Motor Co.*, 2013 OK CIV APP 7, ¶ 20, 297 P.3d 413, 419. The *Thornton* court noted this decision was "consistent with decisions by courts from other jurisdictions holding a motor vehicle manufacturer/franchisor may exercise some control to protect its national identity, reputation, and trademark from abandonment without creating an agency relationship with its dealer/franchisee." *Id.* (citations omitted). Courts in other jurisdictions agree. *See, e.g., Arnson v. General Motors Corp.*, 377 F.Supp. 209, 212-13 (N.D. Ohio 1974) (granting defendant summary judgment on claims based on agency relationship after thorough review of the dealership agreement and noting that the "weight of authority" supports the idea that dealers are not agents of manufacturers); *see also LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 136 (Tex.Ct.App. 1997) (upholding summary judgment because "[a] dealer is not per se an agent of the manufacturer … [but t]he nature of the relationship is determined by the terms of the dealership agreement").

Here, FMC does not exercise the requisite level of control over Confidence Ford to establish an agency relationship. The Agreement clearly states that it is not intended to

7

create any type of agency relationship between FMC and Confidence Ford. SUF ¶ 12. The undisputed record establishes that Confidence Ford operates as an independent dealership responsible for its own advertising, marketing, and communications activities. SUF ¶ 7. FMC does not direct dealership telemarketing practices, does not control how dealers obtain or use customer leads, and does not control the day-to-day communications of dealership personnel. SUF ¶¶ 8, 13-14. Without evidence of such control, FMC cannot be vicariously liable for any alleged wrongdoing of Confidence Ford.

Plaintiff's reliance on a purported statement by Confidence Ford's employee that leads are provided by FMC does not create a genuine issue of material fact. Dkt. 48 at ¶ 39. First, any such statement is inadmissible hearsay and cannot be considered at summary judgment. *See, e.g., Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995) ("A third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill."). Second, even assuming *arguendo* that FMC provided leads to its dealership network, that fact is legally insufficient to establish an agency relationship under Oklahoma law. As set forth above, agency requires evidence of a right to control the manner of the purported agent's conduct, which is wholly absent here, particularly in light of the Agreement expressly disavowing any principal-agent relationship and confirming that dealerships independently control their own sales and marketing activities. *See Thornton*, 2013 OK CIV APP at ¶ 20, 297 P.3d at 419. Third, the mere provision of a lead, without more, does not constitute a violation of the TCPA or OTSA. Those statues impose liability based on the direction or control of unlawful telemarketing communications, not on attenuated upstream conduct such as the alleged sourcing of customer contact information.

Accordingly, Plaintiff's reliance on this alleged statement fails to establish admissible evidence of agency, control, or any actionable statutory violation by FMC.

**B.    Confidence Ford did not have implied authority to act on behalf of FMC.**

Plaintiff likewise cannot recover under an implied or apparent agency theory. A finding of implied agency requires a "manifestation ***by the principal*** to a third person that another is his agent." *Thornton*, 2013 OK CIV APP 7, ¶ 27, 297 P.3d 413, at 421 ¶ 27 (quoting *Stephens*, 1981 OK 42, ¶ 8, 627 P.2d at 441). This manifestation, whether in word or act, must create a ***reasonable*** belief on the part of the third party (in this case, Plaintiff), that the agent has authority to bind the particular conduct. *See id.* In addition to these elements, Plaintiff must show that he reasonably relied upon the manifest relationship, to his detriment. *Id.*; *see also Diamond Sevens, L.L.C. v. Intelligent Home Automation, Inc.*, 2010 OK CIV APP 131, ¶ 18, 245 P.3d 1260, 1264.

Plaintiff cannot point to any acts by FMC suggesting that Confidence Ford was authorized to act on FMC's behalf. As the Supreme Court held in *Wheeler v. Puritan Insurance Company*, 1986 OK 33, ¶ 12, 720 P.2d 729, 731, apparent agency fails where "there [was] no mention in the record of any communication, written or oral or by advertisement, that [the dealership] was an agent of [the third-party]." Likewise, in *Thornton*, no implied agency existed where the dealership allegedly received cooperation and support from Ford on a regular basis because there was no manifestation by Ford that would allow a customer to conclude that the dealership was selling vehicles on Ford's behalf. 2013 OK CIV APP 7, ¶ 32, 297 P.3d at 422.

Here, there is no communication, representation, or conduct by FMC directed to Plaintiff that would suggest that Confidence Ford was authorized to place telemarketing calls on FMC's behalf. The mere fact that Confidence Ford is an authorized Ford Dealership and uses Ford branding is legally insufficient to establish apparent authority. It is undisputed that there was no communication between FMC and Plaintiff or any representation made by FMC to Plaintiff regarding Confidence Ford's authority.

