**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ANTHONY TRUPIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-1134-D |
| | ) | |
| 1. ONVOY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff's response (Dkt. 139) fails to create a genuine issue of material fact. Plaintiff fails to show how Ford Motor Company ("FMC") can be held liable for a telephone call it did not place. Nor does he show that FMC directed Confidence Ford to call him, controlled the way it contacted customers, knew the disputed lead contained inaccurate information, or authorized unlawful calls. Instead, Plaintiff relies on generalized dealership provisions, a hearsay account of what a dealership employee allegedly said, and speculation that discovery may reveal evidence of agency. The Court should grant FMC's Motion.

**RESPONSE TO PLAINTIFF'S ADDITIONAL MATERIAL FACTS[1]**

| Plaintiff's Additional Material Facts | FMC's Response |
|---|---|
| 1. No Rule 26(f) conference has been held, no scheduling order entered, no | Undisputed that, as of the filing of Plaintiff's Response, no Rule 26(f) |

[1] Plaintiff takes issue with the fact that FMC's Motion cites to SUF ¶¶ 22-23 when its Statement of Undisputed Facts ends at ¶ 18. Dkt. 139 at 14. An earlier version of FMC's draft contained twenty-three statements, and this citation was not updated to reflect a later revision. The relevant paragraphs are SUF at ¶¶ 3-15. This drafting error is immaterial to FMC's argument.

| | |
|---|---|
| initial disclosures exchanged, and no discovery served or answered by any party. Decl. ¶ 8. [Dkt. 139 at 11.] | conference has occurred, no scheduling order has been entered, no initial disclosures have been exchanged, and no formal discovery has been served or answered. Disputed that these procedural facts preclude summary judgment. |
| 2. When Plaintiff asked Confidence Ford's manager, Jason, where the dealership got the lead bearing Plaintiff's number and the name "Howard Ship," Jason stated that they get all the leads from Ford Motor. Decl. ¶ 5. [Dkt. 139 at 11.] | Disputed. Plaintiff's declaration establishes only that Plaintiff claims "Jason" made this statement, not that it is true. The statement is hearsay as offered against FMC, and Plaintiff makes no claim that Jason was FMC's agent, had personal knowledge of the source of Confidence Ford's leads, or was speaking within the scope of any relationship with FMC. Regardless, even if the statement is considered, a statement that Confidence Ford generally receives leads from FMC does not establish that FMC supplied the particular lead, knew it contained inaccurate information, or directed or controlled Confidence Ford's use of it. |
| 3. Jason then called Plaintiff back repeatedly until Plaintiff told him to stop. Decl. ¶ 6. [Dkt. 139 at 11.] | Undisputed solely for purposes of summary judgment that Jason allegedly called Plaintiff repeatedly until Plaintiff asked him to stop. Plaintiff identifies no evidence, however, that FMC directed, authorized, knew of, or controlled those calls, and the alleged conduct therefore does not establish that Confidence Ford or Jason acted as FMC's agent. |
| 4. In 2023 and 2024 Plaintiff received well over one hundred unsolicited calls on his number, including silent automated "ghost" calls, and sales calls from more than a dozen unrelated businesses in different industries, each asking for the same fictitious "Howard Ship." Decl. ¶ 7. [Dkt. 139 at 11.] | Undisputed solely for purposes of summary judgment that Plaintiff declares he received numerous unsolicited calls in 2023 and 2024, including calls from unrelated businesses asking for "Howard Ship." Disputed to the extent Plaintiff suggests those calls are attributable to FMC or establish FMC's involvement in a broader calling campaign. |
| 5. FMC's Answer pleads that it will need "an adequate period of investigation and discovery" to | Undisputed that FMC's Answer states that it requires adequate investigation and discovery concerning Plaintiff's |