## C.     FMC did not ratify Confidence Ford's alleged actions.

Plaintiff alleges that FMC ratified unlawful robocall activity by supplying and distributing the "Howard Ship" lead to its dealership network, knowingly accepting the benefits of that lead despite "red flags" that the lead was generated through illegal automated and spoofed calls, and continuing to use and conceal the source of such leads. Dkt. 48 at ¶¶ 39, 65, 71(a)-(c), 75, 84, 105. According to Plaintiff, this conduct establishes ratification because Ford allegedly had knowledge of the lead's unlawful origin, benefited from its use in sales, and failed to investigate or disclose the source, thereby ratifying the underlying TCPA and OTSA violations. *Id.* at ¶¶ 6, 64-65, 71(b)-(c), 84.

Neither the allegations nor the undisputed facts satisfy the legal standard for ratification. "Ratification" is the affirmance by a party of a prior act which did not bind it but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by it. Restatement (Second) of Agency § 82. Under Oklahoma law, ratification requires proof that the principal accepted the benefits of the alleged act with full knowledge of the material facts and made an affirmative election to adopt the unauthorized conduct. *See, e.g., Harrison v. Commander Mills, Inc.*, 298 P.2d

10

749 (Okla. 1956); *see also In re Brown*, 412 F. Supp. 1066, 1071 (W.D. Okla. 1975) ("Ratification in agency is an adoption or confirmation by one person of an act performed on his behalf by another."). However, ratification will not be found where the actor is not an agent of the principal or does not purport to be one. *See Statser v. Chickasaw Lumber Co.*, 327 P.2d 686, 690 (Okla. 1958).

Plaintiff's theory fails at each element. First, there is no evidence that FMC accepted any benefit from the alleged robocall activity. Plaintiff relies on generalized assertions that FMC "benefited" from dealership sales but identifies no evidence tying any such benefit to the specific calls at issue, as opposed to the independent conduct of Confidence Ford.

Second, there is no evidence that FMC had "full knowledge of the material facts" concerning the alleged unlawful calls. As the Agreement shows, FMC has no oversight of Plaintiffs marketing or sales. SUF ¶ 5. Further, the Agreement requires dealers to conduct sales and marketing consistent with all applicable laws. *Id.* at ¶ 7. Without proof of full knowledge of the alleged misconduct, ratification cannot be established.

Third, there is no evidence of any affirmative act by FMC indicating an intent to adopt or approve the alleged conduct. The Agreement is absent of any policy that reflects an adoption of the purported robocalling practices. As a matter of law, ratification requires more than inaction or alleged awareness; it requires a clear manifestation of intent to adopt the specific unauthorized act.

In sum, there is no evidence of any conduct by FMC establishing acceptance of benefits, full knowledge, an intent to adopt the alleged conduct, or that Confidence Ford was authorized to act as its agent in connection with the alleged conduct. Absent such

showing, even if Confidence Ford made the alleged phone calls, FMC cannot be held liable for the purported wrongdoing and Plaintiff's ratification theory fails as a matter of law.

**III.    If the Court grants Confidence Ford's motion to dismiss, Plaintiff's claims against FMC fail as a matter of law.**

Plaintiff's claims against FMC under the TCPA and the OTSA rise and fall on a theory of agency or vicarious liability. Specifically, Plaintiff seeks to hold FMC liable for the alleged conduct of Confidence Ford. Confidence Ford has moved to dismiss all claims Plaintiff asserted against it. While FMC maintains that there is no agency relationship between it and Confidence Ford, if the Court grants Confidence Ford's motion, FMC is necessarily entitled to summary judgment on all of Plaintiff's claims regardless of whether the relationship exists. *See, e.g., Travelers Indemnity Co. v. Hans Lingl Anlagenbau Und Verfahrenstechnik GMBH & Co. KG*, Nos. 04-7062, 04-7128, 2006 WL 2065069 (10th Cir. 2006) (holding that where alleged agent was not liable to plaintiff, no liability would attach to alleged principal). If Confidence Ford is not liable to Plaintiff, FMC likewise cannot be liable to Plaintiff under his agency theory.

**IV.    Plaintiff's intrusion upon seclusion claim fails as a matter of law.**

Plaintiff also alleges that FMC intruded upon his seclusion by supplying and distributing the "Howard Ship" lead to its dealership network, which purportedly resulted in Confident Ford making unsolicited robocalls to Plaintiff using automated and spoofed technology. Dkt. 48 at ¶¶ 6, 28-29, 65, 84, 105. Plaintiff further claims FMC is liable because it allegedly knew of the lead's unlawful origin yet continued to use and conceal it,

thereby participating in and enabling the intrusive communications. Dkt. 48 at ¶¶ 64-65, 71(b)-(c), 84. This claim also fails.