| | |
|---|---|
| show how it obtains marketing leads. [Dkt. 139 at 11.] | allegations regarding how FMC obtains marketing leads. Disputed to the extent Plaintiff treats that pleading as an admission regarding FMC's lead practices or Plaintiff's entitlement to Rule 56(d) relief. |
| 6. Without waiving Plaintiff's objection,[2] Exhibit 1 requires the dealer to use FMC's advertising and sales-promotion programs, to send its personnel to FMC training, to cooperate with FMC programs, to submit to FMC inspection, instruction, and audit, and to deliver its prospective-customer names to FMC on termination, and it permits FMC to terminate the dealer over its advertising and business practices. Ex. 1 ¶¶ 2(a), 6(b), 6(h), 12(b), 17(b)(5), 19(e). [Dkt. 139 at 11.] | Disputed as characterized. Exhibit 1 speaks for itself. Paragraph 2(a) provides that the Dealer will conduct its advertising and sales-promotion activities and make use "to the greatest feasible extent" of FMC programs; it does not give FMC the right to direct the Dealer's advertising or prospective customer contacts. The remaining cited provisions concern training, cooperation with Company programs, inspection or audit rights, termination, and post-termination obligations. None give FMC the right to control whether, when, or how Confidence Ford contacts prospective customers. |

## I. Plaintiff cannot establish vicarious liability against FMC.

Plaintiff argues that federal common law agency principles govern the vicarious liability analysis under his TCPA claim. Dkt. 139 at 17-18. Regardless of whether Oklahoma law or federal law governs the analysis, Plaintiff's claim fails. The fact that a

[2] Plaintiff's Rule 56(c) objections to FMC's use of Exhibit 1, the Ford Sales & Service Agreement, rest on an incorrect premise. Dkt. 139 at 6-7. Rule 56 does not require an affidavit authenticating every document submitted at summary judgment. *See Lopez v. Delta Int'l Machinery Corp.*, 312 F. Supp. 3d 1115, 1153-56 (D.N.M. 2018) (quoting *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009)). Rather, Rule 56(c)(2) asks whether the evidence can be presented in an admissible form at trial. *See Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiff offers no evidence disputing the authenticity of the Agreement, and speculation concerning omitted provisions, supplements, or other documents does not establish that the Agreement cannot be authenticated or presented in admissible form. Plaintiff's Rule 56(c)(2) and (c)(4) objections therefore provide no basis to disregard Exhibit 1.

call benefits FMC or promotes Ford products does not itself establish vicarious liability. *In re Joint Petition Filed by DISH Network, LLC*, 28 F.C.C. Rcd. 6574, 6593 ¶ 47 (2013). Plaintiff must still produce evidence supporting liability under applicable agency principles. *Id.* Further, merely manufacturing and selling a product does not make a manufacturer responsible for calls placed by independent resellers. *Id.* at 6583 ¶ 26.

**A. Plaintiff presents no evidence that FMC controlled the conduct at issue.**

Plaintiff relies on standard dealership provisions concerning advertising programs, training, recordkeeping, audits, and related requirements. Dkt. 139 at 20-23. But those provisions do not establish FMC's right to control whether, when, or how Confidence Ford contacted prospective customers. *Thornton v. Ford Motor Co.* is instructive here because it analyzed a similar relationship. There, the court concluded that the evidence supported a finding that the dealership was independent and Ford lacked sufficient control to establish an agency relationship based on actual authority. 2013 OK CIV APP 7, ¶¶ 18–23, 297 P.3d 413, 419–20. In reaching that conclusion, the court explained that a franchise agreement may give rise to an agency relationship where there is a "detailed assertion of control," and that a franchisor's "exercise of some control" was generally insufficient. Id. ¶ 21. The court found no actual agency where Ford did not control the matters at issue. *Id.* ¶¶ 19.

Plaintiff's attempt to distinguish *Thornton* based on its procedural history misses the mark. Dkt. 139 at 23. Its substantive holding establishes that generalized manufacturer oversight is not the detailed control required for agency. Plaintiff identifies no provision giving FMC the right to determine who Confidence Ford called, when calls were placed, what equipment was used, or how dealership personnel conducted calls.