Under Oklahoma law, intrusion upon seclusion is part of the general tort of invasion of privacy and has two elements: (a) a nonconsensual intrusion (b) which was highly offensive to a reasonable person." *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 366 (Okla. 1994); *Ioszpe v Unifin, Inc.*, 2025 WL 2487349, at *5 (W.D. Okla. Aug. 28, 2025) (collecting cases). An intrusion upon seclusion claim requires evidence that the defendant's conduct was intentionally intrusive. *Carr v. Okla. Student Loan Auth.*, 699 F. Supp. 3d 1241, 1252 (W.D. Okla. 2023). "This tort is not available for every intrusion upon a person's privacy, and the Oklahoma Supreme Court has noted that '[t]here is simply no room in the framework of our society for permitting one party to sue on the event of every intrusion into the psychic tranquility of an individual.'" *Salmon v. CRST Expedited, Inc.*, 2016 WL 47876, at *5 (N.D. Okla. Jan. 4, 2016) (quoting *Munley v. ISC Financial House, Inc.*, 584 P.2d 1336, 1338 (Okla. 1978)). Oklahoma courts look to the Restatement (Second) of Torts § 652B to determine the threshold for the "highly offensive" element of the tort of invasion of privacy by intrusion upon a person's seclusion:

> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

Restatement (Second of Torts § 652B, cmt d.

13

This claim fails for multiple independent reasons. First, Plaintiff's own allegations foreclose the "highly offensive" element. Accepting Plaintiff's allegations as true for purposes of this argument only, Confidence Ford made only one unsolicited call on May 1, 2024, followed by additional communications that occurred only after Plaintiff returned the call and engaged the dealership. Dkt. 48 at ¶ 38. As the Restatement and Oklahoma law makes clear, there is no liability for "calling [a person] to the telephone on one occasion or even two or three," and liability arises only where calls are "repeated with such persistence and frequency as to amount to a course of hounding the plaintiff." Restatement (Second) of Torts § 652B cmt. d. A single call and follow-up communications initiated by Plaintiff, fall well short of this threshold and cannot constitute a substantial and highly offensive intrusion. Second, Plaintiff cannot establish that FMC engaged in any intentional intrusion. The only alleged conduct directed at Plaintiff was undertaken by Confidence Ford, not FMC. Plaintiff's theory that FMC "supplied" a lead, even if accepted as true, does not constitute intentional intrusion into Plaintiff's seclusion and is a far cry from the type of direct, invasive conduct required under Oklahoma law. *See Carr*, 699 F. Supp. 3d at 1252 (requiring intentional intrusive conduct by the defendant). There are no allegations or evidence that FMC placed calls, directed calls to Plaintiff, or had any involvement in the specific communication at issue.

Because Plaintiff cannot establish a substantial intrusion, intentional conduct by FMC, or conduct that would be highly offensive to a reasonable person, his intrusion upon seclusion claim fails as a matter of law.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Ford Motor Company is entitled to summary judgment on Plaintiff's claims and respectfully requests that this Court enter an order dismissing all of Plaintiff's claims against it as set forth in his First Amended Complaint.

Respectfully submitted,


By:    *s/ Kathy R. Neal*
       Kathy R. Neal, OBA #674
       Kirsten A. Pfeiffer, OBA #35711
       MCAFEE & TAFT, P.C.
       2 West 2nd Street, Suite 1100
       Tulsa, Oklahoma 74103
       Telephone:  (918) 587-0000
       Facsimile:  (918) 599-9317
       kathy.neal@mcafeetaft.com
       kirsten.pfeiffer@mcafeetaft.com

       ***Attorneys for Defendant***
       ***Ford Motor Company***

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 30 day of June 2026, I electronically transmitted the attached document to the Clerk of the Court using the ECF System, transmitting a copy to all ECF System registrants, and served a copy via First Class U.S. Mail to the following individual who is not a registered participant of the ECF system:

Anthony Trupia
605 SE 21st St.
Oklahoma City, OK 73109
***Pro Se Plaintiff***

Jason A. Sansone
PHILLIPS MURRAH P.C.
424 NW 10th Street, Ste 300
Oklahoma City, OK 73103
jasonsone@phillipsmurrah.com
***Attorney for Defendant,***
***Confidence Ford of Norman***

Zachary A.P. Oubre
MCAFEE & TAFT, P.C.
Eight Floor, Two Leadership Square
211 North Robinson Ave.
Oklahoma City, OK 73102
Zach.oubre@mcafeetaft.com
***Attorney for Defendant,***
***LP Operating LLC***

Kerry R. Lewis
RHODES, HIERONYMUS, JONES, TUCKER
 & GABLE, PLLC
P.O. Box 21100
Tulsa, OK 74121-1100
klewis@rhodesokla.com
***Attorney for Defendant,***
***Level 3 Communications, LLC***

Aaron C. Tifft
Blake H. Gerow
HALL, ESTILL, HARDWICK, GABLE
 GABLE, GOLDEN & NELSON, P.C.
521 E. 2nd Street, Ste 1200
Tulsa, OK 74120
atifft@hallestill.com
bgerow@hallestill.com
***Attorneys for Defendants,***
***Reagan Gold Group, LLC,***
***HLV Ventures, LLC, and***
***South Bay Galleries, LLC***

Jacob C. Swanson
Brooks A. Richardson
GABLEGOTWALS
BOK Plaza
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
jswanson@gablelaw.com
brichardson@gablelaw.com
***Attorney for Defendant,***
***Telnyx LLC***

Gerard M. D'Emilio
GABLEGOTWALS
BOK Plaza
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
gdemilio@gablelaw.com
***Attorney for Defendant,***
***Onvoy, LLC***

*s/ Kathy R. Neal*

16