Likewise, *Le v. Total Quality Logistics, LLC* confirms that contractual labels are not dispositive, but the "essence" of agency remains "the principal's power to give directions and the agent's duty to obey them." 2018 OK CIV APP 71, ¶¶ 18, 431 P.3d 366, 373. And *Total Quality* affirmed summary judgment despite numerous contractual requirements because those requirements did not establish sufficient control over how the relevant work was performed. *Id.* ¶¶ 18-25. Thus, accepting Plaintiff's characterization of the dealer agreement, he shows ordinary contractual oversight, not FMC's control of Confidence Ford's telemarketing.

**B. *LaBella is materially distinguishable.***

In its Motion, FMC cited *LaBella v. Charlie Thomas, Inc.*, 942 S.W.2d 127, 136 (Tex. App. 1997) for the general proposition that "[a] dealer is not per se an agent of the manufacturer … [but t]he nature of the relationship is determined by the terms of the dealership agreement" to support the statement that "a motor vehicle manufacturer/franchisor may exercise some control to protect its national identity, reputation, and trademark from abandonment without creating an agency relationship with its dealer/franchisee." Dkt. 80 at 7 (quoting *Thornton*, 2013 OK CIV APP at ¶ 20). Within the parenthetical, FMC incorrectly stated that in *LaBella*, the court affirmed summary judgment. However, this mistake does not change or undermine the purpose that *LaBella* was cited for in FMC's Motion.

Further, *LaBella* does not support denial of FMC's Motion as Plaintiff argues. Dkt. 139 at 20. *LaBella* involved evidence that Mercedes-Benz exercised direct control over *the particular activity giving rise to the claim*, namely warranty repairs. Dealership employees

attended manufacturer training, used Mercedes-Benz technical materials, and performed warranty responsibilities prescribed by the manufacturer, while Mercedes-Benz retained ultimate authority over warranty coverage and its personnel personally inspected the engine at issue. *Id.* at 134-37.

There are no analogous allegations here. Plaintiff makes no claims that FMC prescribed how Confidence Ford should call him, approved its script, selected its calling equipment, controlled the timing or frequency of calls, or directed the particular call. *LaBella* therefore illustrates exactly what is missing here, not what Plaintiff has established.

**C. Plaintiff cannot establish apparent authority.**

Apparent authority requires a manifestation by the purported principal reaching the plaintiff and reasonable reliance on that manifestation. *See Thornton*, 2013 OK CIV APP 7, ¶¶ 27-34, 297 P.3d at 421-22. In *Thornton*, provisions in Ford's dealer agreement could not establish apparent authority where the customer did not observe or rely upon them. *Id.* at ¶¶ 32-33. The same problem exists here. Plaintiff identifies no representation by FMC that Confidence Ford was acting for FMC and no action Plaintiff took in reliance on any such representation. His reliance on dealer agreement provisions and alleged internal lead practices cannot establish apparent authority.

**II. Plaintiff cannot establish ratification.**

Plaintiff's ratification theory fails at the threshold. Ratification applies only when the underlying act "purported to have been for or on behalf of" the person alleged to have ratified it. *Statser v. Chickasaw Lumber Co.*, 1958 OK 117, ¶ 14, 327 P.2d 686, 690. Where

the actors did not purport to act as agents for the purported principals, there was "nothing to ratify." *Id.* at ¶ 16.

Plaintiff does not identify who generated the alleged "Howard Ship" information, much less evidence that the person or entity purported to act for FMC. Nor does he establish that Confidence Ford represented that its call was being made as FMC's agent. The disputed origin of the lead does not establish that everyone who possessed or used it acted for FMC.

Plaintiff also lacks evidence that FMC knowingly adopted unlawful conduct. Ratification requires knowledge of the material facts and circumstances demonstrating adoption of the unauthorized act. *See Statser*, 1958 OK at ¶ 16, 327 P.2d at 690; *In re Brown*, 412 F. Supp. 1066 (W.D. Okla. 1975). *Brown* does not establish that inaction alone constitutes ratification. There, an agency relationship was independently demonstrated: the principal paid the agent a finder's fee for obtaining the plaintiff's investment, communicated directly with the plaintiff, received the transaction's benefit, and failed to correct a known false impression. *Id.* at 1071-72. No comparable allegations or evidence exist here.

Even assuming FMC supplied the lead to Confidence Ford, that fact would not establish that FMC knew the information was inaccurate, knew Confidence Ford would employ unlawful calling practices, or adopted Confidence Ford's conduct. Plaintiff's theory is mere speculation.

## III. The alleged statement that Confidence Ford received "all the leads from Ford Motor" does not create a genuine dispute.

Plaintiff relies almost exclusively on his declaration stating that a Confidence Ford manager named Jason said "they get all the leads from Ford Motor." That assertion alone does not create a genuine dispute as to FMC's conduct as it applies to Plaintiff's claims. At summary judgment, although evidence need not necessarily be presented in trial form, its substance must be admissible. *Johnson v. Weld Cty.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010) (citing *Thomas v. IBM*, 48 F.3d 478, 485 (10th Cir. 1995)).

Even assuming Jason was Confidence Ford's employee, Plaintiff supplies no indication that Jason had personal knowledge of the lead's source. And his statement cannot qualify as FMC's own party opponent statement absent evidence that Jason was acting as FMC's agent concerning the matter addressed. *See* Fed. R. Evid. 801(d)(2)(D). Thus, the statement itself cannot establish the agency necessary to make it admissible against FMC.

Further, any admissible statement that Confidence Ford generally received leads from FMC does not establish that FMC supplied this particular lead, knew its information was inaccurate, directed Confidence Ford to call Plaintiff, or controlled how Confidence Ford used any such lead.

## IV. Rule 56(d) does not save Plaintiff's claims.

Plaintiff's Rule 56(d) request does not overcome these deficiencies. A Rule 56(d) declaration must identify the probable unavailable facts, explain why they cannot presently be obtained, describe the efforts undertaken to obtain them, and show how those facts would enable the nonmovant to obtain the facts and effectively rebut the motion for

summary judgment. *Adams v. C3 Pipeline Construction Inc.*, 30 F.4th 943, 968-69. Even information within the movant's exclusive possession does not automatically entitle the nonmovant to discovery. *Id.*

Plaintiff identifies the dealer agreement, FMC lead programs and records, vendor contracts, complaints, wrong number records, and depositions as matters he wishes to discover. But Rule 56(d) requires more than identifying categories of information. Plaintiff must go a step further and explain how the expected evidence would create a genuine dispute concerning the dispositive elements. Plaintiff fails to make this connection. Evidence that FMC transmitted a lead would not, standing alone, establish that FMC authorized or controlled the subsequent call. And complaints about unrelated calls would not establish that this caller purported to act for FMC, that FMC knew the material facts surrounding this call, or that FMC adopted the conduct.

The Court need not defer judgment merely because Plaintiff *hopes* discovery could uncover evidence. He has failed to show how those facts would allow him to defeat summary judgment.

## V. Plaintiff cannot attribute an intentional intrusion to FMC.

Plaintiff's intrusion upon seclusion claim fails for the same fundamental reason: he cannot attribute an intentional intrusion to FMC. Oklahoma requires an intentional, nonconsensual intrusion that would be highly offensive to a reasonable person. *Gilmore v. Enogex, Inc.*, 1994 OK 76, ¶ 16, 878 P.2d 360, 366; *Munley v. ISC Financial House, Inc.*, 1978 OK 123, 584 P.2d 1336. Thus, the issue is not whether repeated unwanted calls could ever satisfy that standard but whether the alleged intentional conduct can be attributed to

FMC. *Carr v. Oklahoma Student Loan Auth.*, 699 F. Supp. 3d 1241, 1252 (W.D. Okla. 2023) (recognizing the importance of intentional conduct and rejecting an intrusion theory based entirely on negligent responsibility for wrongful third-party acts).

Plaintiff identifies no evidence that FMC placed the call, directed Confidence Ford to place it, controlled the caller's conduct, or intentionally participated in the broader calling campaign Plaintiff describes. Even if multiple calls from numerous entities could collectively constitute a highly offensive intrusion, Plaintiff cannot attribute those separate acts to FMC.

**VI. Count VI provides no independent basis for liability against FMC.**

Plaintiff argues FMC did not separately address his negligence per se claim. Dkt. 139 at 14. But labeling a claim "negligence per se" does not supply the missing connection between FMC and Confidence Ford's alleged conduct. Plaintiff presents no evidence that FMC itself placed the disputed call or committed the statutory violation on which Count VI depends. Nor can Plaintiff impute Confidence Ford's alleged statutory violation to FMC without establishing a basis for vicarious liability. Because the evidence does not permit Confidence Ford's allegedly unlawful conduct to be attributed to FMC, Count VI likewise cannot survive summary judgment against FMC.

## CONCLUSION

Plaintiff's response does not allege or show that FMC placed or directed the alleged call, controlled Confidence Ford's calling practices, made a representation upon which Plaintiff relied, or knowingly adopted unlawful conduct undertaken on its behalf. FMC respectfully requests that the Court grant its Motion for Summary Judgment.

Respectfully submitted,

By: *s/ Kathy R. Neal*

Kathy R. Neal, OBA #674
Kirsten A. Pfeiffer, OBA #35711
MCAFEE & TAFT, P.C.
2 West 2nd Street, Suite 1100
Tulsa, Oklahoma 74103
Telephone: (918) 587-0000
Facsimile: (918) 599-9317
kathy.neal@mcafeetaft.com
kirsten.pfeiffer@mcafeetaft.com

***Attorneys for Defendant***
***Ford Motor Company***

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of November 2026, I electronically transmitted the attached document to the Clerk of the Court using the ECF System, transmitting a copy to all ECF System registrants, and served a copy via First Class U.S. Mail to the following individual who is not a registered participant of the ECF system:

Anthony Trupia
605 SE 21st St.
Oklahoma City, OK 73129
***Pro Se Plaintiff***

Jason A. Sansone
PHILLIPS MURRAH P.C.
424 NW 10th Street, Ste 300
Oklahoma City, OK 73103
jasonsone@phillipsmurrah.com
***Attorney for Defendant,***
***Confidence Ford of Norman***

Zachary A.P. Oubre
MCAFEE & TAFT, P.C.
Eight Floor, Two Leadership Square
211 North Robinson Ave.
Oklahoma City, OK 73102
Zach.oubre@mcafeetaft.com
***Attorney for Defendant,***
***LP Operating LLC***

Kerry R. Lewis
RHODES, HIERONYMUS, JONES, TUCKER
& GABLE, PLLC
P.O. Box 21100
Tulsa, OK 74121-1100
klewis@rhodesokla.com
***Attorney for Defendant,***
***Level 3 Communications, LLC***

Aaron C. Tifft
Blake H. Gerow
HALL, ESTILL, HARDWICK, GABLE
GABLE, GOLDEN & NELSON, P.C.
521 E. 2nd Street, Ste 1200
Tulsa, OK 74120
atifft@hallestill.com
bgerow@hallestill.com
***Attorneys for Defendants,***
***Reagan Gold Group, LLC,***
***HLV Ventures, LLC, and***
***South Bay Galleries, LLC***

Jacob C. Swanson
Brooks A. Richardson
GABLEGOTWALS
BOK Plaza
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
jswanson@gablelaw.com
brichardson@gablelaw.com
***Attorney for Defendant,***
***Telnyx LLC***

Gerard M. D'Emilio
GABLEGOTWALS
BOK Plaza
499 W. Sheridan Ave., Ste. 2200
Oklahoma City, OK 73102
gdemilio@gablelaw.com
***Attorney for Defendant,***
***Onvoy, LLC***

*s/ Kathy R. Neal